CLERKS OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

10/4/2017

JULIA C. DUDLEY, CLERK
BY: s/ JODY TURNER
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | |
|---|---|
| JOHN DOE, by and through his next friend, NELSON LOPEZ, on behalf of himself and all persons similarly situated, | |
| Plaintiff, | Civil No. 5:17CV00097 _____ |
| v. | Jury Trial Demanded |
| SHENANDOAH VALLEY JUVENILE CENTER COMMISSION, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

### INTRODUCTION

1. Plaintiff John Doe ("Plaintiff" or "Doe") is a 17-year-old Latino immigrant who is confined to the Shenandoah Valley Juvenile Center ("SVJC"). He is one of approximately 30 unaccompanied immigrant minors under detention in the facility. Doe is confined solely because he crossed the United States border seeking to escape violence in Mexico without proper authorization and the Office of Refugee Resettlement of the U.S. Department of Health and Human Services ("ORR") has determined to detain him. Doe and other similarly situated young people in SVJC are subjected to unconstitutional conditions that shock the conscience, including violence by staff, abusive and excessive use of seclusion and restraints, and the denial of necessary mental health care. As a result of this treatment, Doe has engaged in significant and continuous self-harm, to which SVJC staff and counselors have responded with callous indifference. These violations reflect a disorganized, untrained, and understaffed facility that houses immigrant children in brutal, inhumane

conditions.

2. This is a civil action pursuant to 42 U.S.C. § 1983 to vindicate the rights of immigrant youth detained at SVJC under the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff Doe represents a class of immigrant children who have suffered verbal and physical abuse by SVJC staff; received constitutionally inadequate mental health care; and been subjected to inappropriate confinement and seclusion while detained at SVJC.

3. On behalf of himself and all similarly situated immigrant children, Plaintiff Doe seeks declaratory, preliminary, and permanent injunctive relief requiring that Defendant cease its unconstitutional policies and practices at SVJC and provide class members with the standard of care and conditions of confinement mandated by the United States Constitution.

4. These problems are not unique to SVJC, but are part of a growing and alarming national trend of punitive, racially discriminatory conditions of confinement and systematic indifference to the suffering of immigrant detainees, who often fare worse in civil detention than those serving criminal sentences.[1]

5. Immigrant detainees are regularly subjected to poor sanitation, substandard medical and mental health care, excessive use of solitary confinement, and other conditions that too often result in senseless, preventable suffering and in some cases, deaths.

---

[1] *See, e.g., Conditions of Confinement in Immigration Detention Facilities*, ACLU, June 27, 2007, https://www.aclu.org/sites/default/files/field_document/unsr_briefing_materials.pdf; *Systemic Indifference: Dangerous & Substandard Medical Care in US Immigration Detention*, HUMAN RIGHTS WATCH, May 8, 2017, https://www.hrw.org/report/2017/05/08/systemic-indifference/dangerous-substandard-medical-care-us-immigration-detention.

2

6. Plaintiff John Doe is a 17-year-old native and citizen of Mexico who is currently detained at SVJC. On behalf of himself and all similarly situated immigrant children, he brings this action by and through Nelson Lopez, his next friend.

7. Nelson Lopez is an adult resident of Virginia. He brings this action for the benefit of Doe and the class of immigrant detainees Doe seeks to represent.

8. Mr. Lopez is well-suited to serve in this role. He is currently self-employed and engaged as a community advocate at a Northern Virginia social justice organization that he co-founded. He previously worked as a paralegal at an immigration legal services organization for approximately three years. In that capacity, Mr. Lopez frequently visited detained immigrant adults and children to educate them about their legal rights and assist them in navigating the immigration legal system.

9. Mr. Lopez has met with Doe, and Doe consents to Mr. Lopez serving as his next friend.

10. The named Plaintiff's plight echoes the stories of the many immigrant youth who have been or are now detained at SVJC. These children uniformly describe SVJC as a facility where immigrant youth languish without necessary mental health services, are regularly verbally and physically abused, harassed, and taunted by staff, and where they are subjected to harsh, disproportionate discipline for behavioral issues that are in many cases directly provoked by the abusive treatment they receive. These conditions violate the constitutional rights of the named Plaintiff and all similarly situated immigrant children, all of whom are entitled, to the extent they are properly detained at all, to reasonably safe and sanitary conditions of confinement and protection from harm.

