# JOHN DOE 4

*vs*

# SHENANDOAH VALLEY JUVENILE CENTER

Deposition of

*Kelsey Rebecca Wong*

*August 22, 2018*



Hart REPORTING AND VIDEOCONFERENCING
Advancing with Technology and Excellence

Statewide Coverage in Virginia    National and International Scheduling

590 Neff Avenue, Suite 2000        1020 Ednam Center, Suite 002       205 34th Street, #1601
Harrisonburg, VA  22801            Charlottesville, VA  22903          Virginia Beach, VA  23452
(540) 801-0288                     (434) 296-3111                      (757) 227-4241

```
 1            IN THE UNITED STATES DISTRICT COURT
 2           FOR THE WESTERN DISTRICT OF VIRGINIA
 3                    HARRISONBURG DIVISION
 4      _____
 5    JOHN DOE 4, et al., by and through  )
 6    their next friend, NELSON LOPEZ,    )
 7    on behalf of themselves and all     )
 8    persons similarly situated,         )
 9                          Plaintiffs,)  CASE NO.
10    v.                                 )  5:17-cv-0097
11    SHENANDOAH VALLEY JUVENILE CENTER   )
12    COMMISSION,                         )
13                          Defendant.)
14    _____
15
16          Deposition of KELSEY REBECCA WONG
17                  Harrisonburg, Virginia
18             Wednesday, August 22, 2018
19                      9:30 a.m.
20                   Pages 1 - 225
21       Reported by:  Karen L. Hart, RMR-CRR
22
23
24
25
```

COPY



Page 92

```
 1   necessary if we can't set the expectation upfront.
 2   So they're posted throughout the facility based on
 3   the area where the child is.
 4        Q.   So what were the rules previously that you
 5   couldn't do?
 6        A.   There is a list of them on the previous
 7   resident orientation handbook.  I can't remember all
 8   of them.
 9        Q.   Can you give me some examples?
10        A.   It's been a long time since I've seen
11   them.
12        Q.   When did this change take place?
13        A.   We implemented the new behavioral
14   management program in August of 2016.  We started
15   redeveloping it in February of 2016.
16        Q.   So is it still the case that, for example,
17   kids must walk through the hallways with their hands
18   behind their back?
19        A.   Uh-huh, yes.  Sorry.
20        Q.   And what's the reason for that rule?
21        A.   I think it's to maintain order in the
22   hallways, to make sure that items on the wall -- just
23   to maintain order in the hallways, I guess.
24        Q.   What about the no talking at meals?
25        A.   I think that is mainly a logistic reason,
```


www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278

1  programs were the previous behavioral management
2  program had prescribed consequences or prescribed
3  amount of time in a room depending on the incident
4  that occurred or the charge, I guess, and there
5  weren't -- there were positive behavioral enforcers,
6  but they were expecting kids to be able to think a
7  little bit more long term and have delayed
8  gratification, which most of the kids that we work
9  with can't wait that long. And so we wanted to
10 provide more carrots for kids to have more positive
11 behavioral incentives.
12         So we based our behavioral management
13 program off of PBIS, the positive behavioral
14 innovation support system, where you lay down a
15 groundwork of behavioral expectations and then
16 provide behavioral incentives not only daily but
17 weekly, monthly, intermittent -- intermittently.
18         MS. LIEBERMAN: Can I have this marked?
19
20         (Wong Deposition Exhibit No. 14 was marked
21 for identification and attached to the transcript.)
22
23 BY MS. LIEBERMAN:
24    Q.   Ms. Wong, you have before you a document
25 that has been marked as Wong Exhibit 14. I wonder if



Page 111

```
 1      Q.      As a disciplinary response?
 2      A.      Yes.
 3      Q.      And there are two kinds, short term and
 4   indefinite.  Short term is defined as less than eight
 5   hours.
 6      A.      I think it's up to 24 hours.  It says less
 7   than eight hours but could be up to 24 hours.
 8      Q.      Right.  Yes.  Thank you.
 9              Is that still the facility's concept of
10   short-term isolation?
11      A.      We don't have a term for short-term
12   isolation in the new behavioral management program.
13      Q.      Is -- do you have -- well, we'll get to
14   that in a minute.
15              The second is indefinite, duration of more
16   than 24 hours but not to exceed 72.  Is that
17   something that the facility still uses?
18      A.      We don't have anything with that term for
19   indefinite.
20      Q.      And why did the facility decide to stop
21   using a short-term and indefinite duration policy?
22      A.      This is about the prescribed room time for
23   a specific violation, and we wanted to move away from
24   that because our idea is that kids will be more
25   successful if they're in programming and returning
```



1  them to programming as soon as possible once they're
2  calm.
3      Q.   And in the old policy, it was a set time
4  period they had to satisfy?
5      A.   Yes.
6      Q.   If you turn with me to the following page
7  13, there should be some unnumbered pages with grids.
8  Do you see those?
9      A.   Yes.
10     Q.   What are those?
11     A.   This is a list of disciplinary measures
12  used for violation of rules.
13     Q.   And were these guidelines for staff?
14     A.   Yes.
15     Q.   And what were they intended to do?
16     A.   To provide kind of a crosswalk of measures
17  that can be used for offenses.
18     Q.   It says which level of disciplinary
19  measures will be used for a violation at the top.
20     A.   Yes.
21     Q.   Does that mean that staff were required to
22  follow the designations in this grid?
23     A.   They can follow any of the Xs.
24     Q.   Or must they follow the Xs?
25     A.   They should be following the Xs or

Hart
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278