IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JOHN DOE 4, by and through his next friend, NELSON LOPEZ, on behalf of himself and all persons similarly situated )<br><br>*Plaintiffs*,<br><br>v.<br><br>SHENANDOAH VALLEY JUVENILE CENTER COMMISSION,<br><br>*Defendant*. | Civil Action No. 5:17-cv-00097-EKD |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF GREGORY N. LEWIS, PSY.D.

Defendant Shenandoah Valley Juvenile Center Commission ("SVJC"), by counsel, submits the following Memorandum in Support of its Motion *in Limine* to exclude Gregory N. Lewis, Psy.D., from providing expert testimony:

### INTRODUCTION

Plaintiffs, unaccompanied Latino immigrant youths detained at SVJC, allege they are subjected to "unconstitutional conditions that shock the conscience" at SVJC. *See* Second Am. Compl. Dkt. No. 68, at ¶ 1. With respect to mental health care, Plaintiffs claim SVJC "has a policy or practice of denying Plaintiff and class members access to appropriate mental health treatment and counseling with licensed mental health professionals, in violation of well-established professional standards." *Id.* at ¶ 95.

Plaintiffs identified Gregory N. Lewis, Psy.D. (Dr. Lewis), a Chicago clinical psychologist, on September 10, 2018. *See* Pls.' Rule 26(a)(2)(A) Disclosures, attached as **Exhibit A**. Although Dr. Lewis acknowledges that SVJC provides some mental health treatment to the youths in its

care, he believes mental health care at SVJC is deficient. More specifically, Dr. Lewis believes SVJC does not implement a "trauma-informed approach," which he contends is the standard of care applicable to all detention facilities. *See* Report of Gregory N. Lewis, Psy.D., September 11, 2018, attached as **Exhibit B**, ¶¶ 174, 179. Dr. Lewis's opinions and his 50-page report, which includes his forensic psychological evaluations of John Does 1 and 4, is based on Dr. Lewis's review of: limited records for John Does 1-4 and declarations (drafted by attorneys) for three additional youths. In an "Executive Summary" to his report, Dr. Lewis opines that:

> (1) SVJC staff do not demonstrate an understanding of the manifestations of trauma and stress in youth, do not utilize and therefore do not appear to be well-training [sic] in utilizing trauma-informed approaches that are the standard of care in all stages of the juvenile justice system;
>
> (2) The predominant approach utilized to manage youth at SVJC is punishment and behavioral control through methods such as solitary confinement, physical restraint, strapping to a chair, and loss of behavioral levels;
>
> (3) These approaches are not only ineffective, but have a profound negative impact on youth . . . and can have long-term deleterious consequences that are difficult to remediate;
>
> (4) In summary both mental health care and the overall care provided at SVJC are deficient and fall well below professional standards of care in the juvenile justice system.

*See* Ex. B at p. 1.

Dr. Lewis should not be permitted to offer these opinions at trial because: (1) his opinions lack an adequate factual basis and are insufficient under Fed. R. Civ. P. 702(b) and (2) his opinions regarding the standard of care applicable to SVJC are subjective and not the product of reliable principles and methods under Fed. R. Civ. P. 702(c).[1]

---

[1] Further, to the extent the Court decides SVJC's Motion for Protective Order (Dkt. Nos. 92-93) and/or Motion for Summary Judgment (Dkt. Nos. 99-100) in SVJC's favor, Dr. Lewis's opinions are irrelevant. *See*, *e.g.*, *Tamko Bld'g. Prods. v. Factual Mut. Ins. Co.*, 890 F. Supp. 2d 1129, 1143 n. 4 (E.D. Mo. 2012) (granting motion to exclude expert witnesses where "the testimony of those witnesses is no longer relevant in light of my summary judgment rulings.").

## STANDARD

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. The Rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Fed. R. Evid.* 702.

A district court acts as a gatekeeper and, before admitting expert testimony, must perform a preliminary assessment to determine whether the proffered testimony is reliable and relevant. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). "The test of reliability is flexible" and "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *United States v. Wilson*, 484 F. 3d 267, 274-75 (4th Cir. 2007) (quoting *Kumho*, 526 U.S. 137 at 141-42) (emphasis in original). All expert testimony, whether scientific or experiential in nature, must meet the requirements of reliability and relevance. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-50 (1999). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 157.

