**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Harrisonburg Division**

JOHN DOE 4, by and through his next friend,
NELSON LOPEZ, on behalf of himself and all
persons similarly situated,

Civil No. 5:17-cv-00097-EKD/JCH
Judge Elizabeth K. Dillon

*Plaintiffs,*

v.

SHENANDOAH VALLEY JUVENILE
CENTER COMMISSION,

*Defendant.*

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND FOR MODIFICATION OF THE AMENDED SCHEDULING ORDER

Plaintiffs John Doe 4, *et al*., by their attorneys, submit this Memorandum of Law in

support of their Motion to Compel Discovery and for Modification of the Amended Scheduling

Order.

### INTRODUCTION AND STATEMENT OF THE ISSUES

In accordance with relevant provisions of the Amended Scheduling Order entered by the

Court in this action on August 22, 2018, Defendant Shenandoah Valley Juvenile Center

Commission ("SVJCC"), by counsel, served Plaintiffs with Defendant's Disclosure of Expert

Testimony on September 28, 2018.[1]

In that submission, SVJCC designated a single expert witness pursuant to Fed. R. Civ.

P. 26(a)(2)(B) -- Anne Nelsen -- and attached a copy of Ms. Nelson's Report containing her

opinions, her CV, and other items contemplated for disclosure by the Rule. SVJCC, pursuant to

---

[1]    *See* true and correct copy attached hereto as Exhibit 1.

Rule 26(a)(2)(C), also identified *six* additional individuals employed by or affiliated with the Shenandoah Valley Juvenile Center ("SVJC") as persons whose testimony at trial might include expert opinions. Until that time, these individuals, including current and former mental health clinicians whom Plaintiffs had already previously deposed, had only been categorized by Defendant as persons with knowledge of facts relevant to the parties respective claims and defenses in the case.

On October 5, 2018, in communications exchanged following the completion of Defendant's deposition of Plaintiffs' expert witness Andrea Weisman, Plaintiffs' counsel Theodore Howard advised Defendant's counsel Harold Johnson of Plaintiffs' desire to take the depositions of Anne Nelsen and Timothy Kane, M.D., one of the individuals disclosed pursuant to Fed. R. Civ. P. 26(a)(2)(C) in Defendant's Expert Disclosure. *See* Exh. 1 hereto, at 1-4. Mr. Howard further advised Mr. Johnson that Plaintiffs would likely also wish to depose Joseph Gorin, Psy. D., and Gustavo Rife, Psy. D., two clinical psychologists affiliated with SVJC who were also designated by Defendant pursuant to Rule 26(a)(2)(C). *Id.* at 4-5, 10-11. Mr. Johnson represented that he would inquire and obtain and provide Plaintiffs' counsel with dates upon which Ms. Nelson and Dr. Kane would be available for deposition as promptly as he could. No objection to Plaintiffs' possible depositions of Dr. Gorin and/or Dr. Rife was expressed.

On October 10, Mr. Johnson advised Plaintiffs' counsel that Ms. Nelsen was unavailable for deposition until October 29, and that her preferred date was October 30. The following day, he indicated that Dr. Kane's earliest availability would be November 2, and that "[t]he problem is that he's only got a three-hour window from 8am to 11am" on that date.[2]

---

[2]     *See* Email from H. Johnson to T. Howard and H. Lieberman, dated 10/10/18 (true and correct copy attached hereto as Exhibit 2); Email from H. Johnson to T. Howard, dated 10/11/18 (true and correct copy attached hereto as Exhibit 3).

By email correspondence on October 17, 2018, Plaintiffs' counsel Hannah Lieberman advised Defendant's counsel that Plaintiffs were willing to depose Ms. Nelsen on October 30, her preferred date, and that Plaintiffs were agreeable to depose Dr. Kane "from 8 to 11am on November 2, with the understanding that, if the deposition is not completed within that time, we will schedule a later date and time for completion." Ms. Lieberman also indicated, among other things, that Plaintiffs would like to depose the SVJC-affiliated clinical psychologists, Dr. Gorin and Dr. Rife, and proposed that these depositions be conducted on October 31, with a half-day for each witness.[3]

Later the same day, Mr. Johnson confirmed the October 30 date for Ms. Nelsen and the November 2 date for Dr. Kane, noting as to the latter that "[i]f you need more than three hours to depose [him], we can try to find a time to complete the deposition. However, I am not in a position to guarantee his availability." Mr. Johnson also advised that Defendant "cannot agree to your request to take additional 'expert' depositions of Evenor Aleman, Dr. Rife and/or Dr. Gorin at this late stage."[4]

On the following day, Ms. Lieberman corresponded with Mr. Johnson again, expressing Plaintiffs' disappointment with Defendant's position concerning the requested depositions of Mr. Aleman and Drs. Gorin and Rife, but offering, in the spirit of compromise, to forego a further deposition of Mr. Aleman and a deposition of Dr. Rife. In a response that evening, Mr. Johnson reiterated Defendant's refusal to agree to Plaintiffs' request to depose Dr. Gorin.

---

[3]     Email from H. Lieberman to J. Botkins, *et al*, dated 10/17/18 (true and correct copy attached hereto as Exhibit 4). Ms. Lieberman also expressed Plaintiff's interest in deposing Evenor Aleman, a mental health clinician at SVJC whom Plaintiffs had previously deposed as a fact witness, in light of Defendant's designation of Mr. Aleman as an expert pursuant to Rule 26(a)(2)C). *See id.*

[4]     Email from H. Johnson to H. Lieberman, dated 10/17/18 (true and correct copy attached hereto as Exhibit 5).

3

He also expressed Defendant's unwillingness to agree to any extension of the deadline for filing

by Plaintiffs of motions to exclude expert witnesses -- October 22, 2018 under the Court's

Amended Scheduling Order (*see* ECF Dkt. No. 81 at 2) -- despite the fact that Defendant's

experts were not made available to be deposed until after that deadline.[5]

As reflected by the attached correspondence, the parties have engaged in good-faith

efforts to resolve the disputes that are the subject of Plaintiffs' instant Motion, as required by

Rule 37(a)(1), Fed. R. Civ. P., but those efforts were unsuccessful.

## ARGUMENT

Operating in the context of an extraordinarily compacted procedural schedule that was

mutually agreed upon by the parties and approved by the Court in recognition of the significance

of the issues presented and in light of the Court's inability, due to the heavy demands on its

available time, to entertain Plaintiffs' Motion for Preliminary Injunction, the parties and their

respective counsel have conducted discovery, up until this point, in a collegial, cooperative

manner without any need to engage or involve the Court. Both sides, in words and actions, have

manifested a clear understanding that flexibility with respect to the deadlines established by the

Amended Scheduling Order would be required, and neither party has engaged -- heretofore -- in

conduct designed to prejudice the interests of the other.

Against this backdrop, Defendant's sudden determination to invoke hardball tactics in an

effort to curtail discovery which may be critical to Plaintiffs' preparation for trial is unfair,

unwarranted and, frankly, unbecoming. Although Dr. Kane and Dr. Gorin were included in

Defendant's Initial Disclosure, served March 5, 2018, as SVJC medical consultants that "may

---

[5]     Email from H. Lieberman to H. Johnson, dated 10/18/18 (true and correct copy attached
hereto as Exhibit 6); Email from H. Johnson to H. Lieberman, dated 10/18/18 (true and correct
copy attached as Exhibit 7).

4

have discoverable knowledge of Plaintiffs' medical evaluations, conditions and treatment" while detained at SVJC, Plaintiffs had no reason to believe that either of these individuals would be designated as experts who might be called upon in testimony at trial to offer opinions on a broad array of subject areas as set forth in Defendant's Disclosure of Expert Testimony until that submission was served on September 28, 2018.

As but one example of Plaintiffs' lack of knowledge in this regard, individuals employed by SVJC have uniformly testified at deposition that Dr. Kane, a psychiatrist who visits the facility approximately once every three weeks and sees detained class members concerning matters of medication administration, does not have any role in providing therapy to any of the children residing at SVJC.[6] However, according to the Defendant's Expert Disclosure:

> Dr. Kane may offer . . . opinions [including that] [t]he medical care, and specifically the mental health care, provided by SVJC to class members is appropriate and complies with applicable standards for a juvenile detention center housing a population that is at risk for mental health and psychiatric disorders. . . . [and that] [t]he mental health care provided to residents at SVJC is trauma-informed . . . [and that] [f]rom the standpoint of psychiatric care, the use of room confinement, personal restraint techniques and mechanical restraints, may be justified and necessary where a resident presents an immediate risk to himself, his peers or to staff.

*See* Exh. 1 at 2-3. Accordingly, the unanticipated substance of Defendant's Expert Disclosure as regards both Dr. Kane and Dr. Gorin provides a clear indication as to why Plaintiffs might conclude that it is necessary, as a matter of conscientious trial preparation, to depose each of these witnesses, particularly where their designation as experts was made pursuant to Rule 26(a)(2)(C) and neither of them generated a written report setting forth their opinions.

---

[6]     *See, e.g.* Transcript of Deposition of Kelsey R. Wong, dated Aug. 22, 2018, at 198:22-199:8; Transcript of Deposition of Evenor Aleman, dated Sept. 5, 2018, at 196:20-197:10; Deposition of Elizabeth Ropp, dated Sept. 26, 2018, at 97:8-16; Deposition of P. Andrew Mayles, dated Oct. 4, 2018, at 131:19-132-15 (relevant excerpts attached hereto as Exhibit 8).

5

Defendant has no good-faith basis to limit Plaintiffs' examination of Dr. Kane to three hours, to the extent Plaintiffs feel that more time is needed, much less to preclude Plaintiffs *entirely* from inquiring of Dr. Gorin to probe the substance of his intended opinion testimony before trial.

## I. DEFENDANT'S ARBITRARY REFUSAL TO MAKE DR. GORIN AVAILABLE FOR DEPOSITION SHOULD BE OVERRULED

In a conference among counsel immediately following the conclusion of Defendant's deposition of Plaintiffs' expert Andrea Weisman on October 5, 2018 -- within one week after Defendant's Expert Disclosure was provided -- Mr. Howard advised Mr. Johnson that Plaintiffs wished to depose Ms. Nelsen and Dr. Kane and that they would also likely want to depose Dr. Gorin and Dr. Rife. Mr. Johnson expressed no hint of objection in response to this advisory. Nor would any such objection have been anticipated since the parties, through accommodations extended on each side to the other throughout the discovery phase of this case, have made it clear to one another that strict adherence to the deadlines established by the Amended Scheduling Order was neither expected nor realistically practicable under the circumstances.

