IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

JOHN DOE 4, by and through his next friend,
NELSON LOPEZ, on behalf of himself and all
Persons similarly situated,

*Plaintiffs*,

v.

SHENANDOAH VALLEY JUVENILE
CENTER COMMISSION,

*Defendant*.

Case No. 5:17-cv-00097-EKD/JCH
Judge Elizabeth K. Dillon

## PLAINTIFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Plaintiffs John Doe 4, et al., by their attorneys, hereby submit this Memorandum of Law in Opposition to the Motion for Protective Order filed by Defendant Shenandoah Valley Juvenile Center Commission ("SVJCC") on October 17, 2018. *See* ECF Docket Nos. 92, 93.

### INTRODUCTION AND STATEMENT OF THE ISSUES

Plaintiffs commenced this action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 on October 4, 2017, seeking to protect the rights and interests of unaccompanied immigrant children ("UACs") detained at the Shenandoah Valley Juvenile Center ("SVJC") from a pattern and practice of unlawful conduct to which these children were and are subjected at SVJC, including verbal and physical abuse, deprivation of adequate mental health care, and inappropriate imposition of solitary confinement in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution. *See* ECF Docket No. 1

Although, due to the transient nature of the UAC detainee population at SVJC, changes in the identity of the individual named plaintiffs/class representatives have occurred over time, necessitating amendments to the pleadings, the substance of this action remains the same: Plaintiffs seek to bring to an end an ongoing systemic pattern and practice of alleged unconstitutional behavior to which detained UACs have been subjected at SVJC that commenced prior to the initiation of this case, was continuing as of the date the case was filed and persists through the present. *See, e.g.* Second Amended Class Action Complaint, ¶¶ 2-3 at 2 (filed July 11, 2018) (ECF Dkt. No. 68). The specific incidents of excessive use of physical force and restraints, imposition of excessive solitary confinement and denial of necessary mental health care experienced by UACs detained at SVJC, including prior named Plaintiffs John Does 1, 2 and 3 and current named Plaintiff and class representative John Doe 4, as alleged in the pleadings, do not constitute separate claims, seeking recovery for those UACs based upon separate instances of compensable harm. Rather, the incidents alleged are offered to support Plaintiffs' assertion that the Defendant has engaged in an ongoing pattern and practice of unlawful acts and omissions in contravention of settled standards governing the operation of juvenile detention facilities and reflecting deliberate indifference to the UACs' constitutional rights.

With this substantive framework as a backdrop, Plaintiffs served the Defendant with their First Requests for Admissions on September 17, 2018. *See* Brief in Support of Defendant's Motion for Protective Order ("Prot. Or. Br."), Exhibit 1 (ECF Dkt. No. 93). Plaintiffs seek Defendant's acknowledgement of the truth of facts yielded by discovery which Plaintiffs believe confirm the correctness of their allegations that UACs detained at SVJC have been subjected to disproportionate and punitive measures, including repeated incidents involving extended periods

of solitary confinement, overuse of restraints and excessive physical force -- all proper subjects for Requests for Admissions. Defendant served its Responses on October 17, 2018, objecting to and declining to answer a significant number of Plaintiffs' Requests based upon assertions of lack of relevancy and undue burden. *Id.*, Exhibit 2. Defendant seeks to vindicate the merits of those Objections through its instant Motion for Protective Order, filed concurrently with the service of the Responses. ECF Dkt. No. 92.

## GOVERNING STANDARDS

A. Requests for Admission

Rule 36, Fed. R. Civ. P., under which Plaintiffs propounded their Requests for Admissions to the Defendant, provides, in pertinent part, that

> [a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:
>
> (A) facts, the application of law to fact, or opinion about either; and
>
> (B) the genuineness of any described documents.

Fed. R. Civ. P. 36(a)(1). As noted by leading commentators, Rule 36 is, strictly speaking, not a discovery device in the sense that the requesting party is seeking another party's admission regarding factual matters the requesting party already knows and believes to be true, or regarding the authenticity of documents the requesting party already possesses, for the salutary purpose of narrowing disputes at trial. *See* 8B Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2253 at 324-26 (3d ed. 2010).

> For the purposes for which it is intended, Rule 36 is often more effective than other discovery rules.... [R]esponses to other discovery procedures are merely evidence to be introduced at trial and they are subject to contradiction at the trial. An admission, unless it is allowed to be withdrawn, concludes the matter and

3

avoids any need for proof at trial. For ...these reasons, admissions are more
likely to be fruitful in defining and limiting the controversy than are the other
devices.

