## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## Harrisonburg Division

JOHN DOE 4, by and through his next friend,
NELSON LOPEZ, on behalf of himself and all
persons similarly situated,

*Plaintiffs,*

v.

SHENANDOAH VALLEY JUVENILE
CENTER COMMISSION,

*Defendant.*

Civil No. 5:17-cv-00097-EKD/JCH
Judge Elizabeth K. Dillon

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Hannah M. Lieberman (admitted *pro hac vice*)
Tiffany Yang (admitted *pro hac vice*)
Mirela Missova (admitted *pro hac vice*)
WASHINGTON LAWYERS' COMMITTEE
 FOR CIVIL RIGHTS AND URBAN MATTERS
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
(202) 319-1000

Theodore A. Howard (admitted *pro hac vice*)
Benjamin C. Eggert (VSB No. 45342)
J. Ryan Frazee (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

Attorneys for Plaintiffs

## TABLE OF CONTENTS

**Page(s)**

Table of Authorities ............................................................................................................................. i

INTRODUCTION AND STATEMENT OF THE ISSUE ................................................................1

FACTS CONCERNING DOE 4'S CLAIMS ..................................................................................2

SUMMARY OF THE ARGUMENT ...............................................................................................5

ARGUMENT ....................................................................................................................................6

I.    DOE 4 HAD, AND HAS, STANDING TO SERVE AS REPRESENTATIVE
      OF THE RULE 23(b)(2) CLASS CERTIFIED IN THIS CASE .........................................6

II.   GENUINE ISSUES OF DISPUTED MATERIAL FACT AS TO THE MERITS
      OF DOE 4'S INDIVIDUAL CLAIMS PRECLUDE THE ENTRY OF SUMMARY
      JUDGMENT IN DEFENDANT'S FAVOR .........................................................................9

      A.    The Excessive Force, Restraints and Solitary Confinement Claims......................11

      B.    The Denial Of Adequate Mental Health Care Claim .............................................12

CONCLUSION ...............................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Doe v. Obama*,
631 F.3d 157 (4th Cir. 2011) ........................................................................................1, 2, 6, 9

*Farmer v. Brennan*,
511 U.S. 825 (1994)...........................................................................................................12

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
892 F.3d 613 (4th Cir. 2018) .............................................................................................7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).........................................................................................................7, 8

*McAirlaids, Inc. v. Kimberly -Clark Corp.*,
756 F.3d 307 (4th Cir. 2014) ...........................................................................................12

*Melendres v. Arpario*,
989 F. Supp. 2d 822 (D. Ariz. 2013), *aff'd*, 784 F.3d 1254 (9th Cir. 2015)............................10

*Newbrough v. Piedmont Reg'l Jail Auth.*,
822 F. Supp. 2d 2558 (E.D. Va. 2011) .............................................................................12

*Whitlock v. Johnson*,
153 F.3d 380 (7th Cir. 1998) .........................................................................................9, 10

Plaintiffs John Doe 4, *et al*., by their attorneys, submit this Supplemental Memorandum

of Law in Opposition to Defendant's Motion for Summary Judgment as ordered by the Court

during the Motions Hearing and Pretrial Conference conducted in this action on December 3,

2018.

## INTRODUCTION AND STATEMENT OF THE CASE

Defendant Shenandoah Valley Juvenile Center Commission ("SVJCC") moved for

summary judgment on October 22, 2018, seeking dismissal of the case in its entirety on the

grounds that there are no genuine issues of material fact in dispute with respect to any of the

constitutional claims set forth in Plaintiffs' Second Amended Complaint, and that Defendant is

entitled to judgment in its favor as a matter of law. *See generally* ECF Docket Nos. 99, 100.

Plaintiffs submitted their Memorandum of Law in Opposition to Defendant's Motion for

Summary Judgment on November 7, 2018. ECF Dkt. No. 127.[1]

In its Reply Brief ("SVJCC Reply"), filed November 16, 2018, Defendant, relying upon a

decision not cited in its initial Motion papers, argued as follows:

> In the context of a class action, "[t]he Supreme Court has made clear that named
> plaintiffs who represent a class 'must allege and show that they personally have
> been injured, not that injury has been suffered by other, unidentified members of
> the class to which they belong and which they purport to represent.'" *Doe v.
> Obama*, 631 F.3d 157, 160 (4th Cir. 2011) (*citing Simon v. E. Ky. Welfare Rights
> Org*., 426 U..S. 26, 40 n. 20 (1976)). Thus, Plaintiffs may not rely upon evidence
> regarding other class members as a panacea for Doe 4's individual claims.

*Id*. at 4-5 (ECF Dkt. No. 147). In the course of oral argument concerning Defendant's

dispositive Motion, Defendant's counsel, while acknowledging that the legal principle quoted

from *Doe v. Obama* concerned the threshold issue of standing and did not address the merits of

the claim at issue in that case, nonetheless asserted that the same principle governs a disposition

---

[1] Corrected copy filed on November 8, 2018 (ECF Dkt. No. 129).

on the merits in the instant case. This Court, noting that its own research conducted in

preparation for the hearing did not yield a definitive position on this aspect of Defendant's

argument, instructed the Parties to submit Supplemental Briefs addressing Defendant's

contention regarding the applicability of the *Doe v. Obama*, both in the context of standing and

in regard to the merits, by the end of the day on December 7, 2018.

