CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
12/13/2018
JULIA C. DUDLEY, CLERK
BY: S/J.Vasquez
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JOHN DOE, by and through his next friend, NELSON LOPEZ, on behalf of himself and all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SHENANDOAH VALLEY JUVENILE CENTER COMMISSION,<br><br>Defendant. | Civil Action No. 5:17-cv-97<br><br>By: Elizabeth K. Dillon<br>     United States District Judge |

**MEMORANDUM OPINION**

**I. BACKGROUND**

Doe 4 and the class he represents bring this action against Shenandoah Valley Juvenile Center Commission (Commission). The members of the class (the Detainees) are Latino immigrant youths who are or may be confined in the future at the Shenandoah Valley Juvenile Center (the Center). (Second Am. Compl. 1–2; Dkt. No. 68.) Doe 4 is a seventeen-year-old Honduran citizen who came to the United States to seek protection as a refugee. (*Id.* at 3.) Doe 4 and the Detainees who came into the United States without proper authorization are detained at the Center, per the decision of the U.S. Department of Health and Human Services' Office of Refugee Resettlement (ORR). (*Id.* at 1.) The Center holds both unaccompanied alien children (UAC) and United States citizens who have been adjudicated as juvenile delinquents. (*Id.* at 6.)

The Detainees allege that they are subjected to unconstitutional conditions and have consequently engaged in self-harm and suffered abuse. (*Id.* at 1–2.) They bring this action

under 42 U.S.C. § 1983, alleging excessive use of force, failure to provide adequate mental health services, and discrimination on the bases of race and national origin.[1] (*Id.* at 22–28.)

Plaintiffs seek declaratory and permanent injunctive relief. Specifically, they ask that the court declare the Commission's acts and omissions unconstitutional, that the Commission be ordered to cease its alleged unconstitutional policies and practices, and that the Commission be ordered to provide class members with care that satisfies constitutional standards. (*Id.* at 2, 29.)

## II. DISCUSSION

### A. Motions to Exclude Experts

Defendant has filed three motions in which it seeks to exclude the testimony and/or reports of opposing experts. The motions to exclude are based on an alleged lack of qualifications of a given expert or on assertions that the testimony is inadmissible under Federal Rule of Evidence 702 and the standards established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Rule 702 governs the admissibility of expert testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

---

[1] At the summary judgment hearing, plaintiffs' counsel withdrew the national origin and race discrimination claims.

Under Rule 702, a district court acts as gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 588 (1993). The proponent of the testimony must establish its admissibility by a preponderance of proof, although it need not prove its expert's theory is correct. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Maryland Cas. Co. v. Therm–O–Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998).

The Fourth Circuit has explained the *Daubert* standard as a "two-step gatekeeping function" required of trial courts. First, the trial court must ask whether proffered scientific evidence is valid and reliable. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000). The second question is whether the evidence will help the trier of fact, which is generally a question of relevance, or "fit": assuming the evidence is reliable, will it "assist the trier of fact to understand or determine a fact in issue." *Maryland Cas. Co.*, 137 F.3d at 784 (quoting *Daubert*, 509 U.S. at 592).

**1. Defendant's Motion in Limine to Exclude Expert Testimony of Paul Diver, Ph.D.**

Defendant first moves to exclude the report and testimony of Dr. Paul Diver. Dr. Diver is a senior managing consultant with experience teaching and applying statistical techniques in a wide variety of industries. Plaintiffs have retained Dr. Diver as an independent statistical expert in this case. In his report, he purports to analyze incidents at the Center involving class members spending time in seclusion and the use of force against class members, although it appears non-class members may be included. He analyzes these incidents before and after the defendant implemented a change in its behavioral management program, and he also analyzes when these incidents occurred against class members who were exhibiting self-injurious behavior. (Report of Dr. Diver, Ex. 2, Dkt. No. 104-2.) To create his report, Dr. Diver reviewed reports and

3

documents related to the relevant incidents and compared this data against the defendant's internal standards regarding force and restraints, the Juvenile Detention Alternatives Initiative (JDAI) standard, and the American Medical Association (AMA) standard. (*Id.* at 3.)