11. Defendant Shenandoah Valley Juvenile Center Commission ("Defendant" or

3

"Commission") is a commission composed of members from seven jurisdictions in the Shenandoah Valley, including the Cities of Harrisonburg, Lexington, Staunton and Waynesboro, and the Counties of Rockingham, Augusta, and Rockbridge. The Commission owns and operates SVJC, a secure residential detention facility in Staunton, Virginia, for use by each of the member jurisdictions.

12. The Commission is a public body corporate pursuant to Va. Code § 16.1-315.

## JURISDICTION AND VENUE

13. Plaintiff's causes of action arise under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

14. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331.

15. Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to this action occurred in this District.

## STATEMENT OF FACTS

### Plaintiff's Placement History

16. From a young age, Doe experienced significant verbal and physical abuse by his father. He was further traumatized by gang and drug violence in Mexico. In fear for his life and safety, he entered the United States to seek protection as a refugee.

17. Upon information and belief, the majority of the immigrant detainees in the purported class, most of whom have arrived from Mexico and Central America, have experienced similar trauma before arriving at SVJC. They have been severely traumatized by violence they have experienced or witnessed, either in their home countries or during their journeys to the United States.

18. Doe arrived in the United States on or about August 3, 2015. He was apprehended by

4

Immigration and Customs Enforcement ("ICE") officers at the Mexican border and was determined to be an unaccompanied alien child ("UAC").

19. Doe was transferred to Baptist Child & Family Services ("BCFS") San Antonio, a "staff secure" facility, on August 6, 2015. He remained there until February 10, 2016, when he was transferred to Mercy First Residential Treatment Center in New York City, allegedly for violent behavior and due to concerns for his mental health.

20. On March 24, 2016, Doe was transferred to the Northern Virginia Juvenile Detention Center ("NOVA"), another "staff secure" facility located in Alexandria, Virginia, allegedly because he was considered to be a flight risk.

21. On April 15, 2016, Doe was transferred to SVJC, a "secure" facility, allegedly due to his violent and threatening behavior. Doe has been continuously detained at SVJC since that time.

22. Behaviors perceived to be threatening or violent by staff at each of these facilities were the direct result of untreated mental illness resulting from trauma experienced by Doe in his home country.

23. In each of these placements, Doe failed to receive the mental health services necessary to allow him to live in a community setting despite that ORR is obligated by federal law to ensure that unaccompanied minors "be promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A).

**General Conditions at SVJC**

24. SVJC holds an approximate average daily population of 40 youth between the ages of 10 and 17 years old. This includes both UACs and United States citizen youth who have been adjudicated juvenile delinquent.

5

25. ORR, the division of the U.S. Department of Health and Human Services directly responsible for the care and custody of unaccompanied immigrant minors, has contracted with the Commission to house children whom ORR determines are UACs, requiring detention in secured conditions due to the risk of harm these UACs purportedly pose to themselves or others.

26. SVJC is currently one of only two secure facilities in the country that house detained UACs.

27. ORR's explanation for its decision to place a child in a secure facility must be made in writing and made available to the child. Its evaluations in this regard are to be revisited at regular intervals. Upon information and belief, ORR consistently fails to fulfill these obligations, and many of the members of the putative class that Doe seeks to represent have little to no understanding as to why they have been placed at SVJC.

28. SVJC is, both structurally and functionally, a prison. Children are not permitted to freely move about the facility and they are locked in their rooms for approximately 12-14 hours per day, including before and after meals; during staff breaks; and after 9:30 in the evening.

29. The children are fed substandard meals that contain too few calories and are often served cold. They consistently remain hungry after meals because they receive too little to eat.

30. Each child is assigned to a room with a mattress, a sink, and a toilet. There is no wall or divider enclosing the bathroom area, so the staff can see the children use the toilet through the window in the door to their room.

31. Some children have sought privacy by placing paper over this window to obscure the view from outside the room, but the staff have removed it. On at least one occasion, a staff member has stood at the window and watched Doe use the bathroom.

32. Each room is in a "pod," which is a cluster of approximately ten rooms with a shared

6

common area.