Thus, "[a]n opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an expert who purports to be a scientist." Fed. R. Evid. 702, Advisory Comm. Notes (quoting *Watkins v. Telsmith, Inc.*, 121 F. 3d 984, 991 (5th Cir. 1997) ("[I]t seems

3

exactly backwards that experts who purport to rely on general engineering principles and practical experience might escape screening by the district court simply by stating that their conclusions were not reached by any particular method or technique.")). An expert who relies solely or primarily on experience to reach the opinions proffered "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702, Advisory Comm. Notes. Again, the district court must do more than "tak[e] the expert's word for it." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough.")

The more subjective an expert's conclusions, the more likely the testimony should be excluded as unreliable. *See O'Connor v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir. 1994) (expert testimony based on subjective methodology held properly excluded). While the decision to admit or exclude expert testimony is discretionary, "[r]ed flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Best v. Lowe's Home Ctrs., Inc.*, 563 F. 3d 171, 177 (6th Cir. 2009). The party proffering expert testimony bears the burden to prove the testimony is admissible. *Higginbotham v. KCS Int'l., Inc.*, 85 F. App'x 911, 915 (4th Cir. 2004) (quoting *Daubert*) ("[T]he proponent of the expert proffer bears the burden of establishing admissibility by a preponderance of proof.").

## ARGUMENT

### 1. Dr. Lewis's Opinions Are Unreliable Because They are Based on Insufficient Information and Lack Foundation.

Dr. Lewis simply has not reviewed or considered sufficient information to offer the opinions he maintains at trial. The list of what Dr. Lewis has *not* reviewed to reach his opinions is far more extensive than the limited, self-serving list of what Dr. Lewis has seen and considered to reach his opinions. To write his report, Dr. Lewis evaluated John Does 1 and 4, reviewed records for John Doe 1 and limited records for John Does 2, 3, and 4, and reviewed the declarations (drafted by attorneys for the express and sole purpose of litigation) of three other youths.[2] *See* Deposition Transcript of Gregory N. Lewis, Psy.D., attached as **Exhibit C**, 55:24-56:1; 91:11-23. He has never met an unaccompanied youth detained at SVJC other than John Does 1 and 4, nor has he interviewed any member of the SVJC staff. *Id.* at 44:16-19; 56:21-57:50. Dr. Lewis has not reviewed or did not consider relevant:

- Any statement or declaration of an SVJC staff member other than Kelsey Wong's Affidavit attached to SVJC's Opposition to Plaintiffs' Motion for Preliminary Injunction (*Id.*, 52:4-13);

- Employment, personnel, or disciplinary records for SVJC staff (*Id.*, 249:2-7);

- SVJC training materials (*Id.*, 249:8-11);

- Deposition testimony of SVJC clinicians and other staff (*Id.*, 256:11-257:8);

- The cooperative agreement between the Office of Refugee Resettlement ("ORR") and SVJC which governs the placement and care of unaccompanied youth by ORR at SVJC (*Id.*, 124:12-125:14);

- Virginia's regulations governing the care of juveniles (126:24-127:7);

---

[2] Dr. Lewis testified he did not review "the entire file" for John Does 1-4 and that he had "much more [to review] for John Doe 1 than I did for the others." Dr. Lewis was not able to review "a lot" of the documentation sent to him regarding John Doe 4 until after he submitted his report. Ex. C, 60:14-61:12.

- Audit or monitoring reports of SVJC from ORR, the Virginia Department of Juvenile Justice, or related to the Prison Rape Elimination Act (250:7-16).