However, when Plaintiffs, by email communication transmitted on October 17, sought to nail down a specific date on which Drs. Gorin and Rife could be deposed, Defendant suddenly invoked the deadline for completing expert designations as a bulwark against making the witnesses available for deposition, even though the dates provided by Defendant to Plaintiffs for Defendant's experts Ms. Nelsen and Dr. Kane -- October 30 for Ms. Nelsen and November 2 for Dr. Kane -- are also well beyond that October 15, 2018 deadline set forth in the Amended Scheduling Order. Moreover, even after Plaintiffs scaled back the scope of their October 17 request and limited it to a deposition of Dr. Gorin, Defendant has refused to budge.

Despite Defendant's generalized assertions complaining of the lateness of Plaintiffs' request, it has not even remotely shown -- or really even attempted to show -- any genuine

6

prejudice or undue burden that would result from producing Dr. Gorin for a deposition per Plaintiffs' request. *See generally JAK Productions, Inc. v. Robert Bayer*, No. 2:15-cv-00361, 2015 WL 2452986, at *10 (S.D. W. Va. May 22, 2015) ("To prevail on the grounds of burdensomeness . . . the objecting party must do more to carry its burden than made conclusory and unsubstantiated arguments." (citing numerous authorities)); *see generally Consolidation Coal Co. v. Williams*, 453 F.3d 609, 620-21 (4th Cir. 2006) (affirming grant of motion to compel where resisting party "failed to offer anything more than conclusory assertions regarding the potentially burdensome aspect of the discovery request"); *Sonoco Productions Co. v. Guven*, No. 4:12-cv-0070-BHH, 2014 WL 547633, at *5 (D.S.C. Oct. 28, 2014) (party seeking to avoid discovery failed to make "the requisite evidentiary showing of undue burden"); *Stoney Glen, LLC v. Southern Bank & Trust Co*., No. 2:13cv8, 2013 WL 5514293, at *3 (E.D. Va. Oct. 2, 2013) ("To prevail on grounds of burdensomeness . . . the objecting party must do more to carry its burden than make conclusory and unsubstantiated arguments." (Citations omitted.)).

Simply stated, Defendant's bare insistence that producing Dr. Gorin for a deposition that Plaintiffs have estimated is likely to require no more than half of one day will somehow hamper their capacity to effectively represent SVJCC's interests in preparing for trial is wholly unsupported and does not merit this Court's imprimatur. Defendant should be ordered to work with Plaintiffs and Dr. Gorin to find a mutually convenient date and time for his deposition.

## II. DEFENDANT HAS NO LEGITIMATE BASIS UPON WHICH TO LIMIT PLAINTIFFS' DEPOSITION OF DR. KANE TO THREE HOURS

Defendant has offered Plaintiffs the opportunity to depose Dr. Kane between the hours of 8:00 a.m. and 11:00 a.m. on November 2, 2018; however, to the extent that Plaintiffs' counsel concludes that additional time to complete the examination of Dr. Kane's putative expert

7

opinions is needed, Defendant's counsel has advised that he is "not in a position to guarantee" any further availability on Dr. Kane's part. *See* Exhs. 3, 5 hereto.

Defendant's position in this regard is simply unacceptable. Defendant has designated Dr. Kane as an expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(C). There is no dispute that Plaintiffs made a timely request to depose Dr. Kane and they are entitled to conduct such deposition for up to seven (7) hours pursuant to Fed. R. Civ. P. 30(d)(1). While Plaintiffs may well conclude that the three hours within which they have agreed, without prejudice, to inquire of Dr. Kane on November 2 is sufficient for their purposes, to the extent more time is needed, Defendant is obligated to provide it. The Court should instruct Defendant accordingly.

## III.  MODIFICATION OF THE AMENDED SCHEDULING ORDER DEADLINE FOR FILING OF MOTIONS TO EXCLUDE EXPERTS IS WARRANTED

Plaintiffs advised Defendant of their desire to depose Ms. Nelsen and Dr. Kane on October 5, 2018 -- a date well in advance of the October 22, 2018 deadline established by the Amended Scheduling Order for the submission of motions to exclude experts. *See* ECF Dkt. No. 81 at 2. Putting aside for the moment Plaintiffs' request to depose Dr. Gorin, if Defendant had made Ms. Nelsen and Dr. Kane available for their depositions in a reasonably timely manner after Plaintiffs' notification, the depositions could have been conducted and completed within such time as would have allowed Plaintiffs to move to exclude the testimony of either or both of these witnesses within the October 22 deadline. Instead, the *earliest* date offered to Plaintiffs by Defendant for Ms. Nelsen's deposition was October 29, and the *only* date offered to Plaintiffs for Dr. Kane's deposition was November 2. Yet, Defendant insists that no extension on the deadline for filing motions to exclude should be permitted. *See* Exh. 7 hereto.

Defendant's unprincipled position in this regard should be flatly rejected by this Court. Plaintiffs have pledged to file their Motion(s) to Exclude -- if any -- within seven days after their

8

depositions of Ms. Nelsen, Dr. Kane and Dr. Gorin (if permitted) are completed. This proposal is fair and reasonable under the circumstances, is in keeping with the temporal symmetry of the Amended Scheduling Order (*i.e.*, motions to exclude to be filed seven days after the completion of expert discovery), and will allow for the completion of full briefing in advance of the omnibus Motions Hearing and Pretrial Conference set for December 3, 2018, thereby resulting in minimal disruption of the procedural schedule overall. Accordingly, the modest modification of the Amended Scheduling Order requested by Plaintiffs should be granted.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion should be granted.

DATED:     October 29, 2018

Respectfully submitted,

Hannah M. Lieberman (admitted *pro hac vice*)
hannah_lieberman@washlaw.org
Tiffany Yang (admitted *pro hac vice*)
tiffany_yang@washlaw.org
Mirela Missova (admitted *pro hac vice*)
mirela_missova@washlaw.org
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS
AND URBAN AFFAIRS
11 Dupont Circle, NW, Suite 400
Washington, D.C. 20036
(202) 319-1000 (telephone)
(202) 319-1010 (facsimile)

Theodore A. Howard (admitted *pro hac vice*)
thoward@wileyrein.com
Bradley C. Tobias (VSB No. 88046)
btobias@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, D.C. 20006
(202) 719-7120 (telephone)
(202) 719-7049 (facsimile)

By: _____
Theodore A. Howard

*Attorneys for Plaintiffs*

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## Harrisonburg Division

**JOHN DOE 4, by and through his next
friend, NELSON LOPEZ, on behalf of
himself and all persons similarly situated,**

    *Plaintiff,*

**v.**

**SHENANDOAH VALLEY JUVENILE
CENTER COMMISSION,**

    *Defendant.*

**CIVIL ACTION**

**Case No.: 5:17-cv-00097-EKD**

**Honorable Elizabeth K. Dillon**

## DEFENDANT'S DISCLOSURE OF EXPERT TESTIMONY

Defendant Shenandoah Valley Juvenile Center Commission ("SVJC") makes the

following disclosures in accordance with Rule 26 of the Federal Rules of Civil Procedure and the

Court's Amended Scheduling Order:

A.    SVJC's Fed. R. Civ. P. 26(a)(2)(B) Disclosure

    1.    Anne Nelsen
        1644 Jamestown Drive
        Salt Lake City, Utah 84121

Ms. Nelsen's initial report setting forth her qualifications, listing the materials reviewed,

and describing her opinions in this case is attached as Exhibit 1. Her report also includes a list of

cases in which she has previously provided expert testimony and a statement regarding the

hourly rate she is charging for her services in this case. A copy of Ms. Nelsen's curriculum vitae

is attached as Exhibit 2.

B.    SVJC's Fed. R. Civ. P. 26(a)(2)(C) Disclosures

    1.    Dr. Timothy Kane, MD
        907 Goose Creek Road, Suite 105

Fishersville, Virginia 22939

Dr. Kane is a licensed medical doctor and board certified psychiatrist. His curriculum vitae is attached as Exhibit 3.

SVJC anticipates that Dr. Kane will be called as a fact witness to testify regarding his provision of psychiatric care to class members at SVJC. Dr. Kane's factual testimony likely would involve his application of medical expertise and training in the treatment of class members. Therefore, to the extent such Dr. Kane's factual testimony implicates his specialized knowledge in the field of psychiatry and calls for expert opinions, SVJC designates Dr. Kane as an expert pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.

The subject matter of Dr. Kane's expected testimony will include the provision of medical care and mental health services to class members at SVJC and his treatment of individual class members, including John Doe 4. Dr. Kane bases his opinions on his experience providing psychiatric care to class members at SVJC, his interaction with other staff and clinicians at SVJC, and his treatment of individual residents. His testimony may also be based upon his experience working in psychiatric hospitals and correctional facilities throughout the Commonwealth of Virginia for 23 years.

In summary, SVJC expects that Dr. Kane may offer the following opinions:

- The medical care, and specifically the mental health care, provided by SVJC to class members is appropriate and complies with applicable standards for a juvenile detention center housing a population that is at risk for mental health and psychiatric disorders. The clinicians on staff at SVJC are independently licensed professional counselors, and they are qualified to provide therapeutic counseling and care to the residents at SVJC. In conjunction with those clinicians, Dr. Kane provides psychiatric care to those residents who need it in the form of medication management. Typically, Dr. Kane follows up with residents at SVJC every three weeks. He has never had to recommend more frequent follow-ups or more intensive psychiatric care. Residents

experiencing an acute psychiatric episode are hospitalized, rather than being treated at SVJC.

- The mental health care provided to residents at SVJC is trauma-informed. The clinicians at SVJC provide Dr. Kane with a summary of each resident's history which includes reference to traumatic events. Prior to each appointment, the clinicians provide Dr. Kane with an update regarding each resident's current level of functioning. As appropriate, Dr. Kane questions residents regarding symptoms of post-traumatic stress disorder or other mental health issues related to trauma and prescribe medications accordingly.