*Id.* at 326 (footnotes omitted); *accord Erie Ins. Prop. Cas. Co. v. Johnson*, 272 F.R.D. 177, 183
(S.D. W.Va. 2010) ("'Rule 36(a)'s primary purposes are "to facilitate proof with respect to issues
that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those
that can be."'" (*quoting Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*, 246
F.R.D. 522, 531 (S.D. W.Va. 2007)).

By expressly allowing a party to request an admission as to the truth of "any matters
within the scope of Rule 26(b)(1)," Rule 36(a) invokes the same broad scope of relevancy that
governs the application and enforcement of the other federal discovery rules. 8B Wright, Miller
& Marcus, *supra*, § 2254 at 327-28.

B.   Relevancy

Rule 26(b)(1), Fed. R. Civ. P., which establishes the broad scope of discovery in federal
civil proceedings, provides as follows:

[u]nless otherwise limited by court order, ...[p]arties may obtain discovery
regarding any nonprivileged matter that is relevant to any party's claim or defense
and proportional to the needs of the case, considering the importance of the issues
at stake in the action, ...the parties' relative access to relevant information, the
parties' resources, the importance of the discovery in resolving the issues, and
whether the burden or expense of the proposed discovery outweighs its likely
benefit. Information within the scope of discovery need not be admissible in
evidence to be discoverable.

Consistent with this facially liberal language, the Fourth Circuit has observed that
"discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted."
*CareFirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir.
2003) (citation omitted); *see also Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir.
1977) (information that is "germane to the subject matter of the pending action" is discoverable);

4

*Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 533 (E.D.N.C. 2012), *aff'd on other grounds*, 551 F. App'x 646 (4th Cir. 2014).

Accordingly, "information is relevant, for purposes of discovery and thus discoverable, if it 'bears on, or …reasonably could lead to other matters that bear on, any issue that is or may be in the case. … [T]he general subject matter of the litigation governs the scope of relevant information for discovery purposes.'" *JAK Productions, Inc. v. Robert Bayer*, No. 2:15-cv-00361, 2015 WL 2452986, at *4 (S.D. W.Va. May 22, 2015) (citations omitted); *see also Bell, Inc. v. GE Lighting, LLC*, No. 6:14-cv-00012, 2014 WL 1630754, at *6 (W.D. Va. April 23, 2014) ("Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted" (citations omitted)); *Carr v. Double T Diner*, 272 F.R.D. 431, 433 (D. Md. 2010); *Kidwilder v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D. W.Va. 2000).

Notably, the presumption in favor of a broad construction of the concept of relevancy under the Federal Rules generally is especially strong in the particular context of civil rights litigation. *Floren v. Whittington*, 217 F.R.D. 389, 391 (S.D. W.Va. 2003) (recognizing and giving full effect to "the important federal interests in broad discovery and truth seeking as well as the interest in vindicating important federal substantive policy such as that embodied in [42 U.S.C. §] 1983" (citations omitted); *accord Spell v. McDaniel*, 591 F. Supp. 1090, 1114-15 (E.D.N.C. 1984); *see generally Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D.N.Y. 1997) ("[A]ctions alleging violations of § 1983 require especially generous discovery." (*citing Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 124 (N.D.N.Y. 1984) ("[f]ederal policy favors discovery in civil rights actions"))).

5

C.   Undue Burden

In order to avoid compliance with discovery otherwise within the broad scope of relevancy contemplated by Rule 26(b)(1), as elaborated above, on the basis of a claim of undue burden,

> the objecting party must do more to carry its burden than make conclusory and unsubstantiated arguments. *Convertino v. United States Department of Justice*, 565 F. Supp. 2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is over broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden); *Cory v. Aztec Steel Building, Inc.*, 225 F.R.D. 667, 672 (D. Kan. 2005) (the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection); *Bank of Mongolia v. M&P Global Financial Servs., Inc.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009) ("A party objecting must explain the specific and particular way in which a request is vague, overly broad or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome" (citations omitted)).

*JAK Productions*, 2015 WL 2452986, at *10; *see generally Consolidation Coal Co. v. Williams*, 453 F. 3d 609, 620-21 (4th Cir. 2006) (affirming grant of motion to compel where the resisting party "failed to offer anything more than conclusory assertions regarding the potentially burdensome aspect of the discovery request").