Plaintiffs submit this Supplemental Memorandum of Law in accordance with the Court's

directive.

## FACTS CONCERNING DOE 4's INDIVIDUAL CLAIMS[2]

Plaintiffs seek declaratory and injunctive relief in this case in order to prevent a

continuation of a pattern and practice of wrongful conduct at SVJC, attributable to Defendant,

involving the use of excessive physical force and restraints, the imposition of excessive periods

of solitary confinement, and failure to provide adequate mental health care, all with respect to

unaccompanied immigrant children ("UACs") placed in detention at SVJC by the federal

government. Doe 4's own experiences with conditions of confinement at SVJC mirror each

aspect of the claims for which Plaintiffs seek relief.

With respect to excessive force and restraints, Doe 4 has alleged incidents in which he,

while returning to his room for a "time out" after his attempt to speak calmly with a staff

member was rebuffed, was punched and shoved by staff, pinned against the wall of his room

with his hands tied behind his back, and then jumped on by multiple staff members, endangering

his ability to breathe. Second Amended Complaint, ¶ 54 at 11 (ECF Dkt. No. 68). Doe 4 also

---

[2]     Because questions with respect to Plaintiff Doe 4's constitutional standing were not
raised by Defendant until it filed its Reply Brief in support of its Motion for Summary Judgment,
Plaintiffs contend and respectfully submit that their recitation of facts concerning Doe 4's
individual claims should not be confined solely to the facts specific to Doe 4 that are referenced
in their Opposition to Defendant's Motion.

has complained of being restrained by multiple staff members, placed into a restraint hold and then restricted to his room for behavior not involving any physical activity on his part. *Id.*, ¶ 55 at 11. On another occasion, following a physical confrontation with a staff member, "multiple staff members grabbed [Doe 4's] fingers, pulled them back painfully, and placed his knees on the ground before falling on top of him and throwing him to the ground. After placing his hands and feet in shackles, staff members grabbed him by the torso and put him in his cell," where he was left in restraints, in only his underwear, for an extended period. *Id.* ¶ 74 at 14.

Concerning imposition of excessive periods of solitary confinement, "Doe 4 was once confined to his room for three days following an altercation with a staff member. The first day of restriction, Doe 4 was kept in restraints and left in [only] his boxer shorts." *Id.*, ¶81 at 15. Another time, "Doe 4 was placed in restriction for the entire day because he took a notebook to his pod to draw, without first obtaining his teacher's permission." *Id.*, ¶ 82 at 15.

Regarding SVJC's failure to provide UACs with adequate mental health care, Doe 4's repeated requests to speak with a psychologist concerning his needs to deal with his anger and frustration have been ignored; he has been subject to discipline and room confinement for merely requesting to see his counselor; and SVJC staff have responded to incidents of self-harming behavior by Doe 4 by either admonitions to stop self-harming, with no effort to inquire into the motivation underlying the behavior, or complete disregard. *Id.*, ¶¶ 98-99, 102-103, 105-107 at 18-20.

The exposure to SVJC's wrongful conduct alleged by Doe 4 in the Second Amended Complaint is backed up by specific items of admissible evidence, some but not all of which were offered by Plaintiffs in supporting their Opposition to Defendant's Motion for Summary Judgment. *See, e.g.*, Plaintiffs Memorandum of Law in Opposition to Defendant's Motion for

Summary Judgment (ECF Dkt. No. 129), Ex. 24, Doe 4 Depo. Tr. 51:4-52:5, 88:3-89:9, 112:15-113:8 (excessive physical force and restraints); *id.* at 83:16-84:18 (placement in isolation for merely sitting in a chair and calmly asking to speak with his clinician); *id.* at 40:20-41:2 (noting that in individual sessions with clinician, he is spoken to only "about behaving poorly"); Ex. 24, Doe 4 Resps. to Defendant's Interrogatories, at 4 (excessive force and restraints); *id.* at 7-8 (imposition of isolation for benign conduct); *id.* at 12 (UACs made to feel as though they are treated "like animals"); *id.* at 4, 5, 12, 18 (UACs' benign attempts to communicate with staff misconstrued as "disrespect" and punished accordingly); *accord* Ex. 5, Mayles Depo. Tr. 166:22-24 (observation of a child's attempt to have a conversation at SVJC misinterpreted by staff as an argument).

While not, in all instances, expressly referred to or relied upon by Plaintiffs in opposing Defendant's Motion on the merits, there are many incidents involving the application of discipline against Doe 4 during the time period relevant to this action in connection with which the Court, upon close scrutiny, might well conclude that the physical force and/or restraints applied to Doe 4 by SVJC staff was unnecessary and thus excessive), Doe 4's period of time in isolation was excessive under the circumstances, or both. *See* Doe 4 Incident Chart attached hereto as Appendix A. Those incidents (as described by SVJC),[3] by way of illustration, include the following:

- Doe 4 and another SVJC detainee "became upset with each other"; when staff intervened and Doe 4 attempted to get at the other child by pushing through staff, Doe 4 placed in PRT, followed by 5.5 hours in isolation. *See* App. A, Ex. B hereto.