Defendant argues that Dr. Diver's expert testimony should be excluded for three reasons: his analysis is 1) irrelevant under Federal Rule of Evidence 702(a), 2) lacks an adequate factual foundation under Rule 702(b), and 3) is fundamentally flawed and unreliable under Rule 702(c).

First, defendant argues that Dr. Diver's analysis is irrelevant because, although the data he relied on pertained to 131 UACs, only three of those UACs were residents at the Center when the class was certified. Further, defendant asserts that the timeframe employed by Dr. Diver is irrelevant because it spanned from June 2015 to May 2018, while plaintiffs defined the relevant time period in their discovery requests as October 4, 2015, to May 1, 2018. Last, because Dr. Diver did not consider all the incidents that did *not* lead to force or confinement, he improperly limited his relied-upon data. Defendant suggests, then, that the report cannot provide a "reliable sense of the frequency with which force is used at SVJC." (Mem. Supp. Mot. Exclude Expert Test. Dr. Paul Diver 7–11, Dkt. No. 104.)

Second, defendant contends that Dr. Diver's analysis is based on an inadequate factual foundation because he relied on a spreadsheet provided by plaintiffs' counsel and did not personally review the source data from which the spreadsheet was created, thereby failing to meet the proponent's burden to establish that expert opinion is based on reliable data. Defendant also questions the probative value of Dr. Diver's report because he did not consider the reason why force or confinement was used in each incident and whether it was justified. By failing to consider the factual circumstances of these incidents, defendant contends that it cannot be

4

determined whether the use of force or confinement was "justified, appropriate or objectively unreasonable." (*Id.* at 11–14.)

Finally, defendant asserts that Dr. Diver's analysis as to room confinement is fundamentally flawed and unreliable because he included incidents during which UACs refused to leave, voluntarily stayed, or were sleeping in their rooms. In addition, defendant emphasizes that Dr. Diver admitted to two instances of double-counting during his deposition. (*Id.* at 14–20.)

In their opposition, plaintiffs first explain that the purpose of Dr. Diver's report was to assist the court by quantifying and synthesizing the use of isolation and force shown in the thousands of pages of reports produced by defendant. (Pls.' Mem. Opp'n Def.'s Mot. Exclude Expert Test. Dr. Paul Diver 2–3, Dkt. No. 124.) Plaintiffs contend that this report will help the court determine if the defendant's practices violate constitutional norms because Dr. Diver found: (1) 87.2% of the 938 behavioral incidents between June 2015 and May 2018 exceeded the AMA standard and the JMAI benchmark; (2) 426 incidents involved force, a number of which violated the Center's own standards; (3) the change in the defendant's behavioral management program did not change the use of isolation and excessive force; and (4) many incidents involved youth with self-injurious behavior. Further, plaintiffs reject Dr. Diver's double-counting as a significant issue, pointing out that the incidents of seclusion only decreased from 972 to 938 and his conclusion that the defendant engaged in excessive isolation and physical force did not change after making corrections. (*Id.* at 4–7.)

Plaintiffs also argue that Dr. Diver's report is reliable because he is permitted to rely on data prepared by third parties under Federal Rule of Evidence 703. (*Id.* at 10–11.) Plaintiffs contend that the 938 incidents of isolation and 426 instances of force are "plainly relevant" to

5

show the pervasiveness and recurrence of the defendant's practices over a period of time. (*Id.* at 11–13.) As to the lack of factual circumstances surrounding each incident, plaintiffs argue that the purpose of Dr. Diver's report was not to explore the justification for force or confinement. (*Id.* at 17–20.)

In its reply, defendant repeats that the report is flawed because the reasonableness of force cannot be determined without context, so it is valueless in determining whether the use or duration of force was unconstitutional. (Reply Br. Supp. Def.'s Mot. Exclude Expert Test. Dr. Paul Diver 7, Dkt. No. 139.) It asserts that, by omitting the underlying reasons, "Diver has provided the Court with only skewed numbers without any context." (*Id.* at 8.)