33. In the common area of each pod, there are metal tables and chairs that are bolted to the floors.

34. The immigrant children detained at SVJC are grossly under-stimulated. Although they receive a few hours of classroom instruction per day, much of it is either inaccessible, as the instruction is not provided in the children's native language, or it is significantly below grade level.

35. The children are usually given just one hour of recreation time per day, which is either spent in a small gymnasium or, less frequently, in a small outdoor area that is fenced in with barbed wire. Their remaining free time is spent locked in their pods, where the only activities they are permitted are reading or playing cards with incomplete decks.

36. In the evening, the children are permitted to watch a limited amount of television, but the staff members control the TV and the children are not allowed to touch it.

37. There is a point system in place to reward children for good behavior and punish them for bad behavior. The children are required to use points if they want to have access to personal hygiene items such as toothpaste and soap.

38. Points have been taken away by SVJC staff from detained UACs for such purported "offenses" as asking the time of day and declining to read a book during the children's designated "free time."

**Race and National Origin Discrimination by SVJC Staff**

39. The majority of SVJC staff members are Caucasian and do not speak Spanish.

40. SVJC staff routinely insult, taunt, and harass the immigrant youth detained at the facility based on their language, race, and/or national origin.

7

41. One child was called a "Mexican monkey" by staff; another was told by a guard that "dark people bother me."

42. Similarly, SVJC staff taunt the youth, calling them "criminal" and "nothing more than an immigrant," and telling them that the only way for them to leave SVJC is to be deported.

43. Staff also frequently refuse to allow the immigrant children to watch Spanish-language programming on the communal television in their pods, commenting that they "don't care" that the children are Latino and cannot understand an English television show.

44. SVJC staff members have taunted and harassed Doe, on a daily basis, since shortly after he arrived there. They call him names such as "pendejo" (or "idiot" in Spanish) and "onion head," and they will intentionally provoke him, such as by dropping his clean towel on the dirty floor in front of him.

45. SVJC staff also exert their control in a way that is intended to demean and humiliate the children. Several immigrant detainees have reported being stripped of their clothes, occasionally including their underwear, while being placed on "restriction," or confined to their rooms, as a form of punishment. There is no legitimate penological justification for such behavior.

46. SVJC staff also subject the immigrant youth to disparate discipline, doling out harsher punishments to the immigrant youth than to juvenile offenders who have engaged in the same or considerably worse behavior. Upon information and belief, the majority of the local juvenile offenders detained at SVJC are Caucasian and were born in the U.S.

47. On one occasion, Doe and a juvenile offender got into a fight after the juvenile offender had taunted Doe and told him that he "hate[d] Latinos". When SVJC staff intervened to break up the fight, Doe was grabbed and thrown forcefully to the ground, but the juvenile offender

was merely held by the arms and pulled away. Thereafter, Doe was restrained, tied to a chair, and hit several times by staff members while restrained. Doe was required to remain tied to the chair, in his room, for four hours. This restraint served no security or penological purpose and was legally impermissible punishment.

48. Despite the fact that local detainees have been adjudicated as juvenile delinquents, while the immigrant youth residing at SVJC have not, the local juvenile offenders are also granted more privileges than the immigrant youth. Upon information and belief, the local offenders are granted more physical freedom to move about the facility; they are given the opportunity to engage in work details; and they are provided with markers and pencils for drawing and MP3 players for listening to music. None of these privileges are afforded to the immigrant youth.

**Physical Abuse by SVJC Staff**

49. In addition to being called racially-charged names, Doe and other immigrant children are frequently called "gay" or "faggot" by SVJC staff, who appear outside of their rooms and taunt them until they receive a response.

50. For Doe and other immigrant detainees, verbal abuse by staff triggers emotional responses connected to traumatic memories of past abuse that they have experienced and self-protective behaviors.

51. Relentless verbal abuse of the immigrant youth by SVJC staff frequently escalates into physical confrontations, as the frustrated children reach their breaking points and act out. *See, e.g., Santos v. Smith*, No. 5:17-cv-00020, 2017 U.S. Dist. LEXIS 83909, at *38 (W.D. Va. June 1, 2017) (Dillon, J.) (noting, in a habeas petition brought by an immigrant youth detained at SVJC, that most of the petitioner's significant behavioral problems had arisen

9

after he had been in custody for over a year and were "likely . . . attributable in part to his placement at SVJC.")