Dr. Lewis has reviewed seven or eight videos of youth at SVJC, but did not do so until after submitting his report, and testified he could not determine which youths the videos depicted. *Id.* at 251:5-12; 253:1-6.[3] Dr. Lewis has visited SVJC (to evaluate John Doe 4), but did not tour the facility and has never seen pictures of the interior of the facility. *Id.*, 105:4-22; 250:17-21. Although his report references statistics "captured by BRG," Dr. Lewis has never reviewed Dr. Diver's report and had never heard of Dr. Diver at the time of his deposition. *Id.*, 79:16-80:1; *See* Ex. B at ¶ 166. Dr. Lewis assumed the reliability and accuracy of Dr. Diver's numbers. Ex. C, 191:16-18.[4]

In sum, Dr. Lewis's opinions, which he extrapolates to an entire class of individuals, rest on his evaluation of two individuals, review of limited records for four, and review of attorney-drafted declarations for an additional three. Dr. Lewis takes the declarations he reviewed at face value, and did nothing to corroborate or verify their contents. Ex. C, 63:18-64:7. Dr. Lewis does not know how many unaccompanied youths might be detained at SVJC at a given time, nor does he know what time-period the certified class encompasses. *Id.*, 104:15-105:17. Dr. Lewis testified he would "never diagnose somebody without seeing them." *Id.*, 259:5-6. Nevertheless, he

---

[3] By contrast, in a previous case involving immigrant youth in which Dr. Lewis served as an expert, Dr. Lewis not only reviewed video to develop his conclusions but traveled to Honduras to locate and interview youths who were part of the case. Ex. C, 13:1-7; 13:17-14:2.

[4] Moreover, for all the reasons stated in SVJC's Motion *in Limine* to Exclude Expert Testimony of Dr. Diver, Dr. Diver's statistics are inaccurate. To the extent Dr. Lewis relied upon Dr. Diver's calculations or took them into account, Dr. Lewis's opinions are inaccurate as well and should be excluded.

proposes to testify and give clinical opinions regarding John Does 2-3, whom he has never met or talked to.

A trial court "must probe the reliability and relevance of expert testimony any time such testimony's factual basis, data, principles, methods, or their application are sufficiently called into question." *EEOC v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015). *See also Tyger Constr. Co. Inc. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record."). Courts "have consistently excluded expert testimony that 'cherry-picks' relevant data," *EEOC v. Freeman*, 778 F.3d at 469 (collecting cases). Here, Dr. Lewis's testimony should be excluded because he has failed to consider sufficient facts to develop reliable opinions, improperly extrapolates his findings to the class, and relies on a limited, self-serving subset of available evidence and information germane to the case.

**2. Dr. Lewis's Opinions Are Subjective and Not the Product of Reliable Principles and Methods.**

**A. Dr. Lewis's Standard of Care Opinions Are Subjective.**

Dr. Lewis bases his opinions on an inadequate data set, and he should not be permitted to testify for this reason alone. But Dr. Lewis should also be precluded from testifying because his opinions regarding trauma-informed care are subjective and not based on any objective methodology. Methodology can vary based on "the nature of the issue, the expert's particular expertise, and the subjects of his testimony." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199-200 (4th Cir. 2001) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). In the context of "experiential expert testimony," which "does not 'rely on anything like a scientific method,'" "an expert may be qualified on the basis of experience." *United States v. Wilson*, 484 F. 3d 267, 274 (4th Cir. 2007).

7

However, "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Pugh v. Louisville Ladder, Inc.*, 361 F. App'x. 448, 454, n.4 (4th Cir. 2010) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); Fed. R. Evid. 702, Advisory Comm. Notes ("Expert testimony rooted in subjective belief or unsupported speculation does not suffice."). Accordingly, "[a] reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglseby v. General Motors Corp.*, 190 F. 3d 244 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 590, 592-93). *See also Cady v. Ride-Away Handicap Equip. Corp.*, 702 F. App'x 120, 127 (4th Cir. 2017) (affirming district court's exclusion of expert testimony due to the expert's "various methodological flaws and omissions.").

Dr. Lewis believes "[t]rauma-informed approaches are the standard of care in all stages of the juvenile justice system." Ex. B, ¶ 174. According to Dr. Lewis, SVJC fails to adhere to a "trauma-informed approach": "My evaluations of Doe's [sic] 1 and 4, along with the records provided me, along with my review of the declarations of the other plaintiffs, suggests that the approach utilized with the detainees at SVJC was primarily based on behavioral control and punishment that was often of a humiliating and abusive nature." *Id.*, ¶ 179. In deposition testimony, Dr. Lewis acknowledged that, even in his opinion, SVJC is doing some things right. As examples, Dr. Lewis testified that SVJC assesses children for trauma at intake, diagnoses trauma, and provides at least some training in trauma-informed care. Ex. C, 82:5-17; 86:18-87:3. Dr. Lewis's "concern" is that trauma-informed care doesn't "seem to be integrated" at SVJC. Ex. C, 82:15-17.