- From the standpoint of psychiatric care, the use of room confinement, personal restraint techniques and mechanical restraints, may be justified and necessary where a resident presents an immediate risk to himself, his peers or to staff. Such restraints, including the use of a restraint chair, are not unusual in psychiatric hospitals or other facilities housing individuals with psychiatric or psychological disorders. The restraint chair is generally accepted as the safest means of restraint when a psychiatric intervention is necessary.

- Dr. Kane is a mandatory reporter, meaning that he must report any reported or suspected abuse of residents at SVJC to the relevant authorities, such as the office of Child Protective Services within the Department of Social Services. Throughout his time working with residents at SVJC, Dr. Kane has never had to report an incident or suspicion of abuse or maltreatment.

- Dr. Kane may also testify regarding his treatment and evaluation of John Doe 4. His opinions in this regard are reflected in his treatment notes, which have been produced by SVJC in discovery. Dr. Kane's impression is that John Doe 4 seeks a lot of attention from SVJC staff and seeks out treatment or counseling. John Doe 4 has been through multiple medication changes, and he has given mixed messages regarding the efficacy of prescribed medications. John Doe 4 has also reported symptoms that do not align with his objective affect.

- To the extent that Plaintiffs are permitted to offer evidence regarding John Doe 1, John Doe 2, and/or John Doe 3, as proffered in the expert reports of Dr. Gregory Lewis and Dr. Andrea Weisman, Dr. Kane may also testify regarding his treatment and evaluation of those individuals. His opinions regarding those individuals are reflected in his treatment notes, which have been produced by SVJC in discovery.

2.    Dr. Joseph Gorin, Psy. D
        2607 Connecticut Ave. NW
        Washington, D.C. 20008

Dr. Gorin is a licensed clinical psychologist. His curriculum vitae is attached as Exhibit 4.

SVJC anticipates that Dr. Gorin may be called as a fact witness to testify regarding his psychological evaluation of John Doe 4 and his personal involvement in the care of other class members at SVJC. To the extent that Plaintiffs are permitted to offer evidence regarding John Doe 2, Dr. Gorin may also testify regarding his evaluation of John Doe 2. Dr. Gorin's factual testimony likely would involve his application of medical expertise and training in evaluating and formulating treatment recommendations for class members. Therefore, to the extent Dr. Gorin's factual testimony implicates his specialized knowledge in the field of psychology and calls for expert opinions, SVJC designates Dr. Gorin as an expert pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.

The subject matter of Dr. Gorin's expected testimony will include the provision of psychological evaluations and recommendations for mental health services to class members at SVJC and his psychological evaluation of individual class members, including John Doe 4. Dr. Gorin bases his opinions on his experience providing psychological evaluations to class members at SVJC, and his interaction with other staff and clinicians at SVJC. His testimony may also be based upon his experience working as a licensed clinical psychologist with immigrant populations in Virginia, Maryland, Washington, D.C., and other states.

In summary, SVJC expects that Dr. Gorin may offer the following opinions:

- The psychological evaluations and treatment recommendations provided by Dr. Gorin to class members are appropriate and comply with applicable standards for a juvenile detention center housing a population that is at risk for mental health and

psychological disorders. The clinicians on staff at SVJC are independently licensed professional counselors, and they are qualified to provide therapeutic counseling and care to the residents at SVJC. At the request of those clinicians, and subject to ORR approval, Dr. Gorin provides psychological evaluations and/or risk assessments to certain residents at SVJC. Dr. Gorin is available to discuss his evaluations with the clinicians at SVJC and often does so.

- Dr. Gorin's evaluations and formulation of treatment recommendations for residents at SVJC are trauma-informed. As appropriate, Dr. Gorin explores a resident's history of trauma when performing a psychological evaluation and makes recommendations addressing that resident's trauma. However, individuals have different levels of resiliency, and not all UCs at SVJC suffer from a mental disorder related to trauma. Even for residents who have suffered trauma, any behavioral management program requires some system of positive and negative consequences.

- From the standpoint of psychological care, the use of room confinement, personal restraint techniques and mechanical restraints, may be justified and necessary where a resident presents an immediate risk to himself, his peers or to staff.

- Dr. Gorin is a mandatory reporter, meaning that he must report any reported or suspected abuse of residents at SVJC to the relevant authorities, such as the office of Child Protective Services within the Department of Social Services. Throughout his time working with residents at SVJC, Dr. Gorin has never had to report an incident or suspicion of abuse or maltreatment.

- Dr. Gorin may also testify regarding his evaluation of John Doe 4. His opinions in this regard are reflected in his psychological evaluation of John Doe 4, which has been produced by SVJC in discovery. As noted in Dr. Gorin's evaluation, it is expected that Dr. Gorin will testify that his evaluation of John Doe 4 was unusual due to inconsistent responses and a lack of candor from John Doe 4.

- To the extent that Plaintiffs are permitted to offer evidence regarding John Doe 2, as proffered in the expert reports of Dr. Gregory Lewis and Dr. Andrea Weisman, Dr. Gorin may also testify regarding his evaluation of that individual. His opinions regarding John Doe 2 are reflected in his records, which have been produced by SVJC in discovery.

3.     Evenor Aleman
       573 Stonewall Drive
       Harrisonburg, Virginia 22801

Mr. Aleman is a licensed professional counselor and is employed by SVJC as a clinician in the ORR program. His curriculum vitae is attached as Exhibit 5.

SVJC anticipates that Mr. Aleman may be called as a fact witness to testify regarding his counseling of John Doe 4 and his personal involvement in the care of other class members at SVJC. To the extent that Plaintiffs are permitted to offer evidence regarding John Doe 1 and/or John Doe 2, Mr. Aleman may also testify regarding his counseling of those individuals. Mr. Aleman's factual testimony likely would involve his application of expertise, training and experience in the counseling of juveniles and, in particular, the class members. Therefore, to the extent Mr. Aleman's factual testimony implicates his specialized knowledge in the field of mental health counseling and calls for expert opinions, SVJC designates Mr. Aleman as an expert pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.

The subject matter of Mr. Aleman's expected testimony will include the provision of counseling and mental health services to class members at SVJC and his evaluation of individual class members, including John Doe 4. Mr. Aleman bases his opinions on his experience providing counseling services to class members at SVJC, and his interaction with other staff and clinicians at SVJC. His testimony may also be based upon his experience working as a licensed professional counselor in the Commonwealth of Virginia before his employment at SVJC.

In summary, SVJC expects that Mr. Aleman may offer the following opinions:

- The mental health care provided by SVJC to class members is appropriate and complies with applicable standards for a juvenile detention center housing a population that is at risk for mental health and psychological disorders. The clinicians on staff at SVJC are independently licensed professional counselors, and they are qualified to provide therapeutic counseling and care to the

6

residents at SVJC. Mr. Aleman meets individually with the UC residents in his care at least once a week, and often more frequently. He also hosts group meetings of UCs at SVJC twice a week to discuss various pertinent topics. Mr. Aleman is able to discuss his evaluations with psychologists and psychiatrists to ensure that his counseling efforts and methods are appropriate and coordinated with the other mental health care provided to class members.

- The mental health care provided to residents at SVJC is trauma-informed. As appropriate, Mr. Aleman explores a resident's history of trauma when counseling that resident and works with that resident to explore ways to cope with individualized trauma. Mr. Aleman also works with residents to explore ways to improve behavior and control emotional outbursts that may be associated with a resident's history of trauma and/or violence.

- Mr. Aleman is a mandatory reporter, meaning that he must report any alleged or suspected abuse of residents at SVJC to the relevant authorities, such as the office of Child Protective Services ("CPS") within the Department of Social Services. Mr. Aleman has reported allegations of abuse that he received from residents to CPS. Throughout his time working with residents at SVJC, none of those allegations have resulted in a finding of abuse by CPS. Mr. Aleman has never seen or suspected any abusive conduct or excessive force applied by SVJC staff toward UC residents.

- Mr. Aleman may also testify regarding his counseling of John Doe 4. His opinions in this regard are reflected in his progress notes for John Doe 4, which have been produced by SVJC in discovery.

- To the extent that Plaintiffs are permitted to offer evidence regarding John Doe 1 and/or John Doe 2, as proffered in the expert reports of Dr. Gregory Lewis and Dr. Andrea Weisman, Mr. Aleman may also testify regarding his counseling of those individuals. His opinions regarding those individuals are reflected in his progress notes, which have been produced by SVJC in discovery.

4. Philip A. Mayles
   1181 Lincolnshire Drive
   Rockingham, Virginia 22802

Mr. Mayles is a licensed professional counselor and was recently employed by SVJC as a

clinician in the ORR program. His curriculum vitae is attached as Exhibit 6.

SVJC anticipates that Mr. Mayles may be called as a fact witness to testify regarding his counseling of John Doe 4 and his personal involvement in the care of other class members at SVJC. Mr. Mayles' factual testimony likely would involve his application of expertise, training and experience in the counseling of juveniles and, in particular, residents at SVJC. Therefore, to the extent Mr. Mayles' factual testimony implicates his specialized knowledge in the field of mental health counseling and calls for expert opinions, SVJC designates Mr. Mayles as an expert pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.

The subject matter of Mr. Mayles' expected testimony will include the provision of counseling and mental health services to class members at SVJC and his evaluation of individual class members, including John Doe 4. Mr. Mayles bases his opinions on his experience providing counseling services to class members at SVJC, and his interaction with other staff and clinicians at SVJC. His testimony may also be based upon his experience working as a licensed professional counselor in the Commonwealth of Virginia before and after his employment at SVJC.

In summary, SVJC expects that Mr. Mayles may offer the following opinions:

- The mental health care provided by SVJC to class members is appropriate and complies with applicable standards for a juvenile detention center housing a population that is at risk for mental health and psychological disorders. The clinicians on staff at SVJC are independently licensed professional counselors, and they are qualified to provide therapeutic counseling and care to the residents at SVJC. While employed at SVJC, Mr. Mayles met individually with the UC residents in his care at least once a week, and often more frequently. He also hosted group meetings of UCs at SVJC to discuss various pertinent topics. Mr. Mayles was able to discuss his evaluations with psychologists and psychiatrists to ensure that his counseling efforts and methods were appropriate and coordinated with the other mental health care provided to class members.