Here, in seeking a Protective Order, Defendant has failed to even contend, much less show, that Plaintiffs' Requests for Admissions to which it objects are somehow inconsistent with the purposes for which admissions may be sought pursuant to Rule 36(a). Nor has Defendant established that the matters as to which Plaintiffs seek admissions do not "bear on" issues presented in the case or concern "the general subject matter of the litigation." Finally, Defendant has offered nothing but wholly conclusory and unsupported assertions as a basis for its

6

contention that having to respond to Plaintiffs' Requests would impose an undue burden. For all of these reasons, elaborated more fully below, the Motion for Protective Order must be denied.

## ARGUMENT

### I. DEFENDANT'S EFFORT TO LIMIT THE SCOPE OF DISCOVERY BASED UPON THE DEFINITION OF THE CERTIFIED CLASS IS COMPLETELY LACKING IN LEGAL BASIS

The linchpin of Defendant's Motion for Protective Order is its wholly baseless assumption that the scope of the class certified by this Court in its Order dated June 27, 2018 -- *see* ECF Dkt. No. 63 -- somehow defines the scope of permissible discovery in this action under Rule 26(b)(1), Fed. R. Civ. P. Defendant's position is obviously incorrect. The definition of the certified class identifies the category of persons who will benefit from such declaratory and injunctive relief as the Court may ultimately order; however, it is the respective claims and defenses of the parties that are determinative of the proper scope of discovery.

Defendant complains that although "[a]s of June 27, 2018, the certified class consisted of 20 UACs under SVJC's care... the scope of Plaintiffs' First Requests for Admissions includes 238 UACs." Prot. Or. Br. at 4. This serves as the springboard for its assertion that "the plain language of this Court's Order certifying the class that UACs formerly housed at SVJC are not class members. ... Requests for admissions regarding the treatment of past residents at SVJC are irrelevant to the claims alleged by class members, particularly in light of changes to SVJC policies which predate this litigation." *Id.* at 4-5.

Defendant's argument reflects either a conscious disregard for or a fundamental misunderstanding of the nature and substance of Plaintiffs' causes of action and claims for relief in this case. As described above, Plaintiffs contend that the Defendant has engaged and continues to engage in an ongoing pattern and practice of mistreatment of UACs at SVJC,

7

characterized by, *inter alia*, use of excessive physical force and restraints, improper imposition of solitary confinement and denial of adequate mental health care to traumatized children in desperate need of such care. For purposes of proving the existence -- and persistence -- of the pattern and practice of wrongful conduct alleged, particular past instances in which UACs were subjected to and victimized by the alleged conduct are plainly relevant, without regard to whether or not the subject UAC is still detained at SVJC.

Defendant has offered no persuasive authority to support its proclamation that "[i]t is axiomatic that only information pertaining to class members is relevant to adjudicating a class action" Prot. Or. Br. at 5. Defendant cites a single district court decision as the basis for this proposition -- *see Harris v. Koenig*, 271 F.R.D. 356, 373 (D.D.C. 2010) -- but the *Harris* case reflects no such ruling. In reality, the Magistrate Judge's ruling in *Harris* did nothing more than reinforce a previous determination by the presiding district judge concerning temporal limitations on the permissible scope of discovery in that case by sustaining a party's objection to requests for admissions addressing matters outside the relevant time period. *See* 271 F.R.D. at 373; *cf. id.* at 364 (referencing district judge's earlier ruling that "limited the scope of discovery to the actions or omissions of SSBT in its approval of the two settlements," thereby rendering "[e]vents and occurrences that happened before the starting date of the first period, July 1, 1990 … irrelevant"). *Harris* says nothing whatsoever about limiting the scope of discovery in a class action solely to "information pertaining to [current] class members." Defendant's assertion to the contrary is false.

By contrast, Plaintiffs' counsel provided Defendant with pertinent authority affording a clear analogy to the situation presented in the instant case when Defendant first raised its objection to the scope of the discovery pursued by Plaintiffs on the grounds that evidence

8

concerning the experiences of UACs who no longer reside at SVJC were "not relevant." Thus, in *Scott v. Clarke*, 64 F. Supp. 3d 813 (W.D. Va. 2014), an Eighth Amendment class action seeking declaratory and injunctive relief brought on behalf of the population of women incarcerated at a Virginia state correctional facility with respect to constitutionally-deficient medical care, the Court (Moon, Sr. J.) addressed and rejected the Department of Corrections' argument that the plaintiffs could not rely upon incidents of inadequate care that occurred more than one year before the case was filed to prove a pattern and practice, because claims based on such incidents were barred by the statute of limitations. The Court ruled, in pertinent part, as follows:

> A merely cursory review of the second amended complaint (or any of the complaints) reveals that Plaintiffs brought suit to terminate an ongoing systemic pattern and practice of failure to provide constitutionally adequate medical care on the part of the VDOC and its contractual providers. Plaintiffs allege that the unlawful conduct was continuing as of the date the lawsuit was filed, and that it continues as of today.
>
> \*          \*          \*
>
> Here, each of the named plaintiffs has identified a continuing sequence of instances in which she alleges she has experienced sub-standard medical care at FCCW, reflecting an ongoing pattern of deliberate indifference to serious medical needs for which the Plaintiffs seek to hold the VDOC liable. For each Plaintiff, at least one of the instances alleged occurred within one year of the commencement of this lawsuit on July 24, 2012. Under these circumstances, Plaintiffs are permitted to support their timely claim with evidence of earlier examples of deficient medical care occurring more than one year before the date on which this case was filed. *See, e.g., Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 346 (4th Cir. 1994) ("statutes of limitations do not operate as an evidentiary bar controlling the evidence admissible at trial of a timely-filed cause of action."); *Furr v. AT&T Techs., Inc.*, 824 F.2d 1537, 1543 (10th Cir. 1987) ("[d]iscriminatory acts occurring before the filing periods are relevant evidence of the continuing unlawful practice and its discriminatory intent, and are used by the courts to fashion a remedy" (citations omitted)).

64 F. Supp. 3d at 826-28.

9

While the *Scott* ruling is, admittedly, not on the proverbial "all fours" with the issue presented by Defendant's argument, Plaintiffs submit that the parallel between the evidence of incidents that would be time-barred if the basis for individual claims, but which may nonetheless be freely utilized to show a pattern of wrongful conduct in *Scott*, and the evidence of incidents involving former SVJC detainees to prove a pattern of wrongful conduct here, is compelling, especially where Defendant has offered no authority actually to the contrary. *See also Floren v. Whittingon*, 217 F.R.D. at 391-92 (in case involving claim by individual plaintiff that policeman's wrongful entry upon plaintiff's property and wrongful arrest of plaintiff was an element of a pattern and practice of unconstitutional conduct on the part of the City of Dunbar, WV police force for which City officials bore direct supervisory liability, court granted a motion to compel ordering the production of the personnel and internal affairs files of all of the City's police officers except for the files of non-defendant officers never subjected to any citizen complaints, internal investigations or disciplinary actions); *Spell v. McDaniel*, 591 F. Supp. at 1113-15 (in Section 1983 action premised upon allegations that policeman's physical assault of plaintiff while in custody following arrest for driving while intoxicated was part of a pattern and practice of police brutality in City of Fayetteville, NC, court granted a motion to compel ordering production of "(1) records of complaints, investigations and reports concerning the incident at bar and [the defendant's] conduct while a member of the Fayetteville Police Department; (2) records of complaints filed, investigations conducted and reports written for internal and external use [concerning] allegations of abuse and unreasonable force within the Fayetteville Police Department since January 1, 1981; and (3) regulations, directives, manuals, official administrative reports and other documents produced by or for the Police Department and used by it to communicate departmental policies or rules of law to officers regarding the use of force."

(Footnotes omitted.)). The logical implication of Defendant's position is that an unconstitutional pattern and practice could never be proven by an individual civil rights plaintiff, because any similar acts or omissions on the part of the defendant involving someone other than the plaintiff him- or herself would not be discoverable, on relevancy grounds. Plainly, that is not the law.

"The burden is on the party resisting discovery to explain specifically why its objections, including those based on irrelevance, are proper given the broad and liberal construction of federal discovery rules." *Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F. Supp. 2d 598, 601 (D. Md. 2009); *accord Silicon Knights*, 917 F. Supp. 2d at 534; *Marfork Coal Co. v. Smith*, 274 F.R.D. 193, 204 (S.D. W.Va. 2011). With respect to evidence concerning alleged unlawful acts on the part of the Defendant in which the victims were UACs who are no longer detained at SVJC but whose treatment reflects the Defendant's ongoing practices, Defendant has not met and cannot, as a matter of law, meet this burden.

## II. THE PURPORTED CHANGE IN SVJC'S BEHAVIOR MANAGEMENT POLICY DOES NOT RENDER EVIDENCE OF PRE-MODIFICATION INCIDENTS IRRELEVANT

Defendant asserts that a change in the written policy that purportedly governs the manner in which the conduct of UACs detained at SVJC is monitored and regulated somehow justifies limiting the scope of matters as to which Plaintiffs may seek admissions. In this regard, Defendant states:

> In August 2016, a new behavioral management program was implemented at SVJC. Under the new policy, SVJC has shifted away from a discipline-based program and moved towards an incentive-based program to promote good behavior. In particular, the new behavioral management program does not include prescribed periods of room confinement for behavioral infractions and focuses instead on reducing room confinement and returning residents to normal programming as soon as possible.