- Doe 4 failed to earn a point by refusing to trim his fingernails, which staff claimed "[were] a threat to safety and security." A requested discussion between Doe 4 and a

---

[3]    Although Plaintiffs do not concede the accuracy of the incident accounts set forth in SVJC's records, they refer to these accounts for the purpose of demonstrating the nature and extent of Doe 4's exposure to the conduct of which Plaintiffs complain in this action.

supervisor failed to resolve the issue and an altercation eventually ensued in which Doe 4 threatened staff and punched a staff member. In response, Doe 4 was placed in a 2-man PRT and, subsequently, in mechanical restraints. A period in isolation of more than 23 hours followed, with three days of modified programming thereafter. *See* App. A, Ex. D hereto.[4]

• Doe 4 became upset due to losses of points and was heard to use disrespectful and threatening language toward staff. After initially refusing to return to his room when ordered to do so, he subsequently returned to his room "without incident," where he was subject to isolation for 18 hours. *See* App. A, Ex. H hereto.

• Doe 4 asked staff to change the channel of the DV in the common area of his pod, and cursed when the staff member refused to do so. Staff instructed Doe 4 to take a time out, but instead he stood and attempted to make a phone call, although he had already used his allotment of phone calls for the relevant time period. After some additional disruptive behavior, Doe 4 entered his room; staff had to physically impede Doe 4 from attempting to leave the room thereafter, and he was subjected to 9.5 hours of isolation, followed by placement in modified programming. In a clinical session one day later, Doe 4 stated that his right foot was injured when a staff member shoved him hard from behind when he was entered his room. This account was supported by another (unnamed) UAC. *See* App. A, Ex. K hereto.

These and the other incidents summarized by Appendix A and accompanying evidence make it clear that Doe 4's encounters with the SVJC policies and practices complained of by Plaintiffs are significantly greater in number and far more problematic in substance than Defendant's Motion suggests.

## SUMMARY OF ARGUMENT

There is no legal basis for any contention on the part of the Defendant that John Doe 4, either at the time of filing of Plaintiffs' Second Amended Complaint or at present, lacked or lacks standing to pursue this action for himself and on behalf of the certified class he represents. The Second Amended Complaint plainly sets forth allegations concerning injuries-in-fact

---

[4] Notably, in connection with Doe 4's room confinement on this occasion, SVJC's notes reflect that "[d]ue to his past history of attempted self-injurious behavior, [Doe 4's] outer layer of clothing was removed to prevent him from fabricating a ligature, or covering the window to his pod." Despite these measures, Doe 4 nevertheless engaged in self-harm while isolated.

experienced by Doe 4 attributable to the acts or omissions at Shenandoah Valley Juvenile Center

("SVJC"), undertaken pursuant to a policy or custom attributable to the Defendant and capable

of being redressed through the declaratory and injunctive relief sought by the Plaintiffs.

Moreover, at this state of the proceedings, Plaintiffs have submitted evidence, in

responding to the Defendant's dispositive motion, establishing the existence of genuine issues of

disputed material fact that preclude an adverse ruling on Doe 4's constitutional claims as a

matter of law. Accordingly, even assuming that the principle quoted by Defendant from *Doe v.*

*Obama* extends beyond the question of standing and governs resolution of the merits, this Court

should reject Defendant's contention that purported deficiencies in Doe 4's individual claims

mandate a dismissal of this action.

## ARGUMENT

## I.    DOE 4 HAD, AND HAS, STANDING TO SERVE AS REPRESENTATIVE
OF THE RULE 23(b)(2) CLASS CERTIFIED IN THIS CASE

Plaintiffs submit that to the extent Defendant's invocation of *Doe v. Obama* is intended to

support a contention that Plaintiff Doe 4 -- either as of the time filing of the Second Amended

Complaint or at present -- lacked or lacks the requisite constitutional standing to represent the

class previously certified by the Court in this action, that contention is wrong.

> To possess standing, a plaintiff must sufficiently allege the three elements
> identified by the Supreme Court. That is, a plaintiff must allege that they have:
> "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged
> conduct of the defendant, and (3) that is likely to be redressed by a favorable
> judicial decision." *See Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547
> (2016). In evaluating a class action complaint, "we analyze standing based on the
> allegations of personal injury made by the named plaintiffs." *See Beck [v.*
> *McDonald]*, 848 F.3d [262,] 269 [(4th Cir. 2017)] (*citing Doe v. Obama*, 631 157,
> 160 (4th Cir. 2011)). And class plaintiffs cannot meet their burden to establish
> standing "[w]ithout a sufficient allegation of harm to the named plaintiff in
> particular." *Id.* (*quoting Doe*, 631 F.3d at 160).