The court finds that Dr. Diver's expert testimony and analysis is inadmissible to the extent it is introduced to show an unconstitutional custom or practice of the defendant. Viewed in light of its "quantitative" purpose—as asserted by plaintiffs—Dr. Diver's report simply adds up the number of behavioral incidents when force or confinement was used during the relevant time period. Without any consideration whatsoever of the reasons why force was used or the underlying facts of the situation during these particular instances, the sheer numbers on their own are not relevant to determine whether those incidents involved unconstitutional behavior or whether those incidents caused by a custom or practice that thereby violated plaintiffs' constitutional rights. *See Sigle v. City of Chicago*, No. 10-C-04618, 2013 WL 1787579, at *8 (N.D. Ill. Apr. 25, 2013) ("[E]vidence of statistics and [complaints] alone are insufficient to support a *Monell* claim.") Further, although plaintiffs asserted in their oral argument that Dr. Diver's analysis is relevant because their other experts rely on it, defendant clarified that Dr. Lewis limited his data to Does 1–4 and Dr. Weisman only reviewed abuse complaints from

6

sixteen UACs. Thus, plaintiffs' other experts are not relying on Dr. Diver's analysis to conduct their own, further lessening the relevance of Dr. Diver's report.

Contrary to plaintiffs' argument at the hearing on this motion, the number of incidents on its own cannot provide context to a "policy or practice" case when the numbers are given without explanation. The court must determine whether incidents involving *unconstitutional* practices were widespread at the Center, and offering figures that add up the number of incidents does not assist this inquiry. *See, e.g.*, Thomas v. City of Chattanooga, 398 F.3d 426, 432 (6th Cir. 2005) (finding that an expert "offered no qualitative analysis of [complaints] and how they were similar to the present case," so his conclusion "that the Police Department must have an unwritten policy of condoning excessive force because of the mere number of complaints previously filed against it" was found to be "insufficient to create a genuine issue of material fact on which a jury could reasonably find that such a policy exists"); *Strauss v. City of Chicago*, 760 F.2d 765, 768–69 (7th Cir. 1985) (rejecting plaintiff's attempts to use statistical summaries of complaints filed with police department to plead that the city was the proximate cause of his illegal arrest, where plaintiff failed to identify what made prior arrests illegal or to show that similar illegality was involved in his case).

However, the court also finds that Dr. Diver's analysis regarding the defendant's violations of its own policies is relevant[2] and therefore admissible for the limited purpose of showing attribution to the defendant and deliberate indifference. The defendant's failure to follow its own policies could be relevant to show that any constitutional violation is attributable to it as a result of a culture of only reviewing staff's actions when a specific complaint has been made.

---

[2] Any analysis under the JDAI or AMA standards is irrelevant and inadmissible.

7

Generally, a municipality's failure to comply with its own policies does not amount to a constitutional violation. *See Jackson v. Sampson*, 536 F. App'x 356, 357–58 (4th Cir. 2013) (finding that failure to follow internal policies by prison officials was "not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation"). Notwithstanding the general rule, the defendant's failure is narrowly relevant for the elements of attribution to the municipality, deliberate indifference, and causation in the overall *Monell* analysis. *See Spell v. McDaniel*, 824 F.2d 1380, 1387, 1391 (4th Cir. 1987).

The data from which Dr. Diver's report was created was held by the Center and likely available to the Commission, so individuals with policy-making authority had these recorded incidents in which their policies were continually violated according to Dr. Diver, available to them. This potentially shows that plaintiffs may be able to prove that the Center and Commission disregard violations of their own policies and limit their review to specific complaints made by individuals at the Center. Consequently, this could be relevant to argue that if the Center never looks at violations of its own policies unless a complaint is made, and if some of those policy violations rise to the level of unconstitutional conduct, then the Center, and thereby the Commission, acts with deliberate indifference to a consistent practice and itself engages in a practice of purposeful ignorance. Indeed, by not addressing the numerous instances where its own policies were violated, the defendant's alleged failure could be relevant to show either that it "knowingly ignored a practice that was consistent enough to constitute custom" or "neglected to respond 'to a need . . . . in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations.'" *Hayes v. United States*, No. 1:16-cv-00131, 2016 WL 3465950, at *3 (D.D.C. June 13, 2006) (quoting *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004)).