52. In such situations, SVJC staff regularly respond by physically assaulting the youth, applying an excessive amount of force that goes far beyond what is needed to establish or regain control.

53. For example, Doe once became so frustrated by a staff member's repeated taunting that he pushed the staff member. In response, four SVJC staff members shoved Doe to the floor and piled on top of him, and they began hitting him in his abdomen with their elbows. Doe sustained significant bruising as a result.

54. On another occasion, Doe asked to come inside during his recreation time because he had a headache. SVJC staff suspected, for no apparent reason, that he may have found a piece of glass outside. Doe was thrown to the ground and forcibly strip searched, and his clothes were shredded. Though they found no contraband items, staff nevertheless transferred Doe to Alpha Pod – the pod designated for children who have engaged in bad behavior – in response to this incident.

55. Other immigrant detainees have reported similar incidents of being physically assaulted by SVJC staff after verbal altercations with them.

56. One immigrant detainee was physically assaulted because he failed to comply with a directive to leave his book in his room when he went to class. Although the child had not exhibited any physical aggression, three SVJC staff members reacted to his refusal by shoving him into his room, placing handcuffs on him, and forcing him to his knees. The staff members removed the mattress from his room and proceeded to push the youth, face down, on the concrete slab where the mattress had been. When they picked him back up,

10

his face red from being pushed into the concrete, they locked him in his room for 8 hours.

57. Doe and other children have also been assaulted when they have tried to defend other children who are being abused by staff. Doe once tried to intervene when a staff member was hitting another child. As a result, both Doe and the other child were stabbed by the staff member with a pen.

58. Doe and other children have also been assaulted by SVJC staff while they are restrained.

59. Doe has been assaulted by SVJC staff several times while he was tied to a chair. On one occasion, Doe was hit in the face and scratched by a staff member while he was restrained, and he developed a black eye and bruising.

60. Another child was punched by SVJC staff in the chin while his hands were tied behind his back, leaving a bruise. He struggled to break free, and staff members pushed him to the ground, causing him to lose consciousness.

61. As these examples demonstrate, SVJC staff regularly apply force to Doe and other putative class members maliciously and sadistically for the very purpose of causing them harm.

62. The predicate for the application of force is often manufactured by SVJC staff, as they intentionally provoke the youth to violence in order to justify physically assaulting them, purportedly as punishment.

63. The degree of force used by SVJC staff is disproportionately severe in relation to any reasonably perceived threat. SVJC staff routinely hit and/or push children to the ground for minor acts of aggression, and they assault the children after they have been restrained, when any threat that the children may have posed has been eliminated.

64. As a result of such malicious and sadistic applications of force, Doe and other immigrant youth have sustained significant injuries, both physical and psychological.

11

65. Upon information and belief, and based on interviews with youth who are currently held or were recently held at SVJC, such physical abuse is routinely inflicted on putative class members.

**Confinement and Restraints**

66. Defendant has a policy or practice of confining the immigrant detainees to their rooms for lengthy periods of time and/or using handcuffs and cloth shackles on their hands and feet to restrain them.

67. Defendant's use of lengthy confinement and restraints are for punitive purposes.

68. Immigrant youth are confined to their rooms for minor behavioral infractions, including arguing over the television, not participating in class, and complaining about a headache.

69. Confinement and restraints are also used when youth fight with one another, fight with staff, or engage in self-harm.

70. The decision to use restraints on a child for "fighting" is often made haphazardly, and children have been restrained merely for being present when a fight breaks out.

71. Moreover, the children are restrained long after any safety or security justification for doing so has expired.

72. Doe was once forced to wear handcuffs on his wrists and shackles on his feet for approximately 10 days in a row after an altercation with a staff member. The staff member entered Doe's room without his consent and provoked an altercation during which the staff member hit Doe and Doe bit the staff member. Thereafter, the staff member beat Doe, leaving him with bruises on his neck and arms. Subsequently, Doe was placed in the restraints.

73. During the time that a child is forced to wear the restraints, they are removed only while he

12

sleeps or eats alone in his room.