Dr. Lewis bases his assertions regarding trauma-informed care on: (1) the aspirational standard held out by the National Child Traumatic Stress Network ("NCTSN"); (2) a 2012 publication, "Report of the Attorney General's National Task Force on Children Exposed to Violence," and (3) his experience.[5]  Ex. C, 92:15-22; 95:6-12; 123:3-16; 192:11-193:22.  These sources are inadequate bases for expert opinion.  Dr. Lewis's opinions are based on his own subjective methodology and personal opinions and should be excluded.

Neither the NCTSN nor the Attorney General's Task Force report are binding, regulatory, or applicable to SVJC or detention centers like it in any way.  Moreover, the standards cited in these materials are advisory and aspirational in nature.  Dr. Lewis accepts that Congress established the NCTSN with the *mission* of improving the standard of care in services for traumatized children, and that at one point the NCTSN's standard of care was necessarily aspirational. Ex. C, 93:14-95:5.  However, he cannot say when trauma-informed care shifted from a goal to an accepted standard.  *Id.*, 94:6-17.  Likewise, the 2012 Report Dr. Lewis relies upon states at the outset: "U.S. Attorney General Eric H. Holder, Jr., charged this task force with *recommending* ways our nation can prevent, reduce, and treat children's exposure to violence."[6] (emphasis added).  Moreover, Dr. Lewis agrees that trauma-informed care is not mandated, codified, or required.  *Id.*, 94:18-95:5.

---

[5] Dr. Lewis has completed five one-day trainings in forensic psychology and estimates he has participated in eight approximately ninety minute symposiums or meetings covering forensic psychology. Ex. C, 38:19-39:10; 39:15-41:4.  Dr. Lewis acknowledges that forensic psychology is a subspecialty and that board certification in forensic psychology is "highly recommended," and will likely soon be required, but he is not board certified in forensic psychology and instead has "been able to get a lot of [his] training through workshops."  Ex. C, 36:13-37:7.

[6] The full report is available at: https://www.justice.gov/defendingchildhood/cev-rpt-full.pdf and is cited on page 41 of Dr. Lewis's report, Exhibit B.

Dr. Lewis's opinions regarding trauma-informed care are exactly what the Fourth Circuit contemplated when it noted, "we are unprepared to agree that 'it is so if an expert says it is so.'" *Alevromagiros v. Hechinger, Co.*, 993 F. 2d 417, 421 (4th Cir. 1993) (affirming a lower court's decision to reject an expert's opinion regarding an industry standard) (internal citation omitted). Dr. Lewis's methodology with regard to the standard of care applicable to SVJC is nothing more than his subjective opinion and his opinions should be excluded accordingly.

### B.     Dr. Lewis Cannot Testify to Causation.

Dr. Lewis should also be precluded from offering causation testimony or any opinion that attempts to attribute a youth's detention at SVJC to current diagnoses or symptoms. As Dr. Lewis explained during his deposition, forensic psychological evaluations differ from clinical evaluations. Whereas the purpose of a clinical assessment is to evaluate an individual's problems and recommend treatment, a forensic psychological evaluation purports to "inform the court of how this individual's psychological problems are affecting the legal question." Ex. C, 21:16-22:6.

When Dr. Lewis initially evaluated John Doe 1 in August 2016, he did so at the behest of the Young Center, an advocacy group for immigrant children, not at the request of John Doe 1's class action attorneys. *Id.*, 150:3-18. Thus, when he evaluated John Doe 1, Dr. Lewis was not even attempting to "inform the court of how [Doe 1's] individual's psychological problems are affecting the legal question" in this case. Instead, Dr. Lewis was evaluating John Doe 1 to make treatment recommendations and to determine whether he was competent to participate in legal proceedings. *Id.*, 210:13-211:8.

As Dr. Lewis explained:

> [T]he initial evaluation that I did on Doe 1, even though it was a forensic evaluation because it just wasn't – again, I was not involved in the civil case at all at that point. So it was forensic in the sense that it was for immigration and for the competency question that the judge needed help with, so it was forensic in that there was a psycho-legal question being asked, but I wasn't – I didn't have the mind set of a civil case at that point . . . So I didn't ask as much about his experience in detention.