- The mental health care provided to residents at SVJC is trauma-informed. While he was employed as a counselor at SVJC, Mr. Mayles explored a resident's history of trauma when counseling that resident and would explore ways to cope with individualized trauma. Mr. Mayles also worked with residents to explore ways to improve behavior and control emotional outbursts that may be associated with a resident's history of trauma and/or violence.

- Mr. Mayles was a mandatory reporter, meaning that he was required to report any alleged or suspected abuse of residents at SVJC to the relevant authorities, such as the office of Child Protective Services ("CPS") within the Department of Social Services. Mr. Mayles reported allegations of abuse that he received from residents to CPS. Throughout his time working with residents at SVJC, none of those allegations resulted in a finding of abuse by CPS. Mr. Mayles never saw or suspected any abusive conduct or excessive force applied by SVJC staff toward UC residents.

- Mr. Mayles may also testify regarding his counseling of John Doe 4. His opinions in this regard are reflected in his progress notes for John Doe 4, which have been produced by SVJC in discovery.

5. Melissa Cook
   2002 Mount Clinton Pike
   Harrisonburg, Virginia 22802

Ms. Cook is a licensed professional counselor and is employed by SVJC as a the lead clinician in the ORR program. Her curriculum vitae is attached as Exhibit 7.

To the extent that Plaintiffs are permitted to offer evidence regarding John Doe 3, SVJC anticipates that Ms. Cook may be called as a fact witness to testify regarding her personal involvement in the care of the class members, and specifically of John Doe 3, at SVJC. Ms. Cook's factual testimony likely would involve her application of expertise, training and experience in the counseling of juveniles and, in particular, the class members. Therefore, to the extent Ms. Cook's factual testimony implicates her specialized knowledge in the field of mental health counseling and/or calls for expert opinions, SVJC designates Ms. Cook as an expert pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.

The subject matter of Ms. Cook's expected testimony will include the provision of counseling and mental health services to class members, and specifically, John Doe 3, at SVJC. Ms. Cook bases her opinions on her experience providing counseling services to class members at SVJC, and her interaction with other staff and clinicians at SVJC. Her testimony may also be based upon her experience working as a licensed professional counselor in the Commonwealth of Virginia and elsewhere before her employment at SVJC.

In summary, SVJC expects that Ms. Cook may offer the following opinions:

- To the extent that Plaintiff is permitted to offer evidence regarding John Doe 3, as proffered in the expert reports of Dr. Gregory Lewis and Dr. Andrea Weissman, Ms. Cook may also testify regarding her counseling of that individual. Her opinions regarding are reflected in her progress notes, which have been produced by SVJC in discovery

6. Dr. Gustavo Rife, Psy. D
   9544 Old Keene Mill Road, Suite F,
   Burke, Virginia 22015

Dr. Rife is a licensed clinical psychologist. His curriculum vitae is attached as Exhibit 8.

To the extent that Plaintiffs are permitted to offer evidence regarding John Doe 1 and/or John Doe 3, SVJC anticipates that Dr. Rife may be called as a fact witness to testify regarding his psychological evaluations of John Doe 1 and John Doe 3. Dr. Rife's factual testimony likely would involve his application of medical expertise and training in his evaluation of John Doe 1 and John Doe 3. Therefore, to the extent Dr. Rife's factual testimony implicates his specialized knowledge in the field of psychology and calls for expert opinions, SVJC designates Dr. Rife as an expert pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.

In summary, SVJC expects that Dr. Rife may offer the following opinions:

- To the extent that Plaintiffs are permitted to offer evidence regarding John Doe 1 and/or John Doe 3, as proffered in the expert reports of Dr. Gregory Lewis and Dr. Andrea Weisman, Dr. Rife

may testify regarding his treatment and evaluation of those individuals. His opinions regarding those individuals are reflected in his treatment notes, which have been produced by SVJC in discovery.

Dated: September 28, 2018

**SHENANDOAH VALLEY JUVENILE CENTER COMMISSION**
*By Counsel*

By: /s/ Jason A. Botkins
Jason A. Botkins (VSB No. 70823)
Melisa G. Michelsen (VSB No. 40001)
Litten & Sipe, LLP
410 Neff Avenue
Harrisonburg, Virginia 22801-3434
Telephone: (540) 434-5353
Facsimile: (540) 434-6069
Email: jason.botkins@littensipe.com
Email: melisa.michelsen@littensipe.com

Harold E. Johnson (VSB No. 65591)
Meredith M. Haynes (VSB No. 80163)
Williams Mullen
200 South 10th Street
Richmond, Virginia 23219
Telephone (804) 420-6000
Facsimile: (804) 420-6507
Email: hjohnson@williamsmullen.com
Email: mhaynes@williamsmullen.com

*Counsel for Shenandoah Valley Juvenile Center Commission*

# EXHIBIT 2

## Howard, Theodore

| | |
|---|---|
| **From:** | Johnson, Harold <HJohnson@williamsmullen.com> |
| **Sent:** | Wednesday, October 10, 2018 9:01 AM |
| **To:** | Howard, Theodore; Hannah Lieberman |
| **Cc:** | Botkins Jason; Haynes, Meredith |
| **Subject:** | FW: Draft Report [IWOV-IWOVRIC.FID1932679] |

Ted,

Anne Nelsen's schedule is booked up the next couple of weeks, including a conference the week of the 22nd. Her next available dates are October 30 (preferred), or October 29 and November 2. These dates presume that you will depose her by video, (meaning she has not checked availability for travel on either side of the deposition date.) Also, she asked that we keep in mind that she's two hours behind us, so we can't start too early.

I am playing phone tag with Dr. Kane's office about available dates for his dep, and I will let you know as soon as I have news on that front.

Yours,
Hal

### Harold E. Johnson | **Attorney** | **Williams Mullen**
Williams Mullen Center | 200 South 10th Street, Suite 1600 | P.O. Box 1320 (23218) | Richmond, VA 23219
T 804.420.6447 | C 804-349-6760 | F 804.420.6507 | hjohnson@williamsmullen.com | www.williamsmullen.com

NOTICE: Information contained in this transmission to the named addressee is proprietary and is subject to attorney-client privilege and work product confidentiality. If the recipient of this transmission is not the named addressee, the recipient should immediately notify the sender and destroy the information transmitted without making any copy or distribution thereof.

**EXHIBIT 3**

| | |
|---|---|
| **From:** | Johnson, Harold <HJohnson@williamsmullen.com> |
| **Sent:** | Thursday, October 11, 2018 4:15 PM |
| **To:** | Howard, Theodore |
| **Cc:** | 'Jason Botkins' |
| **Subject:** | RE: Video Deposition Next Tuesday [IWOV-IWOVRIC.FID1920328] |

Ted,

Dr. Kane's availability on short notice is extremely limited. After some back and forth, it looks we could do it on Nov 2d. The problem is that he's only got a three-hour window from 8am to 11am. Let me know if that is workable from your perspective. If not, I can see if he'd be willing to do it one evening.

Yours,
Hal

**From:** Howard, Theodore <THoward@wileyrein.com>
**Sent:** Thursday, October 11, 2018 9:39 AM
**To:** Johnson, Harold <HJohnson@williamsmullen.com>
**Cc:** Greg Constantine <gconstantine@veritext.com>
**Subject:** FW: Video Deposition Next Tuesday
**Importance:** High

Hal: Have you decided to make different arrangements instead of setting things up through Veritext? I just need to make sure that we are all set up through our tech folks on this end, and I have not heard anything. Please advise; thanks. Ted

**From:** Greg Constantine <gconstantine@veritext.com>
**Sent:** Wednesday, October 10, 2018 5:19 PM
**To:** Howard, Theodore <THoward@wileyrein.com>
**Subject:** RE: Video Deposition Next Tuesday

Hey Ted,

I have not heard from Hal – but I can work with your IT guys to set-up everything for the room. I just need the IT's name/info.

Should I also go ahead and just set-up a court reporter or should I wait for Hal? I would hate for everything to be ready to go and no court reporter scheduled.

Thanks,

G

**Greg M. Constantine**
Senior Account Executive

**VERITEXT**
1250 Eye Street, Suite 350
Washington, DC 20005

P 202-803-8853 | C 301-875-5101
gconstantine@veritext.com
www.veritext.com



**From:** Howard, Theodore [mailto:THoward@wileyrein.com]
**Sent:** Wednesday, October 10, 2018 4:55 PM
**To:** Greg Constantine <gconstantine@veritext.com>
**Subject:** Video Deposition Next Tuesday

Hey, Greg. Have you heard anything from Hal Johnson at Williams Mullen about this? It just occurred to me that I need to reserve a room with video capacity and that someone from your end needs to be in touch with our tech people re logistics. If you know anything in this regard, please clue me in.

Thanks. Ted

NOTICE: This message (including any attachments) from Wiley Rein LLP may constitute an attorney-client communication and may contain information that is PRIVILEGED and CONFIDENTIAL and/or ATTORNEY WORK PRODUCT. If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to Information@wileyrein.com.

This email has been scanned by the Symantec Email Security.cloud service.

This email has been scanned by the Symantec Email Security.cloud service.

**EXHIBIT 4**

| | |
|---|---|
| **From:** | Hannah Lieberman <hannah_lieberman@washlaw.org> |
| **Sent:** | Wednesday, October 17, 2018 9:32 AM |
| **To:** | Jason Botkins; Melisa Michelsen; Johnson, Harold (HJohnson@williamsmullen.com); mhaynes@williamsmullen.com |
| **Cc:** | Howard, Theodore; Tiffany Yang; Mirela Missova |
| **Subject:** | scheduling matters |

Counsel:

I am following up on the outstanding issues regarding scheduling depositions of defendant's designated experts and associated deadlines:

(1) We are willing to depose Dr. Kane from 8 to 11 am on November 2, with the understanding that, if the deposition is not completed within that time, we will schedule a later date and time for its completion.

(2) You have designated Evenor Aleman as one of your experts. We would like to schedule his expert deposition for the afternoon of November 2. We propose starting at 1:30 on the 2nd. Since we have already deposed him as a fact witness, we do not expect this to be a long deposition and contemplate completion of the deposition within that afternoon.

(3) We are able to accommodate Ms. Nelsen's preference for an October 30 video deposition. We propose starting at 10:30 eastern time, if she can manage that on her end. Once we have confirmation of date and time, we will take care of the logistics.