Prot. Or. Br. at 6-7 (citations omitted).

11

Based on this explanation, Defendant takes the position that Requests for Admissions propounded by Plaintiffs that focus on calculations of the duration of room confinement in particular instances that occurred before August 2016 "are irrelevant and constitute an undue burden to the extent they require SVJC to make admissions concerning policies that have never been applied to current class members." *Id.* at 7.

Defendant's analysis is simplistic and, more importantly, flatly wrong. Again, Plaintiffs have alleged and will seek to prove at trial that Defendant has, *inter alia*, engaged in an unconstitutional pattern and practice of subjecting UACs to excessive solitary confinement (i.e., "room confinement" in the Defendant's parlance) that was in effect at the time the lawsuit was commenced and continues in effect up to the present. If anything, comparative evidence that reveals that notwithstanding the modification of SVJC's behavior management program in August 2016 as touted by Defendant, the same sort of incidents of protracted solitary confinement are occurring that occurred prior to the change would constitute a powerful showing of Defendant's deliberate indifference to the seriously harmful effects that such confinement has on the mental health of traumatized children. For this obvious reason, the admissions sought by Plaintiffs regarding pre-modification solitary confinement concern an important element of Plaintiffs' case and are plainly relevant. Defendant has not even remotely met its burden to show otherwise.[1]

---

[1] The same analysis applies with respect to Plaintiffs' claims of excessive use of restraints and excessive physical force predating as well as postdating Defendant's modification of its behavior management program. The admissions sought by Plaintiffs regarding all such matters are entirely appropriate.

12

## III. DEFENDANT'S CONCLUSORY ASSERTIONS OF UNDUE BURDEN CANNOT BE SUSTAINED

Although Defendant asserts that "[t]he scope of Plaintiffs' First Requests for Admissions will require SVJC to devote a prohibitive amount of time and resources to formulate accurate responses to many of the 245 requests" (Prot. Or. Br. at 7), no specific showing, by affidavit or other evidence, has been provided to support this conclusory statement. Under applicable law, as reviewed above, Defendant's bald contention that Plaintiffs' Requests are unduly burdensome cannot carry the day. *Consolidation Coal*, 453 F. 3d at 620-21; *JAK Productions*, 2015 WL 2452986, at *10 (citing numerous authorities). Accordingly, Defendant's attempt to secure a Protective Order based upon an unsubstantiated claim of undue burden must necessarily be rejected.

## CONCLUSION

For all the foregoing reasons, Defendant's Motion for Protective order must be denied.

DATED: October 31, 2018

                Respectfully submitted,

                Hannah M. Lieberman (admitted *pro hac vice*)
                hannah_lieberman@washlaw.org
                Tiffany Yang (admitted *pro hac vice*)
                tiffany_yang@washlaw.org
                Mirela Missova (admitted *pro hac vice*)
                mirela_missova@washlaw.org
                WASHINGTON LAWYERS'
                COMMITTEE FOR CIVIL RIGHTS
                AND URBAN AFFAIRS
                11 Dupont Circle, NW, Suite 400
                Washington, D.C. 20036
                (202) 319-1000 (telephone)
                (202) 319-1010 (facsimile)

Theodore A. Howard (admitted *pro hac vice*)
thoward@wileyrein.com
Bradley C. Tobias (VSB No. 88046)
btobias@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, D.C. 20006
(202) 719-7120 (telephone)
(202) 719-7049 (facsimile)

By: _____/s/ Theodore A. Howard_____
Theodore A. Howard

*Attorneys for Plaintiffs*

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of October, 2018, true and correct copies of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Protective Order was served *via* electronic mail upon the following:

>Jason A. Botkins, Esq.
>Melisa G. Michelsen, Esq.
>LITTEN & SIPE, L.L.P.
>410 Neff Ave.
>Harrisonburg, VA 22801-3434
>jason.botkins@littensipe.com
>melisa.michelsen@littensipe.com
>
>Harold E. Johnson, Esq.
>Meredith Haynes, Esq.
>WILLIAMS MULLEN
>200 South 10th Street
>Suite 1600
>Richmond, VA 23219
>hjohnson@williamsmullen.com
>mhaynes@williamsmullen.com

Attorneys for Defendant

/s/ Theodore A. Howard
Theodore A. Howard