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 619-20 (4th Cir. 2018).

Here, with respect to each of Plaintiffs' remaining causes of action,[5] it is readily apparent from a

review of Doe 4's allegations embedded in the Second Amended Complaint, as summarized

above, that if Defendant had challenged standing through a motion to dismiss, that effort would

have failed.

 With respect to Plaintiffs' excessive force, excessive restraints, excessive solitary

confinement and inadequate mental health care claims, Doe 4 has alleged actual injuries specific

to himself, attributable to a pattern and practice of wrongful conduct for which Defendant bears

responsibility, which injuries would be redressable through the declaratory and injunctive relief

sought by the Plaintiffs, if ultimately granted. *Hutton*, 892 F.3d at 620 ("When a complaint is

evaluated at the pleading stage . . . 'general factual allegations of injury resulting from the

defendant's conduct may suffice, for, on a motion to dismiss, we presume that general

allegations embrace those specific facts that are necessary to support the claim." *See Lujan v.

Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks and alterations

omitted).").

 An "injury-in-fact" entails "an invasion of a legally protected interest which is (a)

concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'"

*Lujan v Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). Doe 4 has alleged --

concretely and with particularity -- harm to himself experienced as a result of SVJC's policies

and practices purportedly relating to disciplining of detained UACs that he expressly contends

involved the use of excessive force and/or restraints, the imposition of excessive solitary

---

5       At the hearing on December 3, 2018, Plaintiffs' counsel acknowledged the abandonment
of Plaintiffs' racial discrimination and national origin discrimination claims.

confinement and the facility's failure to provide constitutionally-adequate mental health care.
Those allegations, which at the pleading stage must be taken as true -- clearly support the
inference that additional incidents of the same or substantially similar nature can be anticipated
in the absence of the declaratory and injunctive relief that Plaintiffs are seeking. In sum, Doe 4
met the requisites for a finding of constitutional standing as of the filing of the Second Amended
Complaint and, thereafter, as of the date of class certification.

"Since [the elements of standing] are not mere pleading requirements but rather an
indispensable part of the plaintiff's case, each element must be supported in the same way as any
other matter on which the Plaintiff bears the burden of proof, *i.e.*, with the manner and degree of
evidence required at successive stages of litigation." *Lujan*, 504 U.S. at 561 (citations omitted).
Thus, while Doe 4's allegations as set forth in the Second Amended Complaint are sufficient to
support the conclusion that he had standing to sue and to serve as a class representative at the
pleading stage, "[i]n response to a summary judgment motion . . . the plaintiff can no longer rest
on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,'
Fed. R. Civ. P. 56(e), *which for purposes of the summary judgment motion will be taken as true*."
*Id.* (emphasis added). The Court further noted in *Lujan*, that

> "[w]hen the suit is one challenging the legality of government action or inaction,
> the nature and extent of the facts that must be averred (at the summary judgment
> stage) . . . in order to establish standing depends considerably upon whether the
> plaintiff is himself an object of the action (or forgone action) at issue. If he is,
> there is ordinarily little question that the action or inaction has caused him injury,
> and that a judgment preventing or requiring the Action will address it.

*Id.* at 561-61. So it is here, wherein Doe 4's allegations have been provided additional support in
the form of evidence -- much, although not all of it -- from Defendant's own records,
illuminating events that the Court could ultimately determine implicate violations of Doe 4's
constitutional rights and that must, at this stage, be "taken as true." *Lujan*, 504 U.S. at 561.

8

Doe 4's allegations with respect to his personal experiences with excessive force and

restraints, excessive time in isolation, and interrelated denial of adequate mental health care find

support in his deposition testimony, his Responses to Defendant's Interrogatories, the deposition

testimony of others, and SVJC disciplinary reports. *See* Factual Recitation, *supra*, at 2-3. While

Defendant, in its Motion papers, takes issue with Doe 4's and Plaintiff's portrayal of these

various incidents, for purposes of standing analysis, Plaintiffs' presentation must be credited.

Accordingly, Plaintiffs submit that to the extent that Defendant's bid for summary judgment is

premised upon a showing that Doe 4 lacked or currently lacks standing, Defendant's position

must be rejected.

## II.   GENUINE ISSUES OF DISPUTED MATERIAL FACT AS TO MERITS OF DOE 4'S INDIVIDUAL CLAIMS PRECLUE THE ENTRY OF SUMMARY JUDGEMNT IN DEFENDANT'S FAVOR

The Court asked the Parties to assume, for purposes of their preparation and submission

of the supplemental briefing the Court directed, that the legal principle for which Defendant cited

*Doe v. Obama* applies not just to the issue of constitutional standing, but also with respect to

resolution of the merits -- *i.e.*, that, in order to survive Defendant's Motion for Summary

Judgment, the individual claims asserted by Doe 4, as class representative, must be sufficient in

themselves to make out a constitutional violation.