8

Essentially, evidence that the defendant ignored its own policies that are created—at least in part—to avoid constitutional violations could establish an increased risk that a constitutional violation would occur, thereby demonstrating deliberate indifference. Dr. Diver's report is thus admissible as it may show that there was a consistent practice of ignoring violations of defendant's own policies sufficient to constitute a custom, though not necessarily itself an unconstitutional practice, and that the defendant's failure may show deliberate indifference to the risk that its failure to address these violations would allow constitutional violations to occur. Nevertheless, plaintiffs must still prove an unconstitutional custom or practice to succeed on their *Monell* claim. *Spell*, 824 F.2d at 1386.

For these reasons, Dr. Diver's expert testimony and analysis are admissible for the narrow and limited purpose described above.

### 2. Defendant's Motion in Limine to Exclude Expert Testimony of Dr. Andrea Weisman

Defendant next moves to exclude any testimony and opinions of Dr. Weisman. She is a clinical psychologist with experience evaluating juveniles who have been in confinement, including juveniles who have experienced trauma and have mental or intellectual disabilities. (Report of Dr. Weisman 1, Ex. 2, Dkt. No. 102-2.) Dr. Weisman was retained by plaintiffs to create a report from her review of the declarations of six UACs and clinical progress notes for three UACs at the Center, the defendant's policies related to mental health, complaints from UACs, psychiatric evaluations, the deposition of the Center's deputy director of programs, the declaration of another expert retained by plaintiffs, and relevant statistics. In doing so, she relied on her "knowledge of best practices in the field of juvenile justice" and "national standards promulgated by the National Commission on Correctional Health Care and the Juvenile Detention Alternatives Initiative." (*Id.* at 3–4.) Dr. Weisman concluded that the mental health

9

services provided at the Center fall far below all "nationally accepted standards for the operation of juvenile detention facilities," and that the "aggregate levels of the use of force, restraints, including the chair, and isolation" are "shockingly high," "demonstrate that the Center continues to violate their own policies and practices by placing youth in isolation for extended periods of time," and show that these practices exceed what is permitted under JDAI's and other organizations' standards regarding solitary confinement of juveniles. (*Id.* at 20–21.)

Defendant argues that Dr. Weisman's opinions and expert testimony should be excluded under Federal Rule of Evidence 702 because: 1) they are based on aspirational standards, 2) Dr. Weisman did not properly apply those standards in her assessment, 3) her opinions are based on insufficient and/or inaccurate facts, and 4) her opinions extend beyond her area of expertise. (Mem. Supp. Mot. Exclude Expert Test. Dr. Andrea Weisman 2–3, Dkt. No. 102.)

In assessing Dr. Weisman's report against the requirements of Federal Rule of Evidence 702, defendant argues that Dr. Weisman's testimony regarding JDAI standards will not help the trier of fact. (*Id.* at 3–4, 6.) Specifically, defendant contends that Dr. Weisman's opinions are based almost exclusively on the JDAI standards, which are not applicable to the Center. The defendant's administration of its UAC program is governed by an agreement with the Office of Refugee Resettlement (ORR Agreement). The ORR Agreement sets forth specific program requirements for the defendant's treatment of UACs, and requires the defendant to comply with conditions of the "Flores Settlement Agreement" and any applicable state regulations. Defendant references Dr. Weisman's deposition testimony that she did not consider these legal requirements in reviewing the defendant's policies, but rather based her opinions almost exclusively on JDAI standards. (*Id.* at 6)

Defendant argues that the comprehensive and demanding JDAI standards are an aspirational goal, rather than a minimum requirement for the Center, and that there is no basis or authority for applying the JDAI standards to the Center. (*Id*. 6–8.) Defendant maintains that Dr. Weisman improperly "seeks to opine on the legal standard of conduct required of [the defendant] in its treatment of UAC's" and that her testimony should be excluded because she uses aspirational standards as a proxy for legal requirements. (*Id.* 8–9.)