74. Doe and other children have suffered serious physical and emotional harm from Defendant's use of restraints. The restraints are very tight, often leaving bruises and cuts on the children's wrists after they have been taken off. Doe has complained about this and shown his injuries to SVJC staff and to ORR's on-site representatives, but they have taken no actions to remedy it.

75. Doe and other children have also been confined to their rooms for 24 hours or more at a time. On some occasions the children are stripped of their clothes, including their underwear, during such lengthy periods of confinement.

76. Doe has also been tied to a chair, on multiple occasions, as a form of punishment. He has remained tied to a chair for several hours at a time.

77. There is no legitimate penological justification for using confinement or restraints in this manner, as they are used long after control of the subject child has been secured and there is no threat of further violence. Defendant's conduct is motivated by a desire to harass or humiliate the detained children in their care or to provoke a response that justifies the use of force by staff.

**Inadequate Mental Health Care**

78. Defendant fails to provide minimally adequate mental health services for the immigrant detainees in its custody and is deliberately indifferent to their serious medical needs.

79. Defendant has a policy or practice of denying Doe and putative class members access to appropriate mental health treatment and counseling with licensed health professionals, in violation of well-established professional standards.

80. Most SVJC staff members are unable to recognize and properly react to the obvious needs

13

of youth with known, demonstrable, serious mental health disorders and instead further taunt and harass the children when they exhibit signs of distress.

81. Approximately two weeks after his arrival at SVJC, Doe was evaluated by a psychologist, Dr. Gustavo Rife, and diagnosed with conduct disorder, disruptive mood dysregulation, and depressive disorder. Doe has not received any further care, treatment, or evaluations from Dr. Rife, or from any other psychologist at the initiative or direction of SVJC, since that time.

82. Since his initial psychological evaluation, attention to Doe's mental health has been primarily provided by Evenor Aleman, a licensed professional counselor, with whom he meets on a weekly basis.

83. SVJC staff are not trained to appropriately deal with trauma. Although the effects of trauma on unaccompanied immigrant children are widely known, SVJC staff fail to recognize it in the children entrusted to their care, and they fail to supervise immigrant detainees with a trauma-informed approach, focusing only on maintaining control and discipline.

84. Approximately six weeks after he arrived at SVJC, Doe first disclosed to Mr. Aleman that he had engaged in self-harm.

85. Prior to his arrival in the United States, Doe had not engaged in self-harm. He reports that he learned this behavior while in ORR custody.

86. Since he has been detained at SVJC, Doe has regularly engaged in self-harm by cutting his wrists with a piece of glass or plastic and occasionally by banging his head against the wall or floor.

87. Doe cuts himself to deal with his feelings of desperation and helplessness, and as a way to escape. Upon information and belief, these are symptoms of his past trauma and untreated

14

mental health conditions, which are exacerbated by the conditions in the facility and the treatment he is subjected to by staff.

88. On or about August 21, 2017, Doe attempted suicide by tying a part of a curtain around his throat. He repeatedly expresses a desire to kill himself.

89. Other immigrant youth have also engaged in cutting and other self-harming behaviors, including ingesting shampoo and attempting to choke themselves.

90. This self-harming behavior is a manifestation of serious mental health need.

91. SVJC staff are aware that Doe and other immigrant youth engage in cutting and other self-harming behaviors. Staff members have seen the visible scarring on Doe's wrists, a distinct marker of self-mutilation, and Doe has reported these behaviors to Mr. Aleman on multiple occasions.

92. SVJC staff are deliberately indifferent to the children's serious mental health needs, as they are aware of the harm that Doe and others are causing themselves by cutting and other behaviors, and they disregard the excessive risk of future harm – namely, serious injury and possibly death – to the children's health and safety if they do not receive appropriate treatment for these needs.

93. SVJC staff have told Doe, on multiple occasions, that they "don't care" that he is cutting himself. Other youth have similarly been told, "Kill yourself already," by SVJC staff when they have learned that the youth have engaged in cutting.

94. Rather than treat the underlying causes of this behavior, SVJC staff punish Doe and others for it. Engaging in self harm is considered a "bad behavior" which is punishable by segregation and confinement and/or use of shackles. Doe has occasionally been tied to a chair as punishment for self-harm.