Ex. C, 61:19-62:14.

Thus, even if Dr. Lewis could connect any alleged deficiencies by SVJC to care for John Doe 1 to John Doe 1's trauma, Dr. Lewis did not ask the questions to be able to do so, and his opinions are irrelevant and inadmissible.

Similarly, Dr. Lewis acknowledged that psychological harm is inevitable in detention, and that it is impossible to connect specific trauma to a particular diagnosis or manifestation in an individual: "The abuse I'm talking about here is more the trauma of not dealing with him appropriately, not understanding his trauma and then that's going to retraumatize him . . . So anyway, you can't tease out exactly how much is due to Shenandoah, you're right. But I do feel that there is responsibility there on the part of Shenandoah staff." *Id.*, 201:7-10; 206:7-10. Dr. Lewis cannot address the "psycho-legal question being asked" with respect to Doe 1. He cannot describe how SVJC's claimed failure to take an adequately trauma-informed approach in caring for Doe 4 has harmed Doe 4 or to what extent. And he should not be permitted to extrapolate the limited value of his findings in the two individuals he did evaluate to an entire class.

Even if Dr. Lewis's review of the facts and methodology were sufficient to render his opinions admissible, he cannot connect his evaluations of John Does 1 and 4 to any alleged failure on the part of SVJC to take a trauma-informed approach to their care, and his opinions should also be excluded on this basis. For all of these reasons, Dr. Lewis's proffered testimony is unreliable and subjective, and should be excluded at trial.

11

## **CONCLUSION**

Shenandoah Valley Juvenile Center Commission, by counsel, respectfully requests that the Court grant its Motion in *Limine* and exclude Gregory N. Lewis, Psy.D., from testifying at trial.

DATED: October 22, 2018

> **Respectfully submitted,**
> **SHENANDOAH VALLEY JUVENILE**
> **CENTER COMMISSION**
> *By Counsel*

### LITTEN & SIPE L.L.P.

By: /S/ Harold E. Johnson

Jason A. Botkins
Melisa G. Michelsen
Virginia State Bar No. 70823
Virginia State Bar No. 40001
410 Neff Avenue
Harrisonburg, Virginia 22801-3434
Telephone: (540) 434-5353
Facsimile: (540) 434-6069
Email: jason.botkins@littensipe.com
Email: melisa.michelsen@littensipe.com

Harold E. Johnson (VSB No. 65591)
Meredith M. Haynes (VSB No. 80163)
Williams Mullen
200 South 10th Street
Richmond, Virginia 23219
Telephone (804) 420-6000
Facsimile: (804) 420-6507
Email: hjohnson@williamsmullen.com
Email: mhaynes@williamsmullen.com
*Counsel for Defendant Shenandoah Valley Juvenile Center Commission*

# CERTIFICATE

I certify that on the 22nd day of October, 2018, I electronically filed the forgoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

| | |
|---|---|
| Hannah M. Lieberman (*pro hac vice*) | Theodore A. Howard (*pro hac vice*) |
| Tiffany Yang (*pro hac vice*) | Bradley C. Tobias (VSB No. 88046) |
| Mirela Missova (*pro hac vice*) | J. Ryan Frazee (*pro hac vice*) |
| | |
| Washington Lawyers Committee | Wiley Rein LLP |
| for Civil Rights and Urban Affairs | 1776 K Street, NW |
| 11 Dupont Circle, NW, Suite 400 | Washington, D.C. 20006 |
| Washington, D.C. 20036 | Telephone: (202) 719-7120 |
| Telephone: (202) 319-1000 | Facsimile: (202) 719-7049 |
| Facsimile: (202) 319-1010 | thoward@wileyrein.com |
| hannah_lieberman@washlaw.org | btobias@wileyrein.com |
| tiffany_yang@washlaw.org | jfrazee@wileyrein.com |
| mirela_missova@washlaw.org | |

*Attorneys for Plaintiff John Doe 4*

                                                  /s/ Harold E. Johnson
                                         *Counsel for Shenandoah Valley*
                                            *Juvenile Center Commission*