(4) We would like to schedule the depositions of Drs. Rife and Gorin on October 31, if possible. We can do them simultaneously and expect (although obviously cannot guarantee) that they will take approximately half a day each. If this is not a convenient date, please let us know what would work for each of them.

We are willing to extend the date by which defendant must submit motions to exclude expert testimony from the current deadline of October 22, 2018 to October 26, 2018. However, given the difficulties of scheduling depositions of defendant's experts within the current schedule despite everyone's good faith efforts, we ask, in exchange, that plaintiffs be afforded the same interval of time (9 days) from completion of the depositions of defendant's experts to submit any motions we may have to exclude any of defendant's experts. Assuming we are able to arrange for defendant's expert depositions to occur as set forth above, our proposed deadline for any such motions is Monday, November 12. We are willing to set November 12 as our deadline even if we are unable to complete Dr. Kane's deposition on the 2nd. We understand, of course, that these alterations in the current schedule for submission of motions will need Court approval.

Sincerely,
Hannah

**HANNAH E.M. LIEBERMAN, LEGAL DIRECTOR**
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle,NW, Suite 400 | Washington, DC  20036
202-319-1000 ext. 130 (main) | 202-319-1040 (direct) | 202-319-1010 (fax)

# EXHIBIT 5

| | |
|---|---|
| **From:** | Johnson, Harold <HJohnson@williamsmullen.com> |
| **Sent:** | Wednesday, October 17, 2018 5:37 PM |
| **To:** | Hannah Lieberman; Jason Botkins; Melisa Michelsen; Haynes, Meredith |
| **Cc:** | Howard, Theodore; Tiffany Yang; Mirela Missova |
| **Subject:** | RE: scheduling matters [IWOV-IWOVRIC.FID1919827] |

Hannah,

Thank you for following up on these scheduling issues. I have confirmed the Nov. 2d date with Dr. Kane's office. If you need more than three hours to depose Dr. Kane, we can try to find a time to complete the deposition. However, I am not in a position to guarantee his availability. To maximize his availability that day, I suggest taking the deposition at or near his office in Staunton.

I have also confirmed the October 30th date for Ms. Nelsen. She is agreeable to starting the deposition at 10:30am (EST). Please let me know as soon as possible the location for her videoconference deposition so that she can plan accordingly.

We cannot agree to your request to take additional "expert" depositions of Evenor Aleman, Dr. Rife and/or Dr. Gorin at this late stage. (We were willing to extend the deadline for deposing Dr. Kane and Ms. Nelsen because Ted asked about dates for them following Dr. Weisman's deposition on October 5th, but we were not able to get available dates for them until Nov. 2d and Oct. 30th, respectively.) However, your request to depose Drs. Rife and Gorin, and to re-depose Evenor Aleman, comes after the deadline for completing expert depositions and almost three weeks after they were designated. They were identified as potential witnesses in SVJC's initial disclosures dated March 5, 2018, and you've known of their respective roles at SVJC at least since that time. Moreover, we designated those witnesses as "experts" out of an abundance of caution because of the likelihood that, due to the nature of their job responsibilities working with youth at SVJC, they will testify regarding matters that require specialized knowledge or expertise. Ultimately, however, they are fact witnesses who could have been deposed prior to the September 28th deadline. Finally, you have already deposed Mr. Aleman for over seven hours regarding his counseling of UC's at SVJC. Indeed, that deposition covered (either directly or indirectly) the various subjects identified in the expert designation for Mr. Aleman. With all of this in mind, and given the expedited pretrial schedule to which we all agreed, we cannot justify the burden of engaging in expert depositions that were not even requested until after the deadline.

For the same reason, we cannot assent to setting a November 12 deadline for plaintiff to file motions to exclude experts. Our request for such an extension is on a different footing. We originally requested dates to depose Dr. Lewis and Dr. Weisman via a July 14, 2018 email from Jason Botkins. Then, after plaintiff designated expert testimony on September 11, 2018, we again requested dates via email on Sept. 14 and again on Sept. 21. When we received available dates for Dr. Lewis on Sept. 25 (via email from Ted Howard), the earliest available date for Dr. Lewis' deposition was October 16th (after the expert deposition deadline). Therefore, our inability to meet the October 22nd deadline for motions to exclude is not due to any delay in our request for dates. I would also note that extending our motions deadline to November 12th would mean that our brief in opposition to such motions would be due Monday, November 26th, which immediately follows the Thanksgiving holiday. The abbreviated pretrial scheduling order was designed to minimize interference with everyone's Thanksgiving.

Please understand that we have given your request considerable thought. We have tried to accommodate previous requests for extensions or other accommodations. For example, we agreed to your requests (i) to extend the deadline to serve RFA's, (ii) to extend plaintiff's expert designation deadline, (iii) to allow plaintiff to surpass the limit of 10

depositions under Rule 30(a)(2)(A)(i), (iv) to allow plaintiff to conduct numerous discovery depositions after the September 28th cutoff for fact discovery, and (v) to extend the deadline for you to depose Anne Nelsen and Dr. Kane. We have tried to work collegially with you on these scheduling matters, and we will continue to do so. However, extending a deadline by three weeks when we're under an expedited pre-trial schedule and only two months away from trial is not something we feel we can do while effectively representing our client's interests.

Given our position stated above, I will understand if you want to re-evaluate our request for an extension to file our motions to exclude through next week. Please let me know whether plaintiff will consent to such an extension so that we can determine whether we need to file a motion to extend the deadline with the Court tomorrow.

Thank you,
Hal

## Harold E. Johnson | Attorney | Williams Mullen

Williams Mullen Center | 200 South 10th Street, Suite 1600 | P.O. Box 1320 (23218) | Richmond, VA 23219
T 804.420.6447 | C 804-349-6760 | F 804.420.6507 | hjohnson@williamsmullen.com | www.williamsmullen.com

NOTICE: Information contained in this transmission to the named addressee is proprietary and is subject to attorney-client privilege and work product confidentiality. If the recipient of this transmission is not the named addressee, the recipient should immediately notify the sender and destroy the information transmitted without making any copy or distribution thereof.

**From:** Hannah Lieberman <hannah_lieberman@washlaw.org>
**Sent:** Wednesday, October 17, 2018 9:32 AM
**To:** Jason Botkins <jason.botkins@littensipe.com>; Melisa Michelsen <melisa.michelsen@littensipe.com>; Johnson, Harold <HJohnson@williamsmullen.com>; Haynes, Meredith <mhaynes@williamsmullen.com>
**Cc:** Howard, Theodore <thoward@wileyrein.com>; Tiffany Yang <tiffany_yang@washlaw.org>; Mirela Missova <mirela_missova@washlaw.org>
**Subject:** scheduling matters

Counsel:
I am following up on the outstanding issues regarding scheduling depositions of defendant's designated experts and associated deadlines:

(1) We are willing to depose Dr. Kane from 8 to 11 am on November 2, with the understanding that, if the deposition is not completed within that time, we will schedule a later date and time for its completion.

(2) You have designated Evenor Aleman as one of your experts. We would like to schedule his expert deposition for the afternoon of November 2. We propose starting at 1:30 on the 2nd. Since we have already deposed him as a fact witness, we do not expect this to be a long deposition and contemplate completion of the deposition within that afternoon.

(3) We are able to accommodate Ms. Nelsen's preference for an October 30 video deposition. We propose starting at 10:30 eastern time, if she can manage that on her end. Once we have confirmation of date and time, we will take care of the logistics.

(4) We would like to schedule the depositions of Drs. Rife and Gorin on October 31, if possible. We can do them simultaneously and expect (although obviously cannot guarantee) that they will take approximately half a day each. If this is not a convenient date, please let us know what would work for each of them.

We are willing to extend the date by which defendant must submit motions to exclude expert testimony from the current deadline of October 22, 2018 to October 26, 2018. However, given the difficulties of scheduling depositions of defendant's experts within the current schedule despite everyone's good faith efforts, we ask, in exchange, that plaintiffs be afforded the same interval of time (9 days) from completion of the depositions of defendant's experts to submit any motions we may have to exclude any of defendant's experts. Assuming we are able to arrange for defendant's expert depositions to occur as set forth above, our proposed deadline for any such motions is Monday,

November 12. We are willing to set November 12 as our deadline even if we are unable to complete Dr. Kane's deposition on the 2nd. We understand, of course, that these alterations in the current schedule for submission of motions will need Court approval.

Sincerely,
Hannah

**HANNAH E.M. LIEBERMAN, LEGAL DIRECTOR**
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle,NW, Suite 400 | Washington, DC 20036
202-319-1000 ext. 130 (main) | 202-319-1040 (direct) | 202-319-1010 (fax)

# EXHIBIT 6

| From: | Hannah Lieberman <hannah_lieberman@washlaw.org> |
| Sent: | Thursday, October 18, 2018 1:56 PM |
| To: | Johnson, Harold (HJohnson@williamsmullen.com); 'mhaynes@williamsmullen.com'; 'Jason Botkins'; Melisa Michelsen |
| Cc: | Howard, Theodore; Tiffany Yang; Mirela Missova |
| Subject: | scheduling matters |

Hal:

I am, frankly, disappointed in your email of yesterday afternoon. Throughout this case, we have maintained a collegial relationship with opposing counsel, in which both sides have made an effort to accommodate the reasonable requests of the other. I do not believe that our requests with respect to experts set forth in my email were unreasonable, unduly delayed, without notice or otherwise prejudicial to defendant or defendant's counsel.

Until your recent designation of seven expert witnesses, we were not aware that you planned to name Dr. Kane, Dr. Rife or Dr. Gorin (not to mention Messrs. Aleman or Mayles, or Ms. Cook), as expert witnesses for defendant. While they were identified as persons with knowledge of the facts of the case in initial disclosures, they were not then nor at any time before your September 28 disclosure identified as persons whom you expected to call as experts. We are not seeking to depose them as fact witnesses, but in their newly disclosed capacity as experts.

When Ted spoke with you to schedule, as an initial matter, the expert depositions of Dr. Kane and Ms. Nelsen, he indicated that we were still considering deposing your other expert designees, particularly Drs. Gorin and Rife. There was certainly no indication from you at that time that you would object to making them available and there was an understanding that flexibility with regard to deadlines was inevitable, given the timetable under which we are working. And we assented both to an October 30 date for Ms. Nelsen, and acceded to conduct an initial three-hour deposition of Dr. Kane, to accommodate their requests and their schedule – not ours. We did so in the spirit of the cooperation that, as noted above, has previously characterized the relationship between counsel.