As a general matter, a named plaintiff's individual claim asserted in the context of a class

action need not prevail in order for relief to be afforded to the class as a whole, so long as

another member of the certified class maintains an active controversy with the defendant on the

basis of which relief can be granted. As shown above, Plaintiff Doe 4 had standing as of the

time the class was certified in this case. Once certified, the class took on a legal status separate

and apart from the individual interests of the named plaintiff, and its viability thereafter does not

rise or fall on the merits of the named plaintiff's individual claim. As recognized by the Court of

Appeals in *Whitlock v. Johnson*, 153 F.3d 380 (7th Cir. 1998), in this regard:

> Assuming that the initial certification of the class was appropriate, the district
> court acted properly in refusing to decertify the class or dismiss the action once it
> became apparent that Umar did not have an actionable individual claim. A
> properly certified class has a legal status separate from and independent of the
> interest asserted by the named plaintiff. *See United States Parole Comm'n v.*
> *Geraghty*, 445 U.S. 388, 404 (1980); *Franks v. Bowman Transp. Co*., 424 U.S.
> 747, 753 (1976); *Sosna v. Iowa*, 419 U.S. 393, 399 (1975). In *Sosna*, the Court
> recognized the independent legal status of class actions and held that , where a
> class has been properly certified, the mootness of the named plaintiff's individual
> claim does not render the class action moot. 419 U.S. at 399-401. . . .
>
> The defendants point out that Umar's individual claim did not expire because of
> mootness, as did the individual claims in *Sosna* and *Gerathty*, but instead expired
> because of a judgment on the merits against him. The reasoning of *Sosna* and
> *Geaghty*, however, applies with equal force regardless of the reason for the
> expiration of the named plaintiff's individual claim.

153 F.3d at 384 & n.1 (citations omitted); *see also Melendres v. Arpaio*, 989 F. Supp. 2d 822,

891 (D. Ariz. 2013) ("To the extent the MCSO asserts that, despite any potential future harm to

the certified class resulting from its policies, Plaintiffs cannot prevail because none of the class

representatives demonstrated at trial that they suffered personal harm, its argument is not well-

founded. It is true that to gain class certification, named plaintiffs must 'allege and show that

they personally have been injured.' *Warth v. Seldin*, 472 U.S. 490, 502 (1975). However, when

the claims of the named plaintiffs are not proven at trial, unnamed class members may be

awarded relief so long as a 'controversy' still exists between the unnamed class members and the

defendants. *Sosna v. Iowa*, 419 U.S. 393, 402 (1975."), *aff'd in pertinent part*, 784 F.3d 1254,

1261-64 (9th Cir. 2015).

Based on these authorities, the Defendant's premise that as Doe 4's individual claims go,

so goes the class, is demonstrably incorrect. However, Plaintiffs submit, and show below, that

Doe 4's individual claims, viewed in the light most favorable to the Plaintiffs, are sufficient to withstand the Defendant's Motion in any event.

### A.    The Excessive Force, Restraint And Solitary Confinement Claims

The Parties, by their prior submissions, have indicated their agreement that Plaintiffs' claims asserting that SVJC's treatment of UACs reflects the use of excessive force and restraints and the imposition of excessive periods of solitary confinement must be judged by the "objective reasonableness" standard set forth by the U.S. Supreme Court in *Kingsley v. Hendrickson*, 135 D. Ct. 2466 (2015). Plaintiffs submit that the evidence adduced at trial, if credited by the Court, will establish a pattern and practice of purposeful, knowing use of disciplinary measures against UACs detained at SVJC that is "objectively *unreasonable*" -- *i.e.*, measures that are not "'applied in a good faith effort to maintain or restore discipline' but, rather, are applied 'maliciously and sadistically to cause harm.'" *Kingsley*, 135 St. Ct. at 2469, 2473, 2475.

Considered against this standard, Doe 4's individual claims, at a minimum, involve genuine issues of disputed material fact that preclude the entry of summary judgment in Defendant's favor. Doe 4 has alleged, and further attested in his deposition testimony and written discovery responses, to incidents in which he was subjected to physical force and restraints by SVJC staff under circumstances in which such actions were either unprovoked or an overreaction to Doe 4's own conduct, and Doe 4's accounts and Defendant's own documents reflect that he has been subjected to lengthy periods of room confinement that appear grossly disproportionate to the predicate circumstances. *See generally* Factual Recitation, *supra*, at 2-5. All in all, Doe 4 spent almost 180 hours in seclusion for purported offenses that did warrant such extreme responses. App. A and exhibits hereto;' Plaintiffs' Opp. Mem., Ex.2, Lewis Report, §§ 150, 151, 155. Doe 4's evidence in this regard is supported by the magnitude of the numbers of incidents of physical force and restraints, and duration of periods in isolation, reflected in the

11

prospective testimony of Paul Diver, as well as the testimony of former SVJC staff member

Anna Wykes concerning the extent to which even the most minor infractions or innocuous

conduct on the part of UACs provoked a disproportionate physical response and imposition of

extended periods of solitary confinement by SVJC. *See generally* Plaintiffs' Memorandum of

Law In Opposition to Defendant's Motion for Summary Judgment ("Plaintiff" Opp. Mem.") at

2-9 and record citations therein.