In response, plaintiffs contend that Dr. Weisman's reliance on the JDAI standards in forming her opinions is not grounds for exclusion and note that Dr. Weisman also relied on national standards promulgated by the National Commission on Correctional Health Care (NCCHC). (Pls.' Opp'n to Def.'s Mot. Exclude Expert Test. Dr. Andrea Weisman 5, Dkt. No. 125.) Plaintiffs contend that Dr. Weisman considered a range of sets of standards in assessing SVJC, but even if she had only considered the JDAI standards, this approach should be explored by the defendant on cross examination and in the weight the court gives to the testimony. (*Id.* at 5–6.)

The court finds that Dr. Weisman's expert testimony should be excluded for two reasons. First, her conclusions regarding the mental health treatment provided at the Center are irrelevant because the court is granting summary judgment in favor of defendant on the adequate mental health claim. Second, Dr. Weisman's opinions and conclusions regarding the use of force, restraints, the restraint chair, and isolation shall be excluded because they are analyzed under standards that are inapplicable to the defendant and beyond what is constitutionally required. Plaintiffs have not adequately explained to the court how Dr. Weisman's conclusions, drawn from standards that go above and beyond minimum constitutional standards, are relevant to determine the facts at issue here. Because the standards Dr. Weisman applied in her report are

not relevant to the court's analysis as the trier of fact, the coinciding opinions are also irrelevant. Therefore, Dr. Weisman's expert testimony shall be excluded.

### 3. Defendant's Motion in Limine to Exclude Expert Testimony of Gregory Lewis, Psy. D.

Defendant also moves to exclude Dr. Lewis's opinions and expert testimony. Dr. Lewis is a licensed clinical psychologist and was retained as an expert witness for plaintiffs to address unaccompanied children and complex trauma and provide his "opinions regarding the appropriateness of care offered to the plaintiffs at Shenandoah and how their experiences there impacted them," based on his psychological evaluation of Does 1 and 4 and their treatment and confinement conditions, his review of the Center's documents related to Does 2 and 3, and standards of care for treating youth in detention. (Report of Dr. Lewis 1, Ex. B, Dkt. No. 106-2.) Defendant asserts that his opinions lack an adequate factual basis and are insufficient under Rule 702(b) of the Federal Rules of Evidence and that his opinions regarding the standard of care applicable to the Center are subjective and not the product of reliable principles and methods under Rule 702(c) of the Federal Rules of Evidence. (Mem. Supp. Def.'s Mot. Exclude Expert Test. Gregory N. Lewis, Psy. D. 1–2, Dkt. No. 106.)

First, defendant argues that Dr. Lewis's opinions are unreliable because he failed to review or consider sufficient information by only evaluating Does 1 and 4, reviewing records for Doe 1 and limited records for Does 2, 3, and 4, and reviewing the records of three other youths. (*Id.* at 5–6.) Second, defendant alleges that Dr. Lewis's opinion that trauma-informed care is the standard of care applicable to the Center is subjective and not the product of reliable principles and methods. Dr. Lewis based this opinion on: (1) the aspirational standard held out by the National Child Traumatic Stress Network (NCTSN); (2) a 2012 publication from the Attorney General; and (3) his own experience. Defendant contends that these sources are inadequate for

12

expert testimony. Defendant argues that neither the NCTSN nor the Attorney General's report are binding, regulatory, or applicable to the Center or detention centers like it "in any way," and that these standards are advisory and aspirational. (*Id*. at 7–10.) Third, defendant asserts that Dr. Lewis cannot testify to causation or "attribute a youth's detention at SVJC to current diagnoses or symptoms" because his initial evaluation of Doe 1 was done at the request of an advocacy group rather than Doe 1's attorneys, so Dr. Lewis was evaluating him to make a treatment recommendation, not to inform the court of how his individual psychological problems affect the legal question in this case. Additionally, defendant states that Dr. Lewis acknowledged "it is impossible to connect specific trauma to a particular diagnosis or manifestation in an individual," and therefore, he cannot connect his evaluations to the Center's failure to apply trauma-informed care. (*Id*. at 11.)