95. When SVJC staff discovered and interrupted Doe's most recent suicide attempt, they removed all of his clothes and placed him on restriction for several days, allowing him to leave his room only for classes.

96. Similarly, when another child once attempted to choke himself, SVJC staff responded by taking all of his clothes away, including his underwear, and confining him to his room, naked, for more than 8 hours. Upon information and belief, he received no other treatment.

97. Isolating children who are suicidal is extremely damaging, and violates well-established professional standards.

98. Doe has been and continues to be harmed by the lack of appropriate, trauma-informed mental health treatment.

## CLASS ACTION ALLEGATIONS

99. The named Plaintiff brings this suit on his own behalf and on behalf of all UACs who are, or will in the future be, detained at SVJC.

100. The class is so numerous that joinder of all members is impractical. SVJC has the capacity to house 63 youth at one time and approximately 30 immigrant youth are detained there currently. Further, because children remain at SVJC for varying lengths of time, and the population changes on a daily basis, the class also includes future members whose names are not known at this time. Fed. R. Civ. P. 23(a)(1).

101. There are questions of law and fact common to all class members, including but not limited to the Defendant's failure to protect class members from harm; the Defendant's failure to provide class members with constitutionally adequate mental health care; the Defendant's policy and practice of subjecting class members to inappropriate restraint and prolonged periods of seclusion; and the Defendant's failure to otherwise provide class members with

16

constitutionally safe and humane conditions of confinement.  Fed. R. Civ. P. 23(a)(3).

102. Because the policies, practices, and customs challenged in this Complaint apply with equal force to the named Plaintiff and the other members of the class, the claims of the named Plaintiff are typical of the class in general.  Fed. R. Civ. P. 23(a)(3).

103. The named Plaintiff will fairly and adequately represent the interests of the class.  He possesses a strong personal interest in the subject matter of the lawsuit and is represented by experienced counsel with expertise in class action litigation in federal court.  Counsel has the legal knowledge and resources to fairly and adequately represent the interests of all class members in this action.  Fed. R. Civ. P. 23(a)(4).

104. The Defendant has acted or refused to act on grounds generally applicable to the class in that Defendant's policies and practices of violating the Plaintiff's constitutional rights have affected all class members.  Accordingly, final injunctive and declaratory relief is appropriate to the class as a whole.  Fed. R. Civ. P. 23(b)(2).

## NECESSITY FOR INJUNCTIVE RELIEF

105. The Defendant has acted and continues to act in violation of the law as described above. The named Plaintiff and the class he seeks to represent do not have an adequate remedy at law.  As a result of the policies, practices, acts, and omissions of the Defendant, the named Plaintiff, and the class he seeks to represent, have suffered serious, imminent, irreparable physical, mental, and emotional injuries.

## COUNT I
### Violations of the Fifth and Fourteenth Amendments
### (42 U.S.C. § 1983 – Excessive Use of Force)

106. Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 105 as if fully set forth herein.

107. The Due Process Clause of the Fifth Amendment requires that civil detainees be protected from harm and kept physically safe and secure. This right is enforced against the States through the Fourteenth Amendment.

108. That Fifth Amendment right includes the right to be free from excessive use of force by staff.

109. As described above, Defendant subjected Plaintiff to excessive force when he was punched, hit, shoved, and otherwise physically assaulted by SVJC staff.

110. Any perceived need for the application of force in each such instance in which it was applied dissipated at the moment control was achieved and Plaintiff was restrained. Nevertheless, Defendant then tied Plaintiff to a chair for hours at a time; confined him to his room for hours or even days, sometimes without any clothing; or forced him to wear handcuffs and shackles on his hands and feet for up to 10 days at a time.

111. Defendant wantonly engaged in this injurious conduct by applying force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline, particularly in light of Plaintiff's extensive and detailed record of mental health diagnoses.

112. Defendant's excessive use of force causes physical pain and suffering, mental anguish, emotional distress, the deterioration of Plaintiff's mental health and an undue risk of serious injury and/or premature death.

113. Defendant's refusal to protect children from harm, otherwise keep them physically safe and secure and free from unconstitutional practices like excessive use of restraints and prolonged confinement violates the constitutional rights of the Plaintiff and putative class members under the Fifth and Fourteenth Amendments to the United States Constitution, as

enforced through 42 U.S.C. § 1983.