Requests for schedule accommodations have gone both ways in this case. While I do not think it helpful or productive to go through examples in detail, plaintiffs made many changes to their proposed deposition schedule to accommodate defendant's witnesses. As a result of those various accommodations to accommodate counsel and witnesses, depositions were conducted after the September 28 cutoff.

In an effort to stop unproductive and somewhat inaccurate finger-pointing, we are willing, in an effort at compromise, to do the following:

- Forego the deposition of Mr. Aleman as an expert, in light of your representation that the subjects on which he may be called to provide expert testimony were covered (directly or indirectly) in his deposition which, as you indicate in your e-mail, focused on his counseling of unaccompanied minors at SVJC.
- Forego the deposition of Dr. Rife
- Agree to the extension you seek for motions regarding expert exclusion, subject to the information below, in exchange for our being afforded a roughly equivalent opportunity with regard to defendants' experts. However, we would be willing to stipulate to a November 7 deadline for filing any such motion with respect to defendants' experts, making a response due prior to Thanksgiving.

If the foregoing is not agreeable, we think we will need to bring these matters to Magistrate Hoppe. I trust we will not have to do so.

On a related matter, we have conferred with Dr. Paul Diver following his deposition on Tuesday. As he indicated he would need to do, he has reviewed the data and has concluded that BRG will be submitting an amended report to address the issues that were raised. We will provide you with that amended report on Monday, October 22. We understand that you may want an opportunity to re-depose Dr. Diver regarding changes he may make, and will, of course, accommodate any such request. We are also willing to agree to an extension of the deadline for defendant to file a motion to exclude that report, if defendants remain so inclined.

Sincerely,

Hannah

# EXHIBIT 7

| | |
|---|---|
| **From:** | Johnson, Harold <HJohnson@williamsmullen.com> |
| **Sent:** | Thursday, October 18, 2018 7:29 PM |
| **To:** | Hannah Lieberman; Haynes, Meredith; 'Jason Botkins'; Melisa Michelsen |
| **Cc:** | Howard, Theodore; Tiffany Yang; Mirela Missova |
| **Subject:** | RE: scheduling matters [IWOV-IWOVRIC.FID1919826] |

Hannah,

I agree with you that we've been able to work well together and accommodate reasonable requests in this matter. My recitation of examples where we have agreed to extend deadlines or provide other courtesies was not intended to engage in a "finger-pointing" exercise. Rather, my intent was to demonstrate that it is not our practice to object to such requests just for the sake of being difficult. However, your request to take additional expert depositions and extend your deadline to file motions to exclude by almost three weeks is different. At this point in our expedited schedule, we cannot afford to push back such deadlines. Again, we are willing to accommodate your request to depose Dr. Kane and Ms. Nelsen, but we cannot agree to the deposition of Dr. Gorin, Dr. Rife or any other witnesses that were only requested yesterday. Nor can we agree to extend any deadline for plaintiff to file motions to exclude.

For the same reasons we do not consent – and expressly object – to extending the deadline for Dr. Diver to disclose an amended report or opinions.

Yours,
Hal

---

**From:** Hannah Lieberman <hannah_lieberman@washlaw.org>
**Sent:** Thursday, October 18, 2018 1:56 PM
**To:** Johnson, Harold <HJohnson@williamsmullen.com>; Haynes, Meredith <mhaynes@williamsmullen.com>; 'Jason Botkins' <jason.botkins@littensipe.com>; Melisa Michelsen <melisa.michelsen@littensipe.com>
**Cc:** Howard, Theodore <thoward@wileyrein.com>; Tiffany Yang <tiffany_yang@washlaw.org>; Mirela Missova <mirela_missova@washlaw.org>
**Subject:** scheduling matters

Hal:

I am, frankly, disappointed in your email of yesterday afternoon. Throughout this case, we have maintained a collegial relationship with opposing counsel, in which both sides have made an effort to accommodate the reasonable requests of the other. I do not believe that our requests with respect to experts set forth in my email were unreasonable, unduly delayed, without notice or otherwise prejudicial to defendant or defendant's counsel.

Until your recent designation of seven expert witnesses, we were not aware that you planned to name Dr. Kane, Dr. Rife or Dr. Gorin (not to mention Messrs. Aleman or Mayles, or Ms. Cook), as expert witnesses for defendant. While they were identified as persons with knowledge of the facts of the case in initial disclosures, they were not then nor at any time before your September 28 disclosure identified as persons whom you expected to call as experts. We are not seeking to depose them as fact witnesses, but in their newly disclosed capacity as experts.

When Ted spoke with you to schedule, as an initial matter, the expert depositions of Dr. Kane and Ms. Nelsen, he indicated that we were still considering deposing your other expert designees, particularly Drs. Gorin and Rife. There was certainly no indication from you at that time that you would object to making them available and there was an understanding that flexibility with regard to deadlines was inevitable, given the timetable under which we are working. And we assented both to an October 30 date for Ms. Nelsen, and acceded to conduct an initial three-hour deposition of Dr. Kane, to accommodate their requests and their schedule – not ours. We did so in the spirit of the cooperation that, as noted above, has previously characterized the relationship between counsel.

Requests for schedule accommodations have gone both ways in this case. While I do not think it helpful or productive to go through examples in detail, plaintiffs made many changes to their proposed deposition schedule to accommodate defendant's witnesses. As a result of those various accommodations to accommodate counsel and witnesses, depositions were conducted after the September 28 cutoff.

In an effort to stop unproductive and somewhat inaccurate finger-pointing, we are willing, in an effort at compromise, to do the following:

- Forego the deposition of Mr. Aleman as an expert, in light of your representation that the subjects on which he may be called to provide expert testimony were covered (directly or indirectly) in his deposition which, as you indicate in your e-mail, focused on his counseling of unaccompanied minors at SVJC.
- Forego the deposition of Dr. Rife
- Agree to the extension you seek for motions regarding expert exclusion, subject to the information below, in exchange for our being afforded a roughly equivalent opportunity with regard to defendants' experts. However, we would be willing to stipulate to a November 7 deadline for filing any such motion with respect to defendants' experts, making a response due prior to Thanksgiving.

If the foregoing is not agreeable, we think we will need to bring these matters to Magistrate Hoppe. I trust we will not have to do so.

On a related matter, we have conferred with Dr. Paul Diver following his deposition on Tuesday. As he indicated he would need to do, he has reviewed the data and has concluded that BRG will be submitting an amended report to address the issues that were raised. We will provide you with that amended report on Monday, October 22. We understand that you may want an opportunity to re-depose Dr. Diver regarding changes he may make, and will, of course, accommodate any such request. We are also willing to agree to an extension of the deadline for defendant to file a motion to exclude that report, if defendants remain so inclined.

Sincerely,

Hannah

# EXHIBIT 8

# JOHN DOE 4

*vs*

# SHENANDOAH VALLEY JUVENILE CENTER

Deposition of

*Kelsey Rebecca Wong*

*August 22, 2018*



*Statewide Coverage in Virginia*          *National and International Scheduling*

590 Neff Avenue, Suite 2000          1020 Ednam Center, Suite 002          205 34th Street, #1601
Harrisonburg, VA 22801          Charlottesville, VA 22903          Virginia Beach, VA 23452
(540) 801-0288          (434) 296-3111          (757) 227-4241

Page 197

1  Q.   They'd be referred to a clinician and what
2  would happen then?
3      A.   The staff would ensure their safety and
4  they would provide more -- make sure that they're
5  under intensive watch.
6      Q.   Would there be -- would the child receive
7  an evaluation?
8      A.   By the clinician, or if the clinician
9  isn't available and there's -- you know, if the child
10 cannot be kept safe, then emergency services would be
11 contacted.
12     Q.   And would they receive treatment from
13 anybody on the SVJC staff?
14     A.   Continued counseling.
15     Q.   By the clinicians?
16     A.   Yeah.
17     Q.   Would they see a psychologist?
18     A.   They may see a psychiatrist.
19     Q.   And who would that be?
20     A.   Dr. Timothy Kane, K-A-N-E, and if there
21 are mental health concerns, then the clinician would
22 probably refer to a psychologist or request approval
23 to do a psychological evaluation for the minor.
24     Q.   And who would do the psychological
25 evaluation of the minor?

Page 198

1      A.   One of the psychologists that we have
2  available to --
3      Q.   Whom you mentioned before, Dr. Rife or
4  Dr. Gorin?
5      A.   Uh-huh, those are our current ones we
6  utilize.
7      Q.   So could any youth who wants to see a
8  psychologist see either Dr. Rife or Dr. Gorin, or is
9  it just a limited subset of kids who see them?
10     A.   Only UAC see them.
11     Q.   And if a UAC asks to see a psychologist,
12 would they be able to see one of the two of them?
13     A.   If approved by ORR.
14     Q.   And what information, if any, does ORR get
15 about their circumstances?
16     A.   They receive all the information.  All of
17 it is documented.
18     Q.   It goes to that portal?
19     A.   Yeah, and all the information is staffed
20 weekly and information is provided on a weekly basis
21 to them.
22     Q.   What does Dr. Kane do?
23     A.   He's a psychiatrist and he provides
24 medication management for the youth.
25     Q.   So he makes sure their meds are

Page 199

1  appropriate?
2      A.   Uh-huh.
3      Q.   Does he provide any kind of therapy?
4      A.   I don't know if you consider -- I'm not
5  sure if medication management is considered therapy.
6      Q.   Or any treatment beyond medication
7  management?
8      A.   Not to my knowledge.
9      Q.   And how often does he see kids?
10     A.   He comes about every three weeks to the
11 facility.
12     Q.   Does he see just the ORR kids?
13     A.   Yes.
14     Q.   Does he see all of them when he comes?
15     A.   He has a list that he sees based on --
16 when he first meets them, he may want to see them six
17 weeks out or in the next three weeks depending on
18 whatever he thinks is appropriate.
19     Q.   We were talking about ORR needs to approve
20 a kid seeing a psychologist.  Who requests -- who
21 makes the request to ORR to see the psychologist?
22     A.   We staff the case with the case
23 coordinator, and we elevate it to our FFS for
24 approval.
25     Q.   Is the case coordinator different than the