Viewed cumulatively, and drawing all inferences therefrom in Plaintiffs' favor as it must

-- *see McAirlaids, Inc. v. Kimberly -Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) -- this Court

can and should conclude that Doe 4's claims in this regard can be resolved only by way of trial,

and that Defendant's Motion must, therefore be denied.

**B.      The Denial Of Adequate Mental Health Care Claim**

If anything, the continuing viability of Doe 4's individual claim as to SVJC's failure to

provide UACs with adequate mental health care is even clearer than with respect to his claims

concerning excessive force, restraints and solitary confinement. Assuming, solely for the sake of

argument, the applicability of the "deliberate indifference" substantive standard for which

Defendant has argued, Plaintiffs, to prevail on this claim, must establish, under *Farmer v.*

*Brennan*, 511 U.S. 825 (1994), and its progeny, that they were harmed or exposed to a

substantial risk of serious harm, and that Defendant knew of, and consciously disregarded, this

substantial risk to Plaintiffs' health and safety. Plaintiffs must show "actual knowledge or

awareness on the part of the alleged inflicter." *Newbrough v. Piedmont Reg'l Jail Auth.*, 822 F.

Supp. 2d 2558, 581 (E.D. Va. 2011).

Here, Defendants are well aware that a significant proportion of the UACs transferred to

SVJC arrive there having experienced devastating prior trauma and suffering from serious

mental illnesses for which a "high need for mental health treatment" exists. *See generally*

12

Plaintiffs' Opp. Mem. at 15-22 and record citations therein. Defendants know, as a result of

Doe 4's psychological evaluation by Dr. Gorin on SVJC's behalf, that Doe 4 needed a more

intensive form of mental health treatment that SVJC could realistically provide, and likewise

knew that Doe 4 engaged in self-harming behaviors. *See* Defendant's Brief in Support of Motion

for Summary Judgment at 9; *see also* App. A, Ex. D hereto (referencing Doe 4's "past history of

attempted self-injurious behavior"). Yet, Doe 4 has noted that in his individual sessions with his

clinician, the clinician only speaks with Doe 4 "about behaving properly," and he has been

subjected -- *repeatedly* -- to extended period of solitary confinement, notwithstanding the

devastating impact that this form of punishment can do to traumatized children as readily attested

to by Plaintiffs' expert psychologists, Dr. Weisman and Dr. Lewis, placing Doe 4 -- and other

similarly-situated UACs -- at risk of not just serious, but possibly irreparable harm. Plaintiffs'

Opp. Mem. at 17-22. Significantly, SVJC staff have acknowledged and agree with the research

indicating that "isolation can cause serious mental health trauma, retraumatization, depression,

anxiety, psychosis, suicide, self-harm, violence and negative development." *Id.* at 19 (citations

admitted).

In short, a plethora of disputed material facts exist with respect to Doe 4's claim that

SVJC has engaged in a pattern and practice of denying UAC's adequate mental health care,

attributable to the Defendant, in deliberate indifference to his and Plaintiffs' serious needs.

## CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment, as to Doe 4

personally and as to Plaintiffs generally, must be denied.

DATED:     December 7, 2018

Respectfully submitted,

Hannah M. Lieberman (admitted *pro hac vice*)
hannah_lieberman@washlaw.org
Tiffany Yang (admitted *pro hac vice*)
tiffany_yang@washlaw.org
Mirela Missova (admitted *pro hac vice*)
mirela_missova@washlaw.org
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS
AND URBAN AFFAIRS
11 Dupont Circle, NW, Suite 400
Washington, D.C. 20036
(202) 319-1000 (telephone)
(202) 319-1010 (facsimile)

Theodore A. Howard (admitted *pro hac vice*)
thoward@wileyrein.com
Bradley C. Tobias (VSB No. 88046)
btobias@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, D.C. 20006
(202) 719-7120 (telephone)
(202) 719-7049 (facsimile)

By: _____
Theodore A. Howard

*Attorneys for Plaintiffs*

14

# APPENDIX A

| Exhibit | Date | Summary [We do not concede that the information contained in SVJC's records, summarized below and attached hereto, is an accurate representation of the incidents included in this chart] | Use of force | Time spent in isolation (in hours:minutes) | Modified Programming Notes |
|---|---|---|---|---|---|
| A | 12/28/2017 | According to SVJC's records, attached hereto, Doe 4 "became upset" during dinner time, dumping his food and drink and not giving staff his trash. He also did not return to his room when asked. Doe 4 was subsequently placed in a two-man PRT. After being forcibly taken to his room, he struggled while in the PRT and attempted to kick staff. He was placed on his bunk, still in the PRT, and continued to struggle. (Ex. A, 1)