Plaintiffs respond that Dr. Lewis relied on sufficient information to form his opinions and the significance of the materials he considered can be explored on cross examination. (Pls.' Opp'n to Def.'s Mot. Exclude Expert Test. Gregory N. Lewis, Psy. D. 9–10, Dkt. No. 126.) Plaintiffs also contend that trauma-informed care is widely accepted, highly reliable, and not susceptible to a *Daubert* challenge because defendant cannot argue that it is "based on untested methods, [has] not withstood peer review and publication, [or] lack[s] standards for its application or has not been accepted in its field." (*Id*. at 12.) In addition, plaintiffs argue that Dr. Lewis had more than enough information and evidence to conclude that the defendant's practices harmed plaintiffs and he identified how the experience at the Center exacerbated existing trauma for each child, thereby establishing a sufficient causal link between the defendant's practices and the damages sustained by the children. (*Id*. at 15–21.) Last, plaintiffs contend that Dr. Lewis's

opinions apply to the class as a whole because they depend on the common needs of similarly situated children and the Center's failure to respond appropriately. (*Id.* at 22.)

Defendant countered plaintiffs' response by again asserting that Dr. Lewis's opinions concerning trauma-informed care merely constitute his subjective opinion, and that he failed to consider sufficient evidence to form his opinion. (Reply Br. Supp. Def.'s Mot. Exclude Expert Test. Gregory N. Lewis, Psy. D. 2, Dkt. No. 138.)

Because the court is granting summary judgment in defendant's favor on the failure to provide adequate mental health services claim, Dr. Lewis's opinions related to the mental health care provided at the Center are irrelevant and therefore excluded. As to the rest of his opinions, the court makes several rulings. First, Dr. Lewis's opinions regarding the Center's negligence in its treatment of UACs are inadmissible because a finding of negligence is insufficient to prove a constitutional violation and therefore irrelevant to the inquiry before the court. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976) (holding that mere negligence, malpractice, or incorrect diagnosis does not amount to a constitutional violation). Second, Dr. Lewis's opinions regarding trauma-informed care and the Center's failure to apply this approach to its treatment of UACs are inadmissible because this simply is not the minimum constitutional standard. A trauma-informed approach to juvenile detention has only been implemented in a handful of states, including Missouri, New York, Ohio, North Carolina, and Kentucky. (Pls.' Opp'n to Def.'s Mot. Exclude Expert Test. Gregory N. Lewis, Psy. D. 13.) Moreover, at least one court has recognized that trauma-informed care is not only more demanding than the minimum constitutional standard, but is a "cutting edge" standard. *See Willis v. Palmer*, No. C12-4086, 2018 WL 3966959, at *12 (N.D. Iowa Aug. 17, 2018) (characterizing trauma-informed care services in a sex offender treatment program as "cutting edge".) Because trauma-informed care

14

does not set the minimum constitutional floor for treatment of youth at juvenile facilities, but instead constitutes an aspirational standard, Dr. Lewis's opinions drawn from this approach are irrelevant. *Cf. Robinson v. Weisenburger*, No. 7:14-cv-114, 2015 WL 5023745, at *6 (W.D. Va. Aug. 5, 2015) ("Despite their failure to meet these aspirational guidelines, the conditions described in the amended complaint do not rise to the level of a constitutional violation.").

However, Dr. Lewis's expert testimony will be permitted to the extent that he has opinions about harm to members of the class and the cause of that harm from any unconstitutional custom or practice. Through his evaluations and review of materials related to Doe 1–4, Dr. Lewis may be able to provide expert testimony directly related to the legal issue before the court: the existence of an unconstitutional custom or practice at the Center that thereby caused harm to the class members. Thus, Dr. Lewis's expert testimony is admissible for this limited purpose.

**B. Defendant's Motion for Sanctions**

Defendant also filed a motion for sanctions under Federal Rule of Civil Procedure 16(f), requesting that the court exclude Dr. Diver's supplemental expert report as a sanction for failing to disclose it in a timely manner. (Mem. Supp. Def.'s Mot. Sanctions 1, Dkt. No. 141.)

During Dr. Diver's deposition on October 16, 2018, defendant's counsel notified Dr. Diver of errors in his report. Two days after the deposition, plaintiffs' counsel communicated to defendant's counsel that Dr. Diver had reviewed the data and would be submitting an amended report on October 22, 2018. Defendant's counsel responded, expressly objecting to extending the deadline for disclosure of amended reports. (*Id.* at 1–2.)