114. Defendant's policies, practices, acts and/or omissions have placed or will place the named Plaintiff and the members of the putative class he seeks to represent at an unreasonable risk of suffering new or worsening serious illnesses, injuries, and harm.

115. Unless restrained by this Court, Defendant will continue to engage in the acts and omissions set forth herein that deprive immigrant detainees confined at SVJC of rights, privileges, or immunities secured or protected by the Constitution of the United States and federal law, and will cause irreparable harm to these youth.

## COUNT II
**Violations of the Fifth and Fourteenth Amendments**
**(42 U.S.C. § 1983 – Failure to Provide Adequate Mental Health Services)**

116. Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 105 as if fully set forth herein.

117. The Due Process Clause of the Fifth Amendment requires that all individuals who are detained by the State be afforded adequate medical care, including mental health care, during their detention. This right is enforced against the States through the Fourteenth Amendment.

118. As described above, Defendant failed to provide necessary care and treatment for Plaintiff's known and well-documented mental health conditions, diagnosed by the Defendant's or ORR's own psychologist as conduct disorder, mood dysregulation, and depression.

119. In particular, Defendant denied Plaintiff the necessary medical and psychological care required to treat an individual who has engaged in continuous self-mutilation.

120. Defendant engaged in this injurious conduct with deliberate indifference to Plaintiff's

19

serious medical needs, in light of his extensive and detailed record of mental health diagnoses, placing Plaintiff in substantial risk of serious harm.

121. Defendant's deliberate indifference to Plaintiff's serious mental health needs has caused, and continues to cause, the Plaintiff physical pain and suffering, mental anguish, emotional distress, the deterioration of his mental health and an undue risk of serious injury and/or premature death.

122. Defendant's policies, practices, acts and/or omissions constitute and reflect deliberate indifference to the serious mental health needs of the immigrant youth residing at SVJC and violate the Fifth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

123. Defendant's policies, practices, acts and/or omissions have placed or will place the named Plaintiff and the members of the putative class he seeks to represent at an unreasonable risk of suffering new or worsening serious mental health illnesses, injuries, and harm.

124. Unless restrained by this Court, Defendant will continue to engage in the acts and omissions set forth herein that deprive immigrant detainees confined at SVJC of rights, privileges, or immunities secured or protected by the Constitution of the United States and federal law, and will cause irreparable harm to these youth.

**COUNT II (IN THE ALTERNATIVE)**
**Violations of the Fifth and Fourteenth Amendments**
**(42 U.S.C. § 1983 – Failure to Provide Adequate Mental Health Services)**

125. Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 105 as if fully set forth herein.

126. The Due Process Clause of the Fifth Amendment requires that all individuals who are detained by the State be afforded adequate medical care, including mental health care,

during their detention. This right is enforced against the States through the Fourteenth Amendment.

127. As described above, Defendant failed to provide necessary care and treatment for Plaintiff's known and well-documented mental health conditions, diagnosed by the Defendant's or ORR's own psychologist as conduct disorder, mood dysregulation, and depression.

128. In particular, Defendant denied Plaintiff the necessary medical and psychological care required to treat an individual who has engaged in continuous self-mutilation.

129. By failing to provide Plaintiff with appropriate mental health care and treatment, Defendant has failed to exercise appropriate professional judgment, and/or exercised decision-making that is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the Defendant has not actually based its decision-making on such a judgment.

130. Defendant's failure to adequately treat Plaintiff's mental health needs has caused, and continues to cause, physical pain and suffering, mental anguish, emotional distress, the deterioration of his mental health and an undue risk of serious injury and/or premature death.

131. Defendant's policies, practices, acts and/or omissions constitute a failure to exercise professional judgment and/or a substantial departure from accepted professional judgment, practice, or standards as to the appropriate treatment of the mental health needs of the immigrant youth residing at SVJC and violate the Fifth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

Case 5:17-cv-00097-EKD   Document 1   Filed 10/04/17   Page 21 of 25   Pageid#: 21

132. Defendant's policies, practices, acts and/or omissions have placed or will place the named Plaintiff and the members of the putative class he seeks to represent at an unreasonable risk of suffering new or worsening serious mental health illnesses, injuries, and harm.