Page 200

1  case manager?
2      A.   Yes.  A case coordinator is a third-party
3  contractor to ORR, and she also supervises the cases
4  of the kids in our care.
5      Q.   All of the UCs in your care?
6      A.   Yes, ma'am.
7      Q.   And who else is in that ambit?  You
8  said --
9      A.   Case managers, clinicians, all of us staff
10 the cases together with the case coordinator.
11     Q.   You're involved in that as well?
12     A.   When I'm available, yes.
13     Q.   Who is the case coordinator?
14     A.   Patricia Melendres.
15     Q.   Who's she with?
16     A.   GDIT, General Dynamics Information
17 Technology.
18     Q.   In the mental health standard operating
19 procedure, there's a reference to a special purpose
20 room, intensive watch, slash, special purpose room.
21 What is the special purpose room?
22     A.   What page are you on?
23     Q.   Page 2 at the bottom.
24     A.   We do have an intensive watch room.  It's
25 a unit -- a room that has two cameras in it.  If a

Hart
www.hartreporting.com                                    Toll Free
Case 5:17-cv-00097-EKD-JCH  Document 108  Filed 10/29/18  Page 42 of 50  Pageid#: 3492

# JOHN DOE 4

*vs*

# SHENANDOAH VALLEY JUVENILE CENTER COMMISSION

Deposition of

*Evenor Aleman*

*September 05, 2018*



REPORTING AND
VIDEOCONFERENCING
*Advancing with Technology and Excellence*

*Statewide Coverage in Virginia*     *National and International Scheduling*

590 Neff Avenue, Suite 2000     1020 Ednam Center, Suite 002     205 34th Street, #1601
Harrisonburg, VA 22801     Charlottesville, VA 22903     Virginia Beach, VA 23452
(540) 805-1788     (750) 2493341

Page 193

1 you were actually a man or a woman, because there are
2 other places where we saw you referred to as
3 Ms. Aleman for some reason. Anyway, putting that
4 aside, "According to Evenor Aleman, Clinician, Edilber
5 has a history of human trafficking, drug smuggling,
6 possible cartel involvement, substance abuse, mental
7 health concerns including self-harm and aggressive
8 behavior towards adults and peers. Given his history,
9 the referral source indicated that it is not clear how
10 Edilber is functioning at the personality, cognitive,
11 psychosocial, and emotional level. He was referred
12 for a psychological evaluation to determine treatment
13 recommendations and to obtain a risk assessment due to
14 his history of criminal activity, aggression and
15 mental health issues while in ORR/DC care."
16      On its face, it does not say anything about
17 his case plan or his desire to stay in the United
18 States. Nevertheless, I take it, it's your testimony
19 that that was part of the motivation for this
20 psychological evaluation. Is that fair?
21      A.  Yes.
22      Q.  Okay.  And in the clinical interview section
23 that starts at the tap of page two, do you know if --
24 as you did in connection with the clinical addendum
25 that we looked at a few minutes ago, do you know

Page 194

1 whether Dr. Rifé would have relied on some of the
2 information that you -- some or all of the information
3 that you provided in your clinical addendum or whether
4 he would have determined all of this on the basis of
5 his own interaction with Edilber?
6      A.  I don't know specifically what Dr. Rifé
7 would do on that.
8      Q.  Okay.  As a result of his own assessment, on
9 page 6, diagnostic impression, Dr. Rifé reports, "The
10 clinical interview found indications of problems with
11 a history of trauma, possible cartel involvement,
12 human smuggling, substance use, antisocial and
13 delinquent behaviors, impulsivity, anger control
14 issues, interpersonal difficulties, egotism, lack of
15 insight and a substantial disregard for social
16 conventions and rules. There was also a history of
17 physical abuse and possible exposure to other trauma,
18 but there are no evident symptoms for PTSD at this
19 time. It is also likely that he is developing
20 symptoms usually associated with avoidant personality;
21 symptoms that should be monitored by treating
22 professionals. It is my opinion within a reasonable
23 degree of psychological certainty that the profile of
24 symptoms present meet criteria for the following DSM-5
25 diagnosis of: 312.32, conduct disorder,

Page 195

1 adolescent-onset type with limited prosocial emotions,
2 severe, 296.99, disruptive mood dysregulation, 311,
3 other specified depressive disorder, short-duration
4 episode."
5      When you had the opportunity to review Dr.
6 Rifé's findings as I just read them, Mr. Aleman, what
7 was your reaction? What was your conclusion? Any
8 surprises there in terms of you -- as far as you were
9 concerned?
10      A.  No.
11      Q.  Okay.  These are the kinds of things that
12 you would have expected Dr. Rifé to conclude?
13      A.  Yes.
14      Q.  Okay.  What is avoidant personality, if you
15 know?
16      A.  To be honest, I wouldn't feel comfortable
17 explaining it because I don't want to provide
18 incorrect information regarding that.
19      Q.  Okay.  In the summary and recommendations on
20 page 7, number 1, Rifé said, "Edilber would benefit
21 from continued monitoring by his psychiatrist for
22 adjustment on his psychotropic medications given his
23 previous self-harming behavior, especially if he
24 becomes more withdrawn or depressed due to his
25 incarceration." Is that something that was followed

Page 196

1 up on, as far as you know, by Shenandoah?
2      A.  My understanding is he continued -- while at
3 our facility, he regularly met with our psychiatrist,
4 who managed his medication.
5      Q.  Okay.  But as far as you know, there -- were
6 there any significant changes in his medication
7 routine during the time that he was at SVJC?
8      A.  I don't know how significant because I'm not
9 a psychiatrist, but there were adjustments to his
10 medication throughout the time that he was there.
11      Q.  Okay.  And is it your practice, or would it
12 be your business, for that matter, to confer with the
13 psychiatrist concerning matters of medication --
14      A.  Yes.
15      Q.  -- I mean, just so you understand exactly
16 sort of what's being done and why?
17      A.  Yes.
18      Q.  Okay.  And did you do that in this instance?
19      A.  Yes.
20      Q.  And who was the psychiatrist?
21      A.  Dr. Timothy Kane.
22      Q.  Is that spelled K-a-n-e?
23      A.  Correct.
24      Q.  Okay.  And insofar as you know, is Dr. Kane
25 the only psychiatrist who deals with children at

Page 197

1 Shenandoah?
2   A.  He provides services to ORR kids.
3   Q.  Okay.  Just ORR?
4   A.  Correct.
5   Q.  Okay.  But he has done so during the entire
6 time that you've been there?
7   A.  Correct.
8   Q.  Okay.  Does he do any therapeutic analysis
9 or treatment insofar as you know?
10   A.  No.
11   Q.  Okay.  The second recommendation is
12 placement.  "Edilber would benefit from a highly
13 structured residential treatment facility to address
14 his emotional dysregulation, anger issues, aggression
15 and antisocial tendencies prior to a less restrictive
16 community or to a less restrictive placement."  What,
17 if anything, was done or -- to respond to that
18 recommendation by Dr. Rifé?
19   A.  I know from our end, at least working with
20 the case managers, we would provide that information
21 to ORR through our FFS for further guidance.  My
22 understanding was, we were -- I mean, we were hoping
23 that he could maintain his behavior here and then
24 become eligible to become transferred to an in-network
25 residential treatment center.

Page 198

1   Q.  In-network meaning one that had --
2   A.  Within ORR care.
3   Q.  -- ORR relationship?
4   A.  Correct.
5   Q.  Okay.
6   A.  Unfortunately, that never occurred because
7 of his continued behavioral issues.  It wasn't until
8 later that we highlighted that concern that, "Look,
9 the possibility of him maintaining might be very
10 difficult.  Let's try to do an out-of-network
11 placement for him."  And that's been documented in the
12 case manager notes in terms of the timeline of that.
13   Q.  Okay.  But never acted on, at least insofar
14 as you know, while he was at Shenandoah?
15   A.  My understanding, it was acted on, but he
16 was denied at various out-of-network placements.
17   Q.  Okay.  And what's your -- what's the basis
18 for your understanding in that regard?
19   A.  Why he was denied?
20   Q.  That he was denied as well as what the
21 reasons were.
22   A.  I mean, confirmation at least from the case
23 manager notes in terms of -- documents when the dates
24 when he was denied.  The only ones that I could
25 remember were a couple of centers in Florida and in

Page 199

1 Georgia who denied him based off of his aggressive
2 behavior.
3   Q.  And otherwise, it was based on what?  I'm
4 sorry.  If you said it, I was blanking out for a
5 second.
6   A.  I know -- I guess the reasoning behind why
7 he was denied from out-of-network placements was that
8 the facility would not accept him based off of his
9 history of aggressive behavior.
10   Q.  Oh, okay.  So the Florida and Georgia
11 facilities that you referenced were the out-of-network
12 ones?
13   A.  Correct.  Yeah.
14   Q.  And what about other ORR facilities?
15   A.  They refused for the same reasons.
16   Q.  Okay.  So what's your understanding with
17 regard to what happens to a kid under those
18 circumstances, when they clearly need something
19 that -- well, I don't -- my only conclusions aren't
20 relevant here -- where it appears that they need
21 something that your facility can't provide, but the
22 options for what the kid actually really needs are
23 closed off?  What do you do?
24   A.  I mean, that's the difficult piece that --
25 when working with this case -- when I say we, it was

Page 200

1 the ORR team in general, was that we were reaching
2 that wall where, obviously, the needs are there, we're
3 advocating for him to be -- come to a better place,
4 but no place is willing to accept him.  Obviously, we
5 can't force him onto anyone else, onto any other
6 situation, so it ends up that he -- he's stuck there
7 until at least some place attempts to accept him or is
8 willing to accept him.  Unfortunately, that's a piece
9 that is out of our hands.  When I mean our, like the
10 people working specifically with him.
11   Q.  Right.
12   A.  It's much more of a higher-up type of
13 situation within ORR care.
14   Q.  Yeah.  I guess it's really a question for
15 ORR so I won't put it to you.
16     So given the refusal, as you understood it,
17 of ORR "in-network" facilities meeting the description
18 that Dr. Rifé provided in here of a highly structured
19 residential treatment facility and the fact that those
20 out of network facilities that I guess ORR ultimately
21 either reached out to or permitted Shenandoah to reach
22 out to all turned out to be not viable, what, if
23 anything, was done to try to sort of work around that
24 and otherwise implement the recommendations that
25 Dr. Rifé provided?