During isolation, Doe 4 "[h]ad shirt tied around his neck", and afterwards was seen laying on the floor. He was given a suicide blanket. (Ex. A, 4) | two-man PRT (approx. 5 minutes) (Ex. A, 1) | 15:00 (Ex. A, 3, 5) | |
| B | 1/17/2018 | According to SVJC's records, attached hereto, Doe 4 and another resident "became upset with each other." When staff intervened, Doe 4 attempted to push staff to get to the other resident, after which Doe 4 was removed for "threatening behavior". (Ex. B, 1) | PRT (less than 1 minute) (Ex. B, 1) | 5:53 (Ex. B, 4) | |
| C | 1/29/2018 | According to SVJC's records, attached hereto, Doe 4 "became upset" when a staff member told him "he could not sit in a chair." He was upset over point loss, which he tried to discuss with staff. According to the disciplinary report, he "refused to calm down and leave the gym." After some discussion with staff "and attempting to contact his clinician and case manager without success," he was placed in a two-man PRT and brought to his room. (Ex. C, 1). He was returned to programming at 10:00 pm. (Ex. C, 3) | two-man PRT (less than 1 minute) (Ex. C, 1) | 6:25 (Ex. C, 3) | |
| D | 2/4/2018 | According to SVJC's records, attached hereto, Doe 4 failed to earn a point because he did not want to trim his fingernails, and was told that "the length of his fingernails [were] a threat to safety and security." He asked to speak with a supervisor, who told him if his nails were cut he could earn a point. The situation escalated, and Doe 4 punched a table, threatened staff and punched a staff member after staff attempted de-escalation. Doe 4 was placed in two-man PRT and in mechanical restraints. (Ex. D, 1)

"Due to his past history of attempted self injurious behavior, his outer layer of clothing was removed to prevent him from fabricating a ligature, or covering the window" to his pod. During isolation, he engaged in self harm. (Ex. D, 1) | Two-man PRT (3 minutes), mechanical restraints (5 minutes) (Ex. D, 1) | 23:48 (Ex. D, 3, 5) | Three days modified programming after isolation (Ex. D, 8-10) |
| E | 2/13/2018 | According to SVJC's records, attached hereto, staff found in Doe 4's room a ground prong from a power cord, and a piece of elastic from a fitted sheet fashioned into a hair band. (Ex. E, 1) Staff removed the items when they were discovered. (Ex. E, 7) Doe 4 was noted as being "[c]alm on bunk." (Ex. E, 1) | | 4:00 (Ex. E, 3) | |
| F | 2/25/2018 | According to SVJC's records, attached hereto, during rec time, Doe 4 and another resident started fighting. Staff intervened and Doe 4 was brought to his room. (Ex. F, 1) | Staff placed hands on Doe 4's arms; he "was not restrained but was escorted out of the gym for less than 1 minute." (Ex. F, 1) | 7:39 (Ex. F, 3) | |

| Date | Description | Duration |
|---|---|---|
| 3/12/2018 | According to SVJC's records, attached hereto, Doe 4 was informed that he had failed to earn a point because he touched the staff station after being told not to. He then began to yell and threaten staff, but eventually complied with staff requests that he go back to his room. (Ex. G, G-10).<br>Following this incident, Doe 4 filed a grievance, stating that he had not threatened staff. (Ex. G, 6-10). | 4:00 (Ex. G, 3) |
| 3/16/2018 | According to SVJC's records, attached hereto, Doe 4 became upset due to point loses, was heard using threatening language, and refused to go back into his room. Ultimately, Doe 4 agreed to return to his room "without incident." (Ex. H, 1) | 18:00 (Ex. H, 3, 5) |
| 4/1/2018 | According to SVJC's records, attached hereto, Doe 4 was being disruptive and disrespectful, refused to go back to his room and "stood up against the wall." After speaking to Doe 4, staff placed Doe 4 in 2-man PRT. Doe 4 was aggressive and was placed in a PRT, escorted to his room, and then returned staff. He was then placed in a 1-man PRT, continued to resist, but was released after approximately 5 minutes. Doe 4 punched the door and the sink in his room afterwards. (Ex. I, 1-2)<br><br>According to SVJC's records, attached hereto, during a clinical session the next day, Doe 4 alleged staff maltreatment during the 4/1 incident. Doe 4 stated that he had asked staff whether he had lost any behavioral points, and was asked to take a time-out. He eventually agreed to go to his room for a time-out. When walking towards his room, a staff member punched him in the rib cage. At this point, Doe 4 resisted being placed in a PRT by other staff, but staff was able to move him toward his room and compel him inside. Doe 4 alleged that staff punched him in the face and described wounds at the top of his right hand. (Ex. I, 4) | 2-man PRT (approx. 1 minute), 1-man PRT (approx. 4 minutes) (Ex. I, 1, 1, 6)<br><br>Approx. 7:45 (Ex. I, 2) |
| 4/18/2018 | Unclear from documentation what led to three day modified programming. | Three days of modified programming (Ex. I, 1, 2, 4) |
| 5/2/2018 | According to SVJC's records, attached hereto, Doe 4 asked that staff change the TV channel and cursed when the staff wouldn't. Staff told Doe 4 to take a timeout; Doe 4 instead stood up to make a phone call, even though he had used all his phone calls. Doe 4 knocked a couple of items around, and then returned to his room. He was aggressive to staff, and staff had to put up his hand to stop Doe 4 from exiting his room. (Ex. K, 2)<br><br>During a clinical session on 5/4, Doe 4 stated that his right foot was injured when staff pushed him hard from behind when he was entering his room. Doe 4 nearly tripped because his right foot bent backwards, but managed to catch himself. Another youth (unnamed) supports that account. (Ex. K, 13) | 9:36 (Ex. K, 3, 5)<br><br>Three days of modified programming (Ex. K, 8, 9) |
| 5/7/2018 | According to SVJC's records, attached hereto, Doe 4 and another resident were fighting. Doe 4 was put in a PRT and escorted to his room without incident. (Ex. L, 1) | 6:00 (Ex. L, 3)<br><br>Five days of modified programming after isolation (Ex. L, 6-8) |
| 5/25/2018 | According to SVJC's records, attached hereto, Doe 4 was disruptive and disrespectful in class, and cursed at staff. Doe 4 did not leave the class when he was told the first time, but the second time he was asked, he went to his room without issue. (Ex. M, 1) | 3:20 (Ex. M, 3) |