Plaintiffs eventually disclosed Dr. Diver's supplemental expert report on November 7, 2018, along with their response to defendant's motion in limine to exclude Dr. Diver's expert

15

testimony. (Ex. E, Dkt. No. 124-14.) The report indicates that Dr. Diver made changes in response to defendant's counsel's questions regarding over-counting of time in seclusion, which defendant asserts was a significant revision and an attempt to salvage Dr. Diver's analysis. (Mem. Supp. Def.'s Mot. Sanctions 2–3.)

Under Federal Rule of Civil Procedure 16(f), "on motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . (C) fails to obey a scheduling or other pretrial order." "In deciding whether to impose sanctions under Rule 16(f), a district court considers the following four factors: '(1) the reason for failing to name the witness [or failing to complete expert reports]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice.'" *Thompson v. United States*, No. 7:14-cv-92, 2015 WL 2412249, at *4 (W.D. Va. May 21, 2005) (quoting *Scott v. Holz-Her*, No. 6:04-cv-69, 2017 WL 3171937, at *5 (W.D. Va., Oct. 26, 2007)).

Defendant contends that Dr. Diver's supplemental report should be excluded because it was filed two months after plaintiffs' September 7 deadline to disclose trial experts, there is no good reason for Dr. Diver's failure to initially provide a complete and accurate report, his testimony is "of little importance" because it is more of a mathematical calculation than an expert opinion and pertains largely to data that is irrelevant to the certified class, and it would be prejudiced by the inclusion of his supplemental report. (Mem. Supp. Def.'s Mot. Sanctions 5–9.)

Plaintiffs respond by reiterating that Dr. Diver's supplemental report corrected a small number of mistakes and did not "change the methodology or conclusions of his original report." (Opp'n Mot. for Sanctions 1, Dkt. No. 160.) They also note that they did not ask for an extension to file Dr. Diver's amended report, but rather, they acted under their continuing

obligation to supplement expert disclosures under Federal Rule of Civil Procedure 26(e) and offered defendant an opportunity to re-depose Dr. Diver and an extension to file a motion to exclude. (*Id.* at 2–3.)

Under Federal Rule of Civil Procedure 26(e), "[a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."[3] As to expert witnesses, "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). When "[t]he discovery plan agreed upon by the parties sets no deadlines for the filing of supplemental expert reports. . . . 'it is presumed the parties agreed or the Court intended that the time would be as supplied by the Rules.'" *Scott v. Holz-Her*, No. 6:04-cv-69, 2017 WL 3171937, at *1 (W.D. Va. Oct. 26, 2007) (quoting *Luma Corp. v. Stryker Corp.*, 226 F.R.D. 536, 544 (S.D. W. Va. 2005)).

Plaintiffs argue that Rule 16(f) does not apply to Dr. Diver's supplemental report. They posit that when the behavioral incident count decreased from 972 to 938 and the total time in seclusion decreased slightly as a result of his modifications, only a "trivial difference in relation to the total number of incidents and total time immigrant youth spent in seclusion" was made, and "the finality of Dr. Diver's opinions is not in question." (Opp'n Mot. for Sanctions 5.) Accordingly, plaintiffs contend that the supplemental report should be treated as just that—a

---

[3] Plaintiffs concede that Dr. Diver's corrections are not "material," but state that they were made for the benefit of the court and the parties. (Opp'n Mot. for Sanctions 4, n.1.)

17

supplemental report as opposed to a new report—and is not excludable under Rule 16(f). (*Id.* at 6); *see Scott*, 2017 WL 3171937, at *1 ("Rule 16 does not apply if the expert's report is a supplemental report within the terms of Rule 26(e)(1).")

The court will not exclude Dr. Diver's supplemental expert report. Dr. Diver was permitted to supplement his report under Federal Rule of Civil Procedure 26(e). He simply corrected errors that were pointed out to him in his deposition by providing a supplemental report, and the correction of these errors did not significantly change the information in his report or change his overall conclusion. Thus, because Dr. Diver was well within his right to provide a supplemental report, the defendant's motion for sanctions is denied and the supplemental report will not be excluded.