133. Unless restrained by this Court, Defendant will continue to engage in the acts and omissions set forth herein that deprive immigrant detainees confined at SVJC of rights, privileges, or immunities secured or protected by the Constitution of the United States and federal law, and will cause irreparable harm to these youth.

## COUNT III
### Violations of the Fifth and Fourteenth Amendments
### (42 U.S.C. § 1983 – Discrimination on the Basis of Race)

134. Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 105 as if fully set forth herein.

135. Plaintiff enjoys a Fourteenth Amendment right to due process under the laws, including the right to be free from discrimination on the basis of his race.

136. Plaintiff, a Latino youth, has been treated differently than Caucasian youth detained at the facility with whom he is otherwise similarly situated.

137. Defendant's statements to Plaintiff and other immigrant youth demonstrate that such unequal treatment was the result of intentional or purposeful discrimination.

138. There is no legitimate penological interest or rational basis for subjecting Plaintiff and other immigrant youth to unequal treatment on the basis of their race.

139. Due to Defendant's arbitrary and irrational discrimination against Plaintiff and putative class members on the basis of their race, the Defendant has denied the Plaintiff and others similarly situated their right to equal protection guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

140. Unless restrained by this Court, Defendant will continue to engage in the acts and omissions set forth herein that deprive immigrant detainees confined at SVJC of rights, privileges, or immunities secured or protected by the Constitution of the United States and federal law, and will cause irreparable harm to these youth.

**COUNT IV**
**Violations of the Fifth and Fourteenth Amendments**
**(42 U.S.C. § 1983 – Discrimination on the Basis of National Origin)**

141. Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 105 as if fully set forth herein.

142. Plaintiff enjoys a Fourteenth Amendment right to due process under the laws, including the right to be free from discrimination on the basis of his national origin.

143. Plaintiff, a citizen of Mexico, has been treated differently than United States citizen youth detained at the facility with whom he is otherwise similarly situated.

144. Defendant's statements to Plaintiff and other immigrant youth demonstrate that such unequal treatment was the result of intentional or purposeful discrimination.

145. There is no legitimate penological interest or rational basis for subjecting Plaintiff and other immigrant youth to unequal treatment on the basis of their national origin.

146. Due to Defendant's arbitrary and irrational discrimination against Plaintiff and putative class members on the basis of their national origin, the Defendant has denied the Plaintiff and others similarly situated their right to equal protection guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

147. Unless restrained by this Court, Defendant will continue to engage in the acts and omissions set forth herein that deprive immigrant detainees confined at SVJC of rights, privileges, or immunities secured or protected by the Constitution of the United States and

federal law, and will cause irreparable harm to these youth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Declare that the acts and omissions of the Defendant as alleged in this Complaint violate the Constitution and laws of the United States;

b. Enter a preliminary and permanent injunction requiring the Defendant, its agents, employees and all persons acting in concert with or on behalf of the Defendant to cease their unconstitutional and unlawful practices;

c. Certify this case as a Class Action pursuant to Fed. R. Civ. P. 23(b)(2);

d. Designate undersigned counsel as attorneys for the certified class;

e. Award to the Plaintiff reasonable costs and attorney's fees; and

f. Grant the Plaintiff all such other further relief as the Court deems just.

## **JURY DEMAND**

Plaintiff demands trial by jury for all claims which may be so tried.

Dated: October 4, 2017       Respectfully submitted,

By: /s/ Christine T. Dinan
Christine T. Dinan (VSB No. 84556)
Jonathan M. Smith (*pro hac vice* forthcoming)
Matthew K. Handley (*pro hac vice* forthcoming)
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
11 Dupont Circle, NW, Suite 400
Washington, D.C. 20036
(202) 319-1000 (telephone)
(202) 319-1010 (facsimile)
christine_dinan@washlaw.org
jonathan_smith@washlaw.org
matthew_handley@washlaw.org

24

Theodore A. Howard (*pro hac vice* forthcoming)
WILEY REIN LLP
1776 K Street NW
Washington, D.C. 20006
(202) 719-7120 (telephone)
thoward@wileyrein.com

*Attorneys for Plaintiff John Doe*