# JOHN DOE 4

*vs*

# SHENANDOAH VALLEY JUVENILE CENTER

---

Deposition of

*Elizabeth Ropp*

*September 26, 2018*

---



REPORTING AND
VIDEOCONFERENCING
*Advancing with Technology and Excellence*

*Statewide Coverage in Virginia      National and International Scheduling*

| 590 Neff Avenue, Suite 2000 | 1020 Ednam Center, Suite 002 | 205 34th Street, #1601 |
|---|---|---|
| Harrisonburg, VA 22801 | Charlottesville, VA 22903 | Virginia Beach, VA 23452 |
| (540) 801-0288 | (434) 296-3111 | (757) 237-4241 |

1 too, if I only put the date that the psychological
2 evaluation was started but not the end date, it would
3 mean that we hadn't received it yet. And I think for
4 Jonathan, we received it around the end of February.
5 It was like February 20th or somewhere in there. So
6 I'm guessing it was within that month. But those --
7 like Theresa Davis and Tim Showalter were still
8 holding those responsibilities at that time.
9    Q    Psychiatric services provided by Dr. Kane
10 -- I think we've been told by prior witnesses that
11 that is essentially a medication administration
12 function. Is that your understanding as well?
13    A    Yes, it is.
14    Q    Okay. Insofar as you know, Dr. Kane does
15 not provide any therapeutic services to the children?
16    A    Correct.
17
18    (Ropp Deposition Exhibit No. 10 was marked for
19    identification and attached to the transcript)
20
21 BY MR. HOWARD:
22    Q    This is Exhibit 10, Ms. Ropp. Would you
23 take a look at that, please?
24       Is it fair to say that based on the
25 information reflected on Exhibit 10, which is

1 different than Exhibit 9 in some particulars, that
2 this seems to be more recent than Exhibit 9?
3    A    Yes.
4    Q    Okay. Including, among other things, per
5 your prior reference, the fact that the end date for
6 the psychological services is reflected on this
7 document as 2/20/18?
8    A    Yes. And the clinician's name has
9 changed as well. So Evenor is reflected on this one,
10 which would be -- it would be after May at some point
11 after Andrew left SVJC.
12    Q    Okay. Where are you looking for that
13 information?
14    A    At the top here, case manager, Elizabeth,
15 and then clinician --
16    Q    Oh, okay.
17    A    And the other one says Andrew.
18    Q    Thank you very much.
19       On both of the exhibits -- I should have
20 noted this in connection with Exhibit 9 -- but there's
21 Ms. Cook, Mr. Mayles, and Mr. Aleman are all
22 identified in connection with individual counseling
23 and group counseling. What is the significance of the
24 fact that there are two clinicians listed, if any?
25    A    Sorry. I'm confused by the question. I

1 think what my understanding is I should have just
2 changed the current -- Exhibit 10 to reflect that
3 Melissa and Evenor are the clinicians available, since
4 they do alternate the group counseling portion. So we
5 like to list everybody who's responsible. And if one
6 of them is out, the other would cover for individual
7 counseling.
8    Q    Okay. And is that why there are two as
9 well on Exhibit 9, both Mr. Mayles and --
10    A    Yes.
11    Q    -- Mr. Aleman?
12       Okay. What if any significance do the
13 numbers in the lower left-hand corner have on Exhibit
14 10?
15    A    These numbers here?
16    Q    Yes, ma'am.
17    A    I don't know.
18    Q    Okay.
19    A    I'm sorry.
20    Q    Under mandatory services for assessment,
21 the second item, it says, frequency one time, start
22 date 12/1/2017, end date 12/6/2018. What does that
23 mean?
24    A    That's a mistake. It should say
25 12/6/2017, because it's five days from the time of

1 their arrival that the UAC assessment is completed.
2 Actually, I'm sorry, I'm just seeing that all of those
3 are 2018, and they need to be 2017.
4    Q    They should all be 2017, the end dates
5 for all of those?
6    A    Yes. As well as the legal orientation,
7 that should be 12/17. This is also why -- ideally
8 this would be corrected at the time of -- at the time
9 that it's completed, but we do -- when we close files,
10 we always have a case manager review our files. So I
11 review the case manager's files to make sure these
12 dates correspond, and then all the files are reviewed
13 by Kelsey Wong as well. So we can go back into the
14 portal to make sure that things like this are
15 corrected.
16    Q    Insofar as you know then, there isn't any
17 significance to the fact that on Exhibit 9 those dates
18 all seem to be correct, at least in accordance with
19 what you just testified, but on Exhibit 10, they've
20 been changed from 2017 to 2018?
21    A    They have to be manually entered every
22 time, and so I think it was just an accident,
23 confusion.
24    Q    Okay. As far as you know, would Exhibit
25 10 reflect the currently applicable or currently

Hart
www.hartreporting.com                    Toll Free
Hart Court Reporting Inc.                1-800-316-3278
Case 5:17-cv-00097-EKD-JCH   Document 108   Filed 10/29/18   Page 47 of 50   Pageid#: 3497

# JOHN DOE 4

*VS*

# SHENANDOAH VALLEY JUVENILE CENTER

Deposition of

*Philip A. Mayles*

*October 04, 2018*



*Statewide Coverage in Virginia*     *National and International Scheduling*

590 Neff Avenue, Suite 2000          1020 Ednam Center, Suite 002          205 34th Street, #1601
Harrisonburg, VA  22801              Charlottesville, VA  22903            Virginia Beach, VA  23452

Page 129

1  has ever made that request for mental health
2  professionals outside of SVJC, whether that's --
3     A.   Not specifically, but I think there have
4  been occasions where kids might say, I want to go back
5  to where I was, to Children's Village or to -- what's
6  the name of it? It's a residential program. The name
7  in New York is blanking, but one is called Shiloh in
8  Texas. So they may be like, I want to go back there.
9  That's why I guess I'm asking for clarity, but no one
10  has asked me like, I want to go see someone, a
11  psychiatrist or a psychologist or a therapist.
12     Q.   So none of the children you've ever
13  worked with has asked to meet again with a
14  psychologist?
15     A.   Nothing comes to mind.
16     Q.   Now, after a child is evaluated by the
17  Valley Community Service Board and there is an
18  indicated need for hospitalization, it's my
19  understanding that they're sent to the Commonwealth
20  Center for Children and Adolescence; is that correct?
21     A.   Yes, usually.
22     Q.   When a child is discharged from CCCA, is
23  there recommendations or evaluations that are provided
24  to SVJC from their time at CCCA?
25     A.   I think they do provide some

Page 130

1  documentation. A discharge summary is provided.
2     Q.   Do you read those documents?
3     A.   I have read them, yes.
4     Q.   If a child that you're assigned to is
5  sent to CCCA and comes back, is it your general
6  practice to review whatever documents include
7  recommendations or diagnoses or analysis of their time
8  there?
9     A.   For the most part, yes.
10     Q.   And what happens after you review that
11  document? What do you do with it?
12     A.   Usually it's part and parcel. I think at
13  the time that a child is sent to CCCA, we're trying to
14  work with our counterparts in the government to try to
15  figure out what is going to be the follow-up for this
16  child that's obviously been in crisis, and may need
17  some different care. And so at that point we're
18  trying to find another placement, and seeing if that's
19  available.
20     Q.   To your knowledge, is there -- I'm
21  forgetting the phrasing. SVJC is now a fully secure,
22  staff secure?
23     A.   It's secure.
24     Q.   Secure?
25     A.   Yeah.

Page 131

1     Q.   To your knowledge, is there a secure
2  residential treatment facility that is in ORR's
3  network?
4     A.   Not that I'm aware of.
5     Q.   So if a child needs to be sent to a
6  residential treatment center and a secure option is
7  not available, what options remain?
8     A.   I think that's a conundrum that's
9  problematic.
10     Q.   And you've mentioned that until they're
11  able to leave SVJC, services continue to be provided
12  to try to treat that child's needs?
13     A.   Yes.
14     Q.   What are some of those services for
15  children that have already been evaluated as requiring
16  a residential treatment facility?
17     A.   We do what we can. We do our best and
18  try to advocate for the child as best we can.
19     Q.   Now, earlier you mentioned Dr. Kane, a
20  psychiatrist?
21     A.   Correct.
22     Q.   What is he responsible for at SVJC
23  vis-a-vis the children that are there?
24     A.   When he receives a referral, he then
25  comes and does an initial evaluation of the child and

Page 132

1  tries to find out what the symptoms are and what the
2  minor's presentation and report is, and then tries to
3  figure out what might be helpful. I guess that
4  case -- I can't really speak to what goes into the
5  psychiatric part of it, but obviously that's what the
6  psychiatrist is there for. And they might start or
7  propose medication, or may not.
8     Q.   Is Dr. Kane responsible for providing
9  therapeutic services to the children?
10     A.   What do you mean by therapeutic services?
11     Q.   Is Dr. Kane's role at SVJC limited to
12  medication management?
13     A.   I would say it's medication management.
14     Q.   He doesn't provide counseling?
15     A.   No, not that I'm aware.
16        MR. BOTKINS: Object to the form.
17  BY MS. YANG:
18     Q.   Do you ever discuss particular children
19  with Dr. Kane?
20     A.   Kids that I've referred to him?
21     Q.   (No verbal response).
22     A.   Of course. I mean, I provide him with a
23  referral.
24     Q.   Similar to the psychologist and a
25  clinical addendum of some kind?

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of October, 2018, true and correct copies of

Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Compel Discovery and for

Modification of the Amended Scheduling Order and supporting Exhibits were served *via*

electronic mail upon the following:

Jason A. Botkins, Esq.
Melisa G. Michelsen, Esq.
LITTEN & SIPE, L.L.P.
410 Neff Ave.
Harrisonburg, VA 22801-3434
jason.botkins@littensipe.com
melisa.michelsen@littensipe.com

Harold E. Johnson, Esq.
Meredith Haynes, Esq.
WILLIAMS MULLEN
200 South 10th Street
Suite 1600
Richmond, VA 23219
hjohnson@williamsmullen.com
mhaynes@williamsmullen.com

Attorneys for Defendant

Theodore A. Howard