| | Date | | | |
|---|---|---|---|---|
| N | 6/6/2018 | According to SVJC's records, attached hereto, Doe 4 was overheard telling another resident to fight. Doe 4 was "removed for threatening behavior." (Ex. N, 1) | | 4:02 (Ex. N, 3) | |
| O | 6/14/2018 | According to SVJC's records, attached hereto, Doe 4 and another resident began to fight. Doe 4 was placed in a PRT and brought to his room. (Ex. O, 1) | PRT (approx. 2 minutes) (Ex. O, 1) | 4:00 (Ex. O, 3) | |
| P | 6/18/2018 | According to SVJC's records, attached hereto, Doe 4 punched another resident. Doe 4 was placed in a PRT and brought to his room. (Ex. P, 1) | PRT (less than 1 minute) (Ex. P, 1) | 12:40 (Ex. P, 3, 5) | Modified programming for 3 days after isolation- then incident on 6/22 (Ex. P, 7-8) |
| Q | 6/22/2018 | According to SVJC's records, attached hereto, Doe 4 was upset that he couldn't use the Xbox because he was on modified programming, and cursed and threatened staff. Doe 4 eventually went to his room without incident. (Ex. Q, 1) | | 3:30 (Ex. Q, 3) | Modified programming for 4 days (Ex. Q, 5-6) |
| R | 6/28/2018 | According to SVJC's records, attached hereto, Doe 4 and another resident were given the iPod and speaker. The two residents did not turn the speaker down when staff asked them to, and Doe 4 refused to give the iPod to staff. Doe 4 then became upset when he was told that he was being placed on modified programming, and threatened staff. (Ex. R, 1) | | 12:30 (Ex. R, 3, 5) | Modified programming for 3 days after isolation (Ex. R, 8-9) |
| S | 7/12/2018 | According to SVJC's records, attached hereto, Doe 4 did not want go to his room for the night. Doe 4 assaulted staff, and was placed in a two-man PRT, after which he "became more aggressive, and more resistant." He was ultimately secured in his room. (Ex. S, 1) | Two-man PRT (approx. 2 minutes) (Ex. S, 1) | 16:53 (Ex. S, 3, 5) | Modified programming for 2 days after removal (Ex. S, 7) |
| | 7/16/2018 | According to SVJC's records, attached hereto, Doe 4 assaulted a resident. Doe 4 was placed in a two-man PRT and taken to the ground. (Ex. T, 1) (Note that this incident occurred two days after Doe 4 was the victim of an assault from what appears to be the same resident.) (Ex. T, 11-12) | Two-man PRT (approx. 2 minutes) (Ex. T, 1) | 11:14 (Ex. T, 3) | Modified programming for 6 days after removal (Ex. T, 5-8) |
| | 7/23/2018 (the documentation reports the date for this incident as 7/23 and 7/24) | According to SVJC's records, attached hereto, Doe 4 had a small piece of metal and an AA battery in his room. Doe 4 was noted as being "[c]alm in room." (Ex. U, 1) | | | Modified programming for 2 days after removal (Ex. U, 3-4) |
| | **TOTAL ISOLATION** | | | 176 hours and 15 minutes | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of December, 2018, true and correct copies of

Plaintiffs' Supplemental Memorandum of Law in Opposition to Defendant's Motion for

Summary Judgment, Appendix A thereto and supporting Exhibits were served *via* electronic

mail upon the following:

> Jason A. Botkins, Esq.
> Melisa G. Michelsen, Esq.
> LITTEN & SIPE, L.L.P.
> 410 Neff Ave.
> Harrisonburg, VA 22801-3434
> jason.botkins@littensipe.com
> melisa.michelsen@littensipe.com

> Harold E. Johnson, Esq.
> Meredith Haynes, Esq.
> WILLIAMS MULLEN
> 200 South 10th Street
> Suite 1600
> Richmond, VA 23219
> hjohnson@williamsmullen.com
> mhaynes@williamsmullen.com

> Attorneys for Defendant

Theodore A. Howard