**C. Defendant's Motion in Limine to Exclude Evidence of Non-Class Members and Class Members Not Identified in Plaintiffs' Initial Disclosures**

Defendant moves to exclude at trial the admission of evidence of non-class members and class members not identified in plaintiffs' initial disclosure, pursuant to Federal Rule of Civil Procedure 37(c) and Federal Rule of Evidence 103. (Br. Supp. Mot. in Limine 2, Dkt. No. 132.)

Defendant argues that evidence pertaining to non-class members is irrelevant and should be excluded. Because the complaint seeks declaratory and injunctive relief and defines the class as Latino immigrant youths who are or may be in the future confined at the Center, defendant asserts that the prospective relief sought has no relation to youths who are no longer residents at the Center. (*Id.* at 4.) In their response in opposition, plaintiffs first argue that there is no legal basis for excluding evidence of mistreatment of former detainees in a "pattern-and-practice case." Plaintiffs contend that the certified class determines who will benefit from the relief sought, while the issues determine relevancy. As such, plaintiffs posit that instances during which UACs were subject to the alleged unconstitutional conduct—whether or not the UAC is

18

still at the Center—are relevant because they make it more probable that the Center engaged in a pattern and practice of wrongful conduct. (Opp'n 4–5, Dkt. No. 151.) In its reply, defendant asserts that Doe 4's allegations must be sufficient on their own before turning to the allegations of other class members. (Reply Br. Supp. Def.'s Mot. in Limine 1–2, Dkt. No. 157.)

Evidence related to non-class members is plainly relevant to show an unconstitutional custom or practice. If Doe 4 were to bring an individual claim, he would certainly be entitled to bring forth evidence pertaining to other UACs to prove a custom or practice at the Center; evidence related to Doe 4 alone could not prove the same. *See Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003) ("[T]here must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice.") (quoting *Kopf v. Wing,* 942 F.2d 265, 269 (4th Cir. 1991)). Similarly, here, while Doe 4 and the class cannot look to non-class members to prove an underlying constitutional violation, non-class member evidence that is relevant to unconstitutional uses of force and conditions-of-confinement directly relates to the requirement of a custom or practice in a *Monell* claim. Indeed, it would almost be impossible to prove a *Monell* claim but for third-party evidence of a custom or practice because showing a persistent or widespread practice, by necessity, requires evidence from more than one person. *See Bielevicz v. Dubinon*, 915 F.2d 845, 852 (3rd Cir. 1990) (Testimony of former police chief describing customary police conduct in making public intoxication arrests was sufficient to present jury question in § 1983 suit arising from such arrests on the issue of whether there was a long-established municipal custom in the police department of arresting and detaining people on charges of public intoxication without probable cause and with no intention of prosecuting them or of holding a hearing); *see also Velazquez v. City of Long Beach*, 793 F.3d 1010, 1027–28 (9th Cir. 2015) (finding that the district court abused its discretion by granting defendants' motion in

19

limine to exclude reference to other complaints, internal affairs incidents, and disciplinary action against an officer in a *Monell* claim because "a jury might have been able reasonably to infer from prior complaints that the [defendant] was aware that [the officer] had previously used excessive force when making arrests, but had taken no steps to curb his propensity."); *Malik v. Hannah*, 799 F. Supp. 2d 355 (D.N.J. 2011) (individual established that city had custom of tolerating excessive force by its police officers, as required to hold city liable in his § 1983 action alleging officers violated his Fourth Amendment rights; city had received more than 300 citizen complaints against officers over course of few years but failed to take action to address their conduct).

Therefore, this evidence is relevant and admissible for this purpose.

### III. CONCLUSION

For the foregoing reasons, the court will deny in part and grant in part defendant's motion in limine to exclude the expert testimony of Dr. Paul Diver, will grant defendant's motion in limine to exclude the expert testimony of Dr. Andrea Weisman, will deny in part and grant in part defendant's motion in limine to exclude expert testimony of Gregory Lewis, Psy. D., will deny defendant's motion for sanctions, and will deny defendant's motion in limine to exclude evidence of non-class members.

An appropriate order will be entered.

Entered: December 13, 